1  JOEL H. BERNSTEIN (*PRO HAC VICE* PENDING)
   JOSEPH A. FONTI (APPEARANCE *PRO HAC VICE*)
2  **LABATON SUCHAROW LLP**
   140 BROADWAY
3  NEW YORK, NEW YORK 10005
   TELEPHONE: (212) 907-0700
4  FACSIMILE: (212) 818-0477
   JBERNSTEIN@LABATON.COM
5  JFONTI@LABATON.COM

6  *LEAD COUNSEL FOR THE CLASS, AND*
   *COUNSEL FOR BALTIMORE COUNTY EMPLOYEES'*
7  *RETIREMENT SYSTEM AND ARKANSAS TEACHER*
   *RETIREMENT SYSTEM*
8
   JAMES WAGSTAFFE (95535)
9  MICHAEL VON LOEWENFELDT (178665)
   **KERR & WAGSTAFFE LLP**
10 100 SPEAR STREET, 18TH FLOOR
   SAN FRANCISCO, CA 94105-1528
11 TEL: (415) 371-8500
   FAX: (415) 371-0500
12 WAGSTAFFE@KERRWAGSTAFFE.COM
   MVL@KERRWAGSTAFFE.COM
13
   *COUNSEL FOR BALTIMORE COUNTY EMPLOYEES'*
14 *RETIREMENT SYSTEM AND ARKANSAS TEACHER*
   *RETIREMENT SYSTEM*

SHAWN A. WILLIAMS (CSB NO. 213113)
**ROBBINS GELLER RUDMAN & DOWD LLP**
POST MONTGOMERY CENTER
ONE MONTGOMERY STREET, SUITE 1800
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (415) 288-4545
FACSIMILE: (415) 288-4534
SHAWNW@RGRDLAW.COM

*LIAISON COUNSEL FOR LEAD PLAINTIFF*

15
16                    UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18                       SAN FRANCISCO DIVISION

19 IN RE VOCERA COMMUNICATIONS, INC.        Master File No. 3:13-cv-03567 EMC
   SECURITIES LITIGATION
20                                           CLASS ACTION

21 ─────────────────────────────────        **NOTICE OF MOTION AND MOTION
   This Document Relates To:                 BY LEAD PLAINTIFF TO LIMIT THE
22                                            SCOPE OF CONFIDENTIALITY
        All Actions.                         AGREEMENTS SIGNED BY FORMER
23                                            VOCERA EMPLOYEES AND FOR *IN
                                             CAMERA* REVIEW OF DOCUMENTS;
24                                            MEMORANDUM OF POINTS AND
                                             AUTHORITIES IN SUPPORT
25                                            THEREOF**

26                                           DATE:  July 10, 2014
                                             TIME:  1:30 p.m.
27                                           DEPT:  5, 17th Floor

28                                           Hon.  Edward M. Chen

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on July 10, 2014, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 15, 17th floor, of the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, Lead Plaintiff will and does move for an order of the Court limiting the scope of confidentiality agreements signed by former Vocera employees and for *in camera* review of documents.  This motion is brought pursuant to the inherent authority recognized by this Court in In re JDS Uniphase Corporation Securities Litigation, 238 F. Supp. 2d 1127 (N.D. Cal. 2002).

This motion is based on this notice, the enclosed memorandum of points and authorities, the papers and pleadings on file, and upon such other matters as may be presented to the Court at the time of the hearing.

DATED: April 22, 2014                                      **LABATON SUCHAROW LLP**

By: /s/ Joseph A. Fonti
    Joel H. Bernstein (*PRO HAC VICE* PENDING)
    Joseph A. Fonti (*pro hac vice*)
    **LABATON SUCHAROW LLP**
    140 Broadway
    New York, New York 10005
    Telephone: (212) 907-0700
    Facsimile: (212) 818-0477
    jbernstein@labaton.com
    jfonti@labaton.com

    *Lead Counsel for the Class, and*
    *Counsel for Baltimore County Employees'*
    *Retirement System and Arkansas Teacher*
    *Retirement System*

    Shawn A. Williams (CSB No. 213113)
    **ROBBINS GELLER RUDMAN & DOWD LLP**
    Post Montgomery Center
    One Montgomery Street, Suite 1800
    San Francisco, California 94104
    Telephone: (415) 288-4545
    Facsimile: (415) 288-4534
    shawnw@rgrdlaw.com

    *Liaison Counsel for Lead Plaintiff*

    James Wagstaffe (95535)
    Michael von Loewenfeldt (178665)
    **Kerr & Wagstaffe LLP**

1

100 Spear Street, 18th Floor
San Francisco, CA 94105-1528
Tel: (415) 371-8500
Fax: (415) 371-0500
wagstaffe@kerrwagstaffe.com
mvl@kerrwagstaffe.com

*Counsel for Baltimore County Employees'
Retirement System and Arkansas Teacher
Retirement System*

Motion to Limit Confidentiality Agreements and For *In Camera* Review - 3:13-cv-03567 EMC

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3        During their investigation of the facts underlying this matter, counsel for the Lead

4   Plaintiff have been provided internal Vocera documents by a high level former Vocera

5   employee.  To avoid any appearance of impropriety, and realizing the possibility that some of the

6   documents may be protected by the attorney-client privilege, counsel for the Lead Plaintiff

7   sequestered the documents with an independent lawyer pending efforts to resolve their status

8   with Vocera.  Rather than focus on questions of privilege, however, Vocera is taking the position

9   that all of its documents are secret and cannot be provided outside of formal discovery.  Vocera

10  relies on overly broad "confidentiality" agreements with its former employees, and in particular

11  the former Internal Audit and Finance Director (hereinafter the "Audit Director") who provided

12  the documents in question.

13       The Court should reject Vocera's attempt to impede Lead Counsel's investigation of

14  Vocera's wrongdoing.  A company cannot prevent a former employee from assisting in

15  investigations of the company's wrongdoing through either confidentiality or non-disparagement

16  provisions in employee contracts or severance agreements.  As this Court and others have held,

17  to do so violates the strong public policy supporting whistleblowers and undermines the very

18  functioning of private securities litigation.[1]

19       Counsel respectfully request the Court to invalidate Vocera's confidentiality agreements

20  to the extent they restrict employees' rights voluntarily to cooperate with plaintiffs' investigation

21  of this action.  Moreover, in order to resolve the status of the specific documents that gave rise to

22  this dispute, we ask the Court to conduct an *in camera* review so that attorney-client privileged

23  documents can be returned to Vocera, actual trade secrets can be subject to a protective order,

24  and other relevant information provided without a protective order to counsel for Lead Plaintiff.

25

26  [1]       This is particularly true in this matter where the Plaintiffs are permitted to file a
    consolidated complaint, but are required under the Private Securities Litigation Reform Act of
27  1995, 15 U.S.C. §78u-4, (the "PSLRA") to do so with more factual specificity that can only
    reasonably come from private investigation.
28

1

## II.      BACKGROUND

### A.      UNDERLYING DISPUTE IN THIS ACTION

Pending before the Court are two securities class action complaints brought against Vocera, a provider of mobile communication products and services, various of the Company's officers and directors, and the underwriters of the Company's IPO (collectively "Defendants") for violations of Sections 11, 12(a)(2), and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder.

Vocera provides mobile communications software and wireless devices to healthcare and non-healthcare markets.  The Company held its IPO of 5.85 million shares of common stock for $16.00 per share on March 28, 2012, approximately two years after federal healthcare reform was enacted and at a time when federal budget sequestration was a growing concern.

The complaints allege that in the documents published by Vocera in connection with its IPO, and in statements made throughout the Class Period (i.e., March 28, 2012 through May 3, 2013), the Company misrepresented its ability to thrive in the face of regulatory and spending uncertainty.  Specifically, the complaints allege that the Company misled investors as to: (1) the extent of the adverse impact that healthcare reform was having on the closing of sales of the Company's communication products to hospitals; and (2) the extent of the adverse impact that federal budget sequestration was having on the closing or sales of the Company's communication products to government hospitals.

The complaints allege that the truth about Vocera's prospects in the face of government reform and budget troubles came to light following the close of the markets on May 2, 2013. That day, Vocera announced disappointing results for the first quarter of 2013, sharply reduced its previously stated revenue guidance for full-year 2013, and reduced its guidance for non-GAAP earnings per share.  During a related earnings call, Company management attributed the poor results and lowered guidance to, among other factors, increased financial pressure and scrutiny from Vocera's hospital customers as a result of the healthcare reform initiative and delays in expansion deals due to the effects of both the healthcare reform initiative in the

2

1   nongovernment healthcare sector, and the federal budget sequestration in the government

2   healthcare sector. In reaction to these revelations, Vocera's stock price fell $7.23 per share, or

3   37.3 percent, to close at $12.15 per share on May 3, 2013, on extraordinary trading volume.

4          As alleged, Vocera's conduct and the revelations thereof have caused the Class to incur

5   substantial losses.

6          **B.    COUNSEL'S INVESTIGATION REVEALS IMPORTANT DOCUMENTS**

7          As is required and is prudent in this type of case, the Court-appointed lead counsel has

8   undertaken substantial proprietary efforts to investigate the underlying facts and circumstances

9   giving rise to this fraud action in preparing the Consolidated Class Action Complaint.

10  (Declaration of Joseph A. Fonti ¶ 2).  In connection with that investigation, lead counsel's

11  private investigator met and interviewed a former Vocera Senior Director of Internal Audit,

12  Finance & Administration.  (Declaration of Jerome Pontrelli ¶¶ 3-4).  The Audit Director

13  provided information to that investigator as well as certain internal Vocera documents relevant to

14  the investigation of Vocera's wrongdoing.  (Fonti Decl. ¶¶ 3-4; Pontrelli Decl. ¶¶ 3-4).

15         Upon reviewing the documents, lead counsel's investigator questioned whether some of

16  them might be subject to attorney client privilege.  The documents were immediately

17  quarantined, and no attorney at lead counsel's office has reviewed the documents or the

18  investigator's notes, or spoken with the investigator about the information provided by the

19  former Audit Director.  Instead, lead counsel retained separate counsel to hold onto the

20  documents and work through any privilege issues with Vocera.  (Fonti Decl. ¶¶ 3-4; Pontrelli

21  Decl. ¶¶ 3-4).

22         Vocera, however, declined to provide a privilege log.  Instead, while admitting that not

23  all of the documents are privileged, Vocera took the position that they were "stolen" and that

24  they should not have been provided by the former Audit Director because of certain

25  confidentiality agreements he was required to sign.  Vocera insisted that this means lead counsel

26  cannot consider the documents.  (Fonti Decl. ¶ 5).

27         In support of its position, Vocera provided a "Terms of Separation" agreement between it

28  and the former Audit Director.  (Fonti Decl. ¶ 6).  That separation agreement provides that the

Motion to Limit Confidentiality Agreements And For *In Camera* Review - 3:13-cv-03567 EMC

1   former Audit Director remains bound by an Employee Confidential Information and Inventions

2   Agreement ("ECIIA") he was required to sign while employed. (Fonti Decl. Ex. B § 5).  That

3   ECIIA, in turn, designates all internal information of Vocera as confidential and prohibits

4   disclosure of any such information without written permission.  (Fonti Decl. Ex. B §1(a) & (b).)

5   Thus, Vocera purports to require its employees not to disclose *any* non-public information about

6   the company to *anyone* without Vocera's written permission.

7          The separation agreement also includes a requirement that the former Audit Director not

8   say anything critical of Vocera or anyone or thing connected to it except when compelled to do

9   so.  (Fonti Decl. Ex. A § 9).  This provision thus purports to bar the former Audit Director from

10  providing truthful information about Vocera and its products or agents, etc., on a voluntary basis

11  if that information could be disparaging.

12         Finally, Vocera purports to prohibit the former Audit Director from disclosing the very

13  existence and terms of the separation agreement (while not restricting its own right to do so), and

14  provides that revealing the existence of the agreement is a material breach.  (Fonti Decl. Ex. A §

15  12.)[2]

16         In combination, these provisions purport to bar the former Audit Director from discussing

17  virtually anything about Vocera that would be of interest in an investigation of Vocera's

18  wrongdoing.  Because these are form documents, presumably Vocera applies the same tactics

19  with its other current and former employees.

20         Other than insisting that none of the documents should have been provided to counsel for

21  Lead Plaintiff because of the separation agreement and ECIIA, Vocera declined to provide any

22  basis showing that the documents in question are protected by the attorney-client privilege or

23  even trade secret law.  (Fonti Decl. ¶ 8).  Because the parties were unable to resolve this dispute,

24  Lead Plaintiff now seeks the Court's assistance and direction.

25

26  ---
    [2]        In addition to amply demonstrating the gross overreaching of Vocera's attempt to shield
27  its conduct from public review, this provision violates California Labor Code § 232 which
    protects the rights of employees to disclose their wages, as well as Labor Code § 232.5 which
28  protects the rights of employees to discuss their working conditions.

Motion to Limit Confidentiality Agreements And For *In Camera* Review - 3:13-cv-03567 EMC

## III.    ANALYSIS

### A.    VOCERA CANNOT RESTRICT ITS FORMER EMPLOYEES' RIGHT TO ASSIST WITH INVESTIGATIONS OF WRONGDOING

Federal law creates a strong public policy in favor of whistleblowers in securities litigation.  As this Court recognized in In re JDS Uniphase Corporation Securities Litigation, 238 F. Supp. 2d 1127, 1136 (N.D. Cal. 2002) [hereinafter "JDS"],

> Congress has also indicated a public policy in favor of whistleblowers in securities cases. … [T]he [Sarbanes-Oxley Act of 2002] demonstrates the public policy in favor of allowing even current employees to assist in securities fraud investigations.  It certainly does not establish a public policy in favor of allowing employers to muzzle their employees with overbroad confidentiality agreements.

Id. at 1136.  Indeed, the voluntary disclosure of evidence of a company's wrongdoing is essential to the very framework of private securities litigation, because under the PSLRA formal discovery is prohibited until after a complaint survives a motion to dismiss, 15 U.S.C. § 78u-4(b)(3)(B), yet the complaint must be pled with heightened particularity such that insider or non-public facts are often necessary to properly plead a claim.  15 U.S.C. § 78u-4(b)(1)-(2).  "In fact, the [PSLRA's] heightened pleading standard encourages plaintiffs to do *more* investigation before filing a complaint, not less."  JDS, 238 F. Supp. 2d at 1134.

Recognizing that such voluntarily provided inside information is critical to the proper operation of the PSLRA, this Court and others have restricted the use by companies like Vocera of private confidentiality agreements that purport to prevent current and former employees from voluntarily providing evidence of wrongdoing.  E.g., JDS, 238 F. Supp. 2d 1127; Chambers v. Capital Cities/ABC, 159 F.R.D. 441 (S.D.N.Y. 1995).  As this Court noted in JDS, a company "cannot use its confidentiality agreements to chill former employees from voluntarily participating in legitimate investigations into alleged wrongdoing" JDS, 238 F. Supp. 2d at 1137.

This case presents just such a situation.  During their investigation of this lawsuit, an investigator for Counsel for Lead Plaintiff obtained internal Vocera documents from a high ranking former Vocera employee whose former job as Director of Internal Audit, Finance, and

5

1    Administration plainly provided him with substantially relevant knowledge about the misconduct

2    alleged here.  (Fonti Decl. ¶ 3).  Counsel have not reviewed those documents pending this

3    Court's determination on this motion, but are informed and believe that most of the documents

4    are not subject to the attorney client privilege and provide important evidence of Vocera's

5    wrongdoing.

6         When counsel attempted to confer with Vocera's counsel, however, to resolve any

7    attorney client issues, Vocera insisted that all of these documents must be returned to them

8    unreviewed because their production violates a confidentiality agreement Vocera has with the

9    former Audit Director.  (Fonti Decl. ¶¶ 5, 8).  Unable to reach agreement, Counsel for Lead

10   Plaintiff have filed this motion.

11        Vocera's attempt to claw back and shield all internal company documents that were

12   voluntarily provided to Counsel for Lead Plaintiff should be rejected for two reasons.  First, even

13   assuming arguendo that provision of these documents to Counsel for the Lead Plaintiff was a

14   breach of contract, counsel are not parties to that contract and no law requires them to assist in its

15   enforcement.

16        Second, and more importantly, the purported restrictions unlawfully restrict the former

17   employees' rights to report misconduct.  The overbroad restrictions here are indistinguishable

18   from those rejected in JDS.  Vocera attempts to classify essentially every bit of internal company

19   information as confidential.  It purports to require written permission from a company officer or

20   compliance with a subpoena or other legal service before disclosure can be made.  It also

21   purports to prohibit disparagement of Vocera.  Each of these types of provisions was rejected in

22   JDS as contrary to public policy.  JDS, 238 F. Supp. 2d at 1137-38.

23        Vocera's counsel has offered to preserve the documents so that they may be obtained in

24   discovery.  But that offer ignores the fact that Lead Plaintiff is required to plead the case with

25   specificity before any discovery, and thus requires information from private investigations

26   precisely like the one that occurred here.

27

28

6

1    This Court should find that Vocera's confidentiality agreements are not enforceable and

2    cannot be used to prohibit either review of internal documents or interviews of former employees

3    like the former Audit Director in connection with the investigation of the claims in this case.

4    **B.   ANY TRADE SECRET CONCERNS CAN BE ADDRESSED WITH A PROTECTIVE ORDER**

5    Vocera does, of course, have a legitimate interest in restricting dissemination of actual

6    trade secret information.  That interest does not, however, extend to preventing investigation of

7    its wrongdoing in this action.  It is well settled that where trade secret information is relevant to

8    prosecution of civil litigation, the rights of the trade secret holder can be adequately protected by

9    a protective order restricting use of the trade secret to litigation purposes.  See Brown Bag

10   Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992); Trevino v. ACB Am., Inc.,

11   232 F.R.D. 612, 617 (N.D. Cal. 2006).  The trade secret doctrine, after all, is designed to protect

12   a company's *commercial* interests vis a vis competitors, not to shield it from liability for

13   wrongdoing.  See Dunbar v. Google, Inc., 5:12-CV-003305-LHK, 2013 WL 4428853 (N.D. Cal.

14   Aug. 14, 2013).

15   Here, Counsel for the Lead Plaintiff have no objection to this Court imposing the

16   District's standard Stipulated Protective Order for Standard Litigation, or otherwise restricting

17   the use of documents and information that actually constitutes a trade secret so that the

18   information is not used for non-litigation purposes.

19   **C.   *IN CAMERA* REVIEW IS AN APPROPRIATE MEANS OF REVIEWING DOCUMENTS FOR PRIVILEGE**

20

21   That still leaves, of course, the problem of potential attorney-client communications.

22   Counsel for Lead Plaintiff agree that they are not entitled to review any materials legitimately

23   protected by Vocera's attorney-client privilege.  Indeed, as described above, counsel have gone

24   out of their way to ensure that there is no possible taint from receipt of any such information

25   while this dispute is resolved.

26   Counsel for Vocera, however, has not been willing to provide a privilege log or other

27   information sufficient to analyze any privilege claim.  Counsel for Lead Plaintiff therefore

28   request that they be allowed to lodge all of the documents in question with the Court for an *in*

7

1    *camera* review.  *In camera* review is a well recognized method of resolving privilege claims.

2    <u>Clarke v. Am. Commerce Nat'l Bank</u>, 974 F.2d 127, 129 (9th Cir. 1992) ("A district court may

3    conduct an *in camera* inspection of alleged confidential communications to determine whether

4    the attorney-client privilege applies.").  The Court can require Vocera to provide an adequate

5    privilege log for any documents that it claims are protected by the attorney-client privilege or

6    work product doctrine, and then review the documents or refer them to the Magistrate Judge for

7    review.  Documents that are determined to be privileged can be provided to Vocera, and

8    documents that are determined not to be privileged can be returned to Counsel for Lead Plaintiff,

9    with or without a protective order as appropriate.

10          Of course, the whole point of this exercise is to prevent Vocera from impeding or chilling

11   counsel's investigation of this action prior to the filing of an amended complaint.  Therefore,

12   Lead Plaintiff's deadline to file the Consolidated Class Action Complaint should be tolled until a

13   reasonable period after this document dispute is resolved.  As the parties have agreed, they will

14   submit a joint schedule for the filing of the Consolidated Class Action Complaint and associated

15   motion practice upon resolution of this motion.  See ECF No. 68.

16   **IV.      CONCLUSION**

17          For the foregoing reasons, Lead Plaintiff respectfully requests the Court to enter an order

18   finding that former Vocera employees are not barred by either severance agreements with

19   Vocera or by Employee Confidential Information agreements entered into during their

20   employment from voluntarily participating and providing information in legitimate

21   investigations into alleged wrongdoing at Vocera.  Lead Plaintiff also asks this Court to conduct

22   an *in camera* review of the documents obtained from the former Audit Director to determine

23   which, if any, of the documents are protected by the attorney-client privilege such that Lead

24   Counsel must return them to Vocera and to impose an appropriate protective order concerning

25   the use of any non-privileged documents that are relevant to this action and constitute Vocera

26   trade secrets.

27   DATED: April 22, 2014                              **LABATON SUCHAROW LLP**

28

8

1

                               By: /s/ *Joseph A. Fonti*

2

                               Joel H. Bernstein (*PRO HAC VICE* PENDING)
Joseph A. Fonti (*pro hac vice*)

3

                               **LABATON SUCHAROW LLP**
140 Broadway

4

                               New York, New York 10005
Telephone: (212) 907-0700

5

                               Facsimile: (212) 818-0477
jbernstein@labaton.com

6

                               jfonti@labaton.com

7

                               *Lead Counsel for the Class, and*
*Counsel for Baltimore County Employees'*

8

                               *Retirement System and Arkansas Teacher*
*Retirement System*

9

10

                               Shawn A. Williams (CSB No. 213113)
**ROBBINS GELLER RUDMAN & DOWD LLP**

11

                               Post Montgomery Center
One Montgomery Street, Suite 1800

12

                               San Francisco, California 94104
Telephone: (415) 288-4545

13

                               Facsimile: (415) 288-4534
shawnw@rgrdlaw.com

14

                               *Liaison Counsel for Lead Plaintiff*

15

                                 James Wagstaffe (95535)

16

                               Michael von Loewenfeldt (178665)
**Kerr & Wagstaffe Llp**

17

                               100 Spear Street, 18th Floor
San Francisco, CA 94105-1528

18

                               Tel: (415) 371-8500
Fax: (415) 371-0500

19

                               wagstaffe@kerrwagstaffe.com
mvl@kerrwagstaffe.com

20

                               *Counsel for Baltimore County Employees'*

21

                               *Retirement System and Arkansas Teacher*
*Retirement System*

22

23

24

25

26

27

28

9

CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 22, 2014.

/s/ *Joseph A. Fonti*
JOSEPH A. FONTI
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005