UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BRADO, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>VOCERA COMMUNICATIONS, INC., *et al.*,<br><br>    Defendants.<br>_____/ | No. C-13-3567 EMC<br><br>**ORDER GRANTING IN PART LEAD PLAINTIFF'S MOTION TO LIMIT THE SCOPE OF CONFIDENTIALITY AGREEMENTS SIGNED BY FORMER VOCERA EMPLOYEES**<br><br>**(Docket No. 73)** |

## I. INTRODUCTION

This action is a consolidation of two securities class actions against Vocera Communications, Inc. ("Vocera"), which alleges that Vocera misrepresented its profitability and that plaintiffs consequently suffered losses when Vocera stock prices fell. Lead Plaintiffs ("Plaintiffs") are the Baltimore County Employees' Retirement System and Arkansas Teacher Retirement System. Lead Counsel is the New York law firm of Labaton Sucharow LLP ("Labaton"). A consolidated complaint has yet to be filed.

During Plaintiffs' investigation into the facts, Labaton's investigator interviewed a former Vocera Senior Director of Internal Audit, Finance and Administration (the "Former Employee"). The Former Employee provided internal Vocera documents and other information relevant to Vocera's alleged wrongdoing. Upon reviewing the documents, the investigator questioned whether some of them might be subject to attorney-client privilege. The documents and the investigator's notes from the interview were sequestered and no attorney at Labaton reviewed them or

communicated with the investigator about their contents. The documents are currently held by separate counsel retained by Labaton.

Vocera reviewed the documents and determined that they were internal Vocera documents containing what purports to be confidential and proprietary information. Some may also contain privileged communications. Vocera asserts the Former Employee misappropriated the documents and breached his contractual confidentiality obligations to Vocera by providing them to Labaton's investigator. Vocera seeks return of the documents and to bar their use by Plaintiffs prior to discovery effectively prohibiting Plaintiffs from utilizing them in opposing to any motion to dismiss under the PSLRA.

Pending before the Court is Lead Plaintiff's Motion To Limit The Scope Of Confidentiality Agreements Signed By Former Vocera Employees And For *In Camera* Review Of Documents (the "Motion"). Specifically, Plaintiffs request the Court to (1) invalidate Vocera's confidentiality agreements to the extent they restrict employees from voluntarily cooperating with Plaintiffs' investigation of this action; (2) conduct an *in camera* review to seclude attorney-client privileged documents for return to Vocera; and (3) impose a protective order that would govern the use of any documents containing Vocera trade secrets.

The Court **DENIES** Plaintiffs' request to invalidate the confidentiality agreements, but **GRANTS** Plaintiffs permission to use of the documents, subject to claims of privilege and a protective order.

## II.   FACTUAL & PROCEDURAL BACKGROUND

Vocera asserts that the documents were "misappropriated from Vocera and provided to Labaton in breach of the Former Employee's contractual confidentiality obligations to the Company." Bretan Decl. at ¶ 8 (Docket No. 83). The Former Employee had entered into a Separation Agreement with Vocera. Under the Separation Agreement, the Former Employee confirmed he had returned to Vocera "all property or data of the Company of any type whatsoever"

2

that had been in his possession or control, including documents containing "Proprietary Information."[1]  Docket No. 80 (Separation Agreement ¶¶ 4-5).

The Separation Agreement also bound the Former Employee to an Employee Confidential Information and Inventions Agreement ("Employment Agreement").  *Id*. at ¶ 5.  Under the Employment Agreement, the Former Employee agreed "to hold all Confidential Information in confidence and to not disclose, use, copy . . . or remove from the premises of the Company any Confidential Information" after termination, unless otherwise authorized by Vocera.  Docket No. 80-1 (Employment Agreement ¶ 1.b).  "Confidential Information" was defined as "all information related to any aspect of the business of the Company that is either information not known by . . . competitors . . . or is proprietary information of the Company."  *Id*. at ¶ 1.a.  The Employment Agreement provides a long list of examples of "Confidential Information," which includes, for example, financial data, forecasts, and business plans.  *See id.*  The Former Employee also agreed under the Employment Agreement to return all documents belonging to Vocera and reproductions thereof, whether or not confidential.  *Id*. at ¶ 4.

Vocera does not impugn the ethics of Labaton or its investigator.  Vocera's Opposition to the Motion at 7 (Docket No. 82 ("Opp.")).  It has assured Labaton and its counsel that, were discovery to go forward, any responsive, non-privileged documents would be produced.  Bretan Decl ¶ 4.  Vocera does not propose to put the documents off limits in discovery solely because they were wrongfully taken by the Former Employee.

While Vocera seeks to bar use of the documents herein unless and until produced pursuant to formal discovery, Plaintiffs assert they should be allowed currently to use the information and documents provided by the Former Employee that are not privileged, subject to an appropriate protective order.  They also seek more broadly an order invalidating Vocera's confidentiality agreements to the extent the agreements restrict former or current employees from voluntarily cooperating with Plaintiffs' investigation of this action.

---

[1] Neither the Separation Agreement nor the Employment Agreement, discussed below, defines "Proprietary Information."

3

## III. DISCUSSION

A. <u>Plaintiffs May Use the Information the Former Employee Orally Conveyed Through the Interview</u>

Counsel for Vocera made clear at hearing that it does not oppose Plaintiffs' use of the information orally conveyed by the Former Employee to Labaton's investigator during the interview. Counsel acknowledged that, while the information may fall within the scope of Confidential Information defined by the Confidentiality Agreements, in practice, plaintiffs in securities fraud actions commonly talk to witnesses in advance of filing the complaint, identifying them as confidential informants. Counsel stated that, to her knowledge, no one has successfully argued that information so obtained was barred on the basis of a confidentiality agreement. *Cf. In re JDS Uniphase Corp. Securities Litigation*, 238 F. Supp. 2d 1127 (N.D. Cal. 2002) (permitting plaintiffs to conduct interviews of the defendant corporation's former employees to gather information about alleged securities fraud, notwithstanding a broad confidentiality agreement binding the former employees); *Chambers v. Capital Cities/ABC*, 159 F.R.D. 441 (S.D.N.Y. 1995) (similar, but in employment action). To hold to the contrary would severely compromise plaintiffs' ability in securities cases to meet the heightened pleading requirements of the PSLRA discussed below.

Thus, Labaton may use the information the Former Employee orally conveyed through the interview.

B. <u>Plaintiffs May Use the Documents Subject to a Protective Order and Claims of Privilege</u>

    1. <u>The Former Employee's Misappropriation Does Not Warrant Return of the Documents or Bar on Their Use Herein</u>

Vocera argues that the documents should be returned (and not used by Plaintiffs) because they were misappropriated by the Former Employee. Vocera relies on (1) the provision of the Separation Agreement in which the Former Employee warranted he was not taking any documents and (2) cases where courts have disallowed parties from using documents taken without permission from the opposing party.

4

The Court rejects Vocera's arguments.  In deciding whether plaintiffs may use internal documents wrongfully obtained from a defendant in civil cases, the courts have considered various factors:  impropriety of counsel's conduct in obtaining the documents (courts have disallowed use of documents where counsel were not forthcoming about how the documents were obtained or where counsel circumvented the discovery process, *e.g.*, *Burt Hill v. Hassan*, 2010 WL 491433 (W.D. Pa. Jan. 29, 2010); *In re Shell Oil Company*, 143 F.R.D. 105 (E.D. La. 1992)); the incentives and disincentives to employees to wrongfully taking documents (courts have disallowed use of documents that employees wrongfully took to benefit their own suits and have declined to immunize employees from liability for doing so, *e.g.*, *Fayemi v. Hambrecht and Quist, Inc*., 174 F.R.D. 319 (S.D.N.Y. 1997); *JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 697 (E.D. Va. 2007))); the prejudice to the opposing party (courts have declined to exclude use of improperly taken documents, only ordering their return, where the documents likely would have been produced through discovery, *e.g.*, *Ashman v. Solectron, Corp*., No. C-08-1430 JF, 2008 WL 5071101 (N.D. Cal. Dec. 1, 2008)); the court's imperative to pursue truth in resolving a dispute (courts have declined to suppress use of improperly taken documents, in light of the interest in pursuing truth, served by considering all relevant evidence, *e.g*., *Lahr v. Fulbright & Jakowski*, 1996 WL 34393321 (N.D. Tex. July 10, 1996)); and the public policy of the Sarbanes-Oxley Act favoring whistleblowers (courts have limited liability of third-party, former employees in providing information about the employer's alleged securities fraud, but have declined to limit liability of plaintiff-former employees to effectuate this public policy, *compare In re JDS Uniphase Corp. Securities Litigation*, 238 F. Supp. 2d 1127 (N.D. Cal. 2002) *with JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 697 (E.D. Va. 2007)).  As discussed below, these factors weigh in favor of permitting Plaintiffs' use of the documents.

    a. <u>No Improper Conduct by Counsel</u>

In numerous cases where courts have barred use of documents, there is improper conduct by an attorney which would implicate both the ethics of the individual attorney as well as the integrity of the judicial process.  *Cf. Burt Hill v. Hassan*, 2010 WL 419433 at \*2, \*7 (disallowing use of documents in the litigation, where court believed counsel untruthfully represented that it had obtained the opposing party's documents through an "anonymous source"); *In re Shell Oil*

*Company*, 143 F.R.D. at 107-08 (disallowing use of documents in the litigation, where court found that counsel circumvented the discovery process by obtaining Shell's documents from a current Shell employee). In applying the analogous exclusionary rule in the criminal context, "the court's primary concern is whether the conduct of those closest to the courts – attorneys or government investigators – encouraged or otherwise involved the dishonest conduct." *Lahr v. Fulbright & Jaworski, LLP*, 1996 WL 34393321 at *4 (citing *United States v. Feffer*, 831 F.2d 734, 739 (7th Cir. 1987), in which the court declined to apply the exclusionary rule to documents that an employee took and provided to the IRS to aid the government's criminal tax fraud investigation, because of lack of evidence that the government was involved in the employee's conduct).[2]

Vocera does not claim that Labaton played any role in the Former Employee's "misappropriation"[3] of documents. The Former Employee took the documents upon his separation on August 23, 2013, before Labaton was involved in the litigation, and later presented them to Labaton. *See* Docket Nos. 80, 83-1. Counsel did not cause any wrongful act. Thus, there is no need to punish counsel for an ethical violation or for purposefully circumventing discovery rules.

### b. No Direct Benefit to the Appropriator

In a number of cases in which use of documents has been barred, the misappropriation directly benefits the misappropriator, for example, as might arise in an employment discrimination case where the plaintiff him or herself took the documents. *See, e.g., Fayemi v. Hambrecht and Quist, Inc.*, 174 F.R.D. at 325 (disallowing use of documents where the plaintiff-former employee, after termination, entered his former supervisor's office and obtained from computer files information about employee bonuses to use in his own wrongful termination action). Allowing the document taken by the plaintiff for his or her use in litigation against defendant would reward the plaintiff to engage in wrongful conduct and poses a moral hazard with perverse incentives. *See O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763-64 (9th Cir. 1996) ("[W]e are loathe

---

[2] If the government can use documents misappropriated by a private party not acting as a governmental agent in a criminal prosecution where the defendant's liberty is at issue, it is difficult to discern why such documents should be excluded in an analogous civil case.

[3] The Court uses this term simply to refer to taking documents without authorization.

to provide employees an incentive to rifle through confidential files looking for evidence that might come in handy in later litigation. The opposition clause protects reasonable attempts to contest an employer's discriminatory practices; it is not an insurance policy, a license to flaunt company rules or an invitation to dishonest behavior."). Here, the Former Employee is not a named plaintiff and counsel for both parties agreed during hearing that the Former Employee had no direct interest in this suit.

### c. The Availability of Other Disincentives

Further, other disincentives to document theft are available here. The Former Employee is not immune to claims for breach of contract or conversion. *Cf. JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 697, 70 (E.D. Va. 2007) (holding that an employee was liable for breach of contract by taking without authorization proprietary documents of his employer notwithstanding whistleblower protection of the Sarbanes-Oxley Act). The Court is not persuaded that the additional disincentive of restricting use of the documents is necessary, especially when balanced against the countervailing considerations discussed below.

### d. The Lack of Prejudice to Vocera

At hearing, the parties agreed that the issue was largely one of timing rather than substance. Vocera reiterated that, notwithstanding the Confidentiality Agreements, any responsive, non-privileged documents would be produced through discovery, were discovery to go forward. Thus, the prejudice to Vocera if any (assuming a protective order were in place and Vocera is given an opportunity to assert privileges), lies merely in the *timing* of Labaton's access to the documents.

In this regard, the PSLRA requires a plaintiff to "plead with particularity both falsity and scienter." *In re Daou Systems, Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005). The complaint must "'state with particularity facts giving rise to a *strong inference*'" that the defendant made "false or misleading statements either intentionally or with deliberate recklessness." *Id.* (quoting 15 U.S.C. § 78-4(b)(2)) (emphasis in original). The PSLRA mandates a discovery stay until the complaint withstands a motion to dismiss. *See* 15 U.S.C. § 15 U.S.C. § 78u-4(b)(3)(B) ("all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or

to prevent undue prejudice to that party"); *SG Cowen Securities Corp. v. U.S. Dist. Court for the Northern Dist. of California*, 189 F.3d 909, 912-13 (9th Cir. 1999) (interpreting the discovery stay to apply not only during the pendency of a motion to dismiss, but until "the court has sustained the legal sufficiency of the complaint"). Vocera argues that allowing use of the document during the PSLRA's stay of discovery in advance of a motion to dismiss to test the PSLRA's heighten pleading requirement would prejudice Vocera, allowing Plaintiffs to subvert PSLRA's stay on discovery. Vocera argues that what Plaintiffs seek here is in effect "discovery" because it imposes "discovery costs" on Vocera: it has been forced to oppose this Motion and may be forced to negotiate a protective order and litigate the relevance of the documents. Opp. at 8.

Here, however, there is no "discovery" within the meaning of the PSLRA. The discovery stay was enacted to place "[l]imits on abusive discovery to prevent 'fishing expedition lawsuits.'" H.R. Conf. Rep. No. 104-369, at 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 736. Congress explained:

> The cost of discovery often forces innocent parties to settle frivolous securities class actions. According to the general counsel of an investment bank, "discovery costs account for roughly 80% of total litigation costs in securities fraud cases." In addition, the threat that the time of key employees will be spent responding to discovery requests, including providing deposition testimony, often forces coercive settlements.
>
> The House and Senate heard testimony that discovery in securities class actions often resembles a fishing expedition. As one witness noted, "once the suit is filed, the plaintiff's law firm proceeds to search through all of the company's documents and take endless depositions for the slightest positive comment which they can claim induced the plaintiff to invest and any shred of evidence that the company knew a downturn was coming."

*Id.* (internal citations omitted).

In the instant case, no such discovery has commenced. The documents were not provided by Vocera in response to a document production request; they were already in the possession of a third party who handed them to Labaton's investigator. While opposing this motion and negotiating a protective order imposes some cost on Vocera, that cost is different in quantity and quality from the burdensome discovery costs Congress had in mind in enacting the discovery stay provision. Vocera

is not being subjected to a broad-based fishing expedition. Thus, the PSLRA's discovery stay provision is not violated by Plaintiffs' acquisition and use of the documents in question.

While it is true that Vocera is suffering a slight disadvantage as a result of Plaintiffs' acquisition of the documents in advance of its motion to dismiss, it is not suffering prejudice resulting from a violation of the PSLRA. Moreover, as noted above, the Former Employee (a former high ranking executive) is free to give testimony as to his knowledge about Vocera's conduct even without production of the documents. While the documents may supply greater detail and constitute a more reliable source of information, in that regard the documents thereby serve the paramount truth-seeking function of the Court. That truth-seeking value of documents is not counterveiled by any statutorily recognized interest since as noted above, the PSLRA has not been violated. In sum, there is no substantial cognizable prejudice to Vocera.

### e.  Public Policy in Favor of Whistleblowers

Public policy favors enforcement of securities laws. Notably, the Sarbanes-Oxley Act of 2002 prohibits companies from discriminating against an employee for assisting federal authorities or the employee's supervisor in an investigation into securities fraud. *See* 18 U.S.C. § 1514A(a) (titled "Whistleblower protection for employees of publicly traded companies"). While the instant case is not a fraud investigation by federal authorities or any supervisor at Vocera, private securities litigation plays an important role in the enforcement of securities laws.

Vocera's reliance on *JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 697, 702-03 (E.D. Va. 2007), is misplaced. There, the court rejected the employee's argument that he was not liable for breach of a confidentiality agreement for taking proprietary documents because he was functioning as a Sarbanes-Oxley whistleblower (having reported tax problems to senior management). The issue before the Court is not, as in *Jennings*, whether the whistleblower provision releases the Former Employee from his obligations under the Confidentiality Agreements. The issue is whether Plaintiffs who did not procure or cause the misappropriation are barred from use of documents in seeking to enforce the securities laws. Indeed, the fact that the Former Employee may be subject to liability under *Jennings* provides a disincentive that as noted above obviates the need for the additional disincentive of barring use of the documents herein.

2. <u>Protective Order</u>

Although Plaintiffs may use the documents, they will be subject to a protective order (the form of which is to be agreed upon by the parties) and to claims of privilege. Before the documents are turned over for review by Labaton, Vocera shall have the opportunity to preserve its claims of privilege via redactions; any such redactions shall be accompanied by a privilege log. The documents and any log shall be provided under protective order to Labaton within 21 days of the date of this order.

## IV. <u>CONCLUSION</u>

The Court **DENIES** Plaintiffs' requests that it adjudicate the enforceability of the Confidentiality Agreements and that it conduct an *in camera* review to seclude attorney-client privileged documents for return to Vocera. These requests are moot in light of the ruling herein. Furthermore, enforceability of the Confidential Agreements is not a proper issue before the Court.

The Court **GRANTS** Plaintiffs' request that the deadline to file the consolidated class-action complaint be tolled. Said deadline shall be reset to 21 days after the production of the documents and privilege log ordered herein.

This order disposes of Docket No. 73.

IT IS SO ORDERED.

Dated: July 30, 2014

_____
EDWARD M. CHEN
United States District Judge