ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
EKATERINI M. POLYCHRONOPOULOS
(284838)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
katerinap@rgrdlaw.com

*Liaison Counsel for Plaintiffs*

LABATON SUCHAROW LLP
JONATHAN GARDNER
CAROL C. VILLEGAS
SAMUEL B.C. DE VILLIERS
140 Broadway
New York, New York  10005
Telephone: 212/907-0700
212/818-0477 (fax)
jgardner@labaton.com
cvillegas@labaton.com
sdevilliers@labaton.com

*Lead Counsel for Lead Plaintiffs and the Class*

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE VOCERA COMMUNICATIONS, INC.,  SECURITIES LITIGATION | ) ) ) | MASTER FILE NO. 3:13-cv-03567 EMC |
| ———————————————— | ) ) | <u>CLASS ACTION</u> |
| This Document Relates to: | ) ) | PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, |
| All Actions. | ) ) ) | APPOINTMENT OF CLASS REPRESENTATIVES, AND APPROVAL OF CLASS COUNSEL |
| ———————————————— | ) | DATE: November 5, 2015 TIME: 1:30 p.m. COURTROOM: Honorable Edward M. Chen |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................................................. iii

I.      INTRODUCTION ............................................................................................... 2

II.     LEGAL STANDARD ......................................................................................... 3

III.    STATEMENT OF FACTS .................................................................................. 4

IV.     ARGUMENT ...................................................................................................... 5

        A.    Plaintiffs' Claims are Well Suited for Class Treatment ........................... 5

        B.    The Requirements of Rule 23(a) are Satisfied ........................................ 6

              1.    The Members of the Proposed Class are so Numerous that Joinder of
                    All Members is Impracticable .......................................................... 6

              2.    Questions of Law and Fact are Common to the Proposed Class .......... 7

              3.    Plaintiffs' Claims are Typical of Those of the Proposed Class ........... 9

              4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the
                    Proposed Class and Should be Appointed Co-Class Representatives ...... 10

        C.    The Requirements of Rule 23(b) are Satisfied ...................................... 12

              1.    Common Questions of Law and Fact Predominate ........................... 12

              2.    Plaintiffs Are Entitled to a Presumption of Reliance Under Both *Basic*
                    and *Affiliated Ute* ....................................................................... 13

                    (a)    Plaintiffs Are Entitled to a Presumption of Reliance Under
                           *Basic*'s Fraud-on-the-Market Theory ................................. 14

                           i.    Vocera Common Stock Traded In an Efficient Market ........... 15

                                 a)    Vocera Stock Experienced High Trading Volume ......... 16

                                 b)    A Sufficient Number of Financial Analysts
                                       Covered Vocera .................................................. 16

                                 c)    Vocera Common Stock Traded on the NYSE ............... 17

                                 d)    Eligibility for Short Form Registration ...................... 18

                                 e)    The Price of Vocera Common Stock Reacted to
                                       New Information .................................................. 19

                                 f)    Other Market Efficiency Considerations also
                                       Support Efficiency .............................................. 19

(b)     Plaintiffs Are Entitled to a Presumption of Reliance Under *Affiliated Ute* .................................................................................... 20

3.     Superiority is Established .............................................................. 22

D.     Plaintiff's Counsel Should Be Appointed Class Counsel ..................................... 24

V.     CONCLUSION ................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972)..............................................................................*passim*

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................6, 12, 13

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013).........................................................................*passim*

*Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.*,
    No. 07-cv-7097, 2008 WL 8166001 (C.D. Cal. Nov. 13, 2008) ...........................15

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ..............................................................10

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..............................................................3, 6, 14, 20

*Binder v. Gillespie*,
    184 F.3d 1059 (9th Cir. 1999) .............................................................*passim*

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ..............................................................4, 8

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
    No. 12-cv-1737, 2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ..........................9, 10

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ..........................................................*passim*

*Cartwright v. Viking Indus., Inc.*,
    No. 07-cv-2159, 2009 WL 2982887 (E.D. Cal. Sept.14, 2009) ..........................14

*In re Celera Corp. Sec. Litig.*,
    No. 10-cv-2604, 2014 WL 722408 (N.D. Cal. Feb. 25, 2014) ............................12

*In re Cooper Cos. Inc. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009).............................................................6, 7

*In re Countrywide Fin. Corp. Sec. Litig.*,
    273 F.R.D. 586 (C.D. Cal. 2009)........................................................17, 18, 19

*Dean v. China Agritech*,
    No. 11-cv-1331, 2012 WL 1835708 (C.D. Cal. May 3, 2012)..............................7

*In re Diamond Foods, Inc., Sec. Litig.*,
    295 F.R.D. 240 (N.D. Cal. 2013)...........................................................*passim*

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ................................................................................................... 5

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) .......................................................................... 9, 10, 11

*In re Emulex Corp. Sec. Litig.*,
   210 F.R.D. 717 (C.D. Cal. 2002) .............................................................................. 13

*Erica P. John Fund, Inc.v. Halliburton Co.*,
   131 S. Ct. 2179 (2011) ..................................................................................... 12, 14, 20

*Erikson v. Cornerstone Propane Partners LP*,
   No. 03-cv-2522, 2003 WL 22232387 (N.D. Cal. Sept. 15, 2003) ........................ 24

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   986 F. Supp. 2d 428 (S.D.N.Y. 2013) ..................................................................... 21

*Fogarazzo v. Lehman Bros. Inc.*,
   232 F.R.D. 176 (S.D.N.Y. 2005) ............................................................................. 21

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014) ................................................................................ 3, 6, 13, 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................... 8, 10, 11, 12

*Hodges v. Akeena Solar, Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011) ............................................................................. 15

*James v. UMG Recordings, Inc.*,
   No. 11-cv-1613, 2012 WL 12265529 (N.D. Cal. Nov. 29, 2012) ........................... 9

*In re Juniper Networks, Inc. Sec. Litig.*,
   264 F.R.D. 584 (N.D. Cal. 2009) .......................................................................... 7, 9

*K.M. v. Regence Blue Shield*,
   No. 13-cv-1214, 2015 WL 519932 (W.D. Wash. Feb. 9, 2015).............................. 11

*In re LDK Solar Sec. Litig.*,
   255 F.R.D. 519 (N.D. Cal. 2009) ............................................................................... 8

*Levine v. SkyMall, Inc.*,
   No. 99-cv-166, 2002 WL 31056919 (D. Ariz. May 24, 2002) ............................... 17

*Levya v. Medline Indus.*,
   716 F.3d 510 (9th Cir. 2013) .................................................................................... 13

*Lumen v. Anderson*,
   280 F.R.D. 451 (W.D. Mo. 2012) ............................................................................ 20

*Marsh v. First Bank of Del.*,
  No. 11-cv-5226, 2014 WL 554553 (N.D. Cal. Feb. 7, 2014) ................................. 4

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ........................................................................ 13

*Nguyen v. Radient Pharm. Corp.*,
  287 F.R.D. 563 (C.D. Cal. 2012) ...........................................................*passim*

*Parra v. Bashas', Inc.*,
  536 F.3d 975 (9th Cir. 2008) ............................................................................ 7

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ........................................................................ 6, 8

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ..................................................................................... 23

*Plascencia v. Lending 1st Mortg.*,
  259 F.R.D. 437 (N.D. Cal. 2009) ............................................................... 21, 22

*Richie v. Blue Shield of Cal.*,
  No. 13-cv-2693, 2014 WL 6982943 (N.D. Cal. Dec. 9, 2014) ................................. 6

*In re Sadia S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) ................................................................... 21

*Siemers v. Wells Fargo & Co.*,
  243 F.R.D. 369 (N.D. Cal. 2007) .................................................................. 23

*Smilovits v. First Solar, Inc.*,
  295 F.R.D. 423 (D. Ariz. 2013) .............................................................15-16, 19

*In re Smith Barney Transfer Agent Litig.*,
  290 F.R.D. 42 (S.D.N.Y. 2013) ..................................................................... 21

*Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008) ..................................................................................... 20

*In re UTStarcom, Inc., Sec. Litig.*,
  No. 04-cv-4908, 2010 WL 1945737 (N.D. Cal. May 12, 2010) ................................ 7

*In re VeriSign, Inc. Sec. Litig.*,
  No. 02-cv-2270, 2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) .......................... 8, 10

*Vervaecke v. Chiles, Heider & Co. Inc.*,
  578 F.2d 713 (8th Cir. 1978) ......................................................................... 21

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
  571 F.3d 953 (9th Cir. 2009) ......................................................................... 23

*In re Xcelera.com Sec. Litig.*,
    430 F.3d 503 (1st Cir. 2005) ............................................................................ 20

**Rules & Statutes**

17 C.F.R. § 239.13 ............................................................................................... 18

17 C.F.R. § 239.13 (a)(3) ..................................................................................... 18

Fed. R. Civ. P. 23 ................................................................................................... 5

Fed. R. Civ. P. 23(a) ..................................................................................... 2, 6, 12

Fed. R. Civ. P.  23(a)(1) ........................................................................................ 6

Fed. R. Civ. P.  23(a)(2) ........................................................................................ 7

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 9

Fed. R. Civ. P. 23(a)(4) ................................................................................... 10, 12

Fed. R. Civ. P. 23(b) ............................................................................................ 12

Fed. R. Civ. P.  23(b)(3) ................................................................................ *passim*

Fed. R. Civ. P. 23(g) ...................................................................................... 2, 25

Fed. R. Civ. P. 23(g)(1) ....................................................................................... 24

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ........................................................................ 24

**Other Authorities**

1-14A James Moore et al., MOORE'S MANUAL FEDERAL PRACTICE & PROCEDURE
    § 14A.25[1] (3d ed. 2012) ............................................................................... 10

William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 3:12 (5th ed. 2015) ............................. 6

1

**NOTICE OF MOTION**

2  TO:  ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that on November 5, 2015 at 1:30 p.m., or as soon thereafter as

4  the matter may be heard in the Courtroom of the Honorable Edward M. Chen, movants herein

5  will ask this Court for an Order certifying this matter as a class action pursuant to Federal Rule

6  of Civil Procedure 23, appointing Lead Plaintiffs Arkansas Teacher Retirement System and

7  Baltimore County Employees' Retirement System as Co-Class Representatives, appointing

8  Labaton Sucharow LLP as class counsel, and appointing Robbins Geller Rudman & Dowd LLP

9  as local class counsel.  This motion is supported by the following memorandum of points and

10  authorities, all pleadings and papers filed herein, arguments of counsel, and any other matters

11  properly before the Court.

12

**STATEMENT OF ISSUES TO BE DECIDED**

13     I.     Whether this matter should be certified as a class action.

14     II.    Whether Arkansas Teacher Retirement System and Baltimore County Employees'
                   Retirement System should be appointed as Co-Class Representatives.

15

16     III.   Whether Labaton Sucharow LLP should be appointed as class counsel, with
                   Robbins Geller Rudman & Dowd LLP serving as local class counsel.

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiffs Arkansas Teacher Retirement System ("ATRS") and Baltimore County Employees' Retirement System ("Baltimore County") (together "Plaintiffs") respectfully submit this memorandum of law in support of their motion for (i) class certification pursuant to Fed. R. Civ. P. ("Rule") 23(a) and (b)(3); (ii) the appointment of Plaintiffs as Class Representatives; and (iii) the appointment of Labaton Sucharow LLP ("Lead Counsel") as Class Counsel, and of Robbins Geller Rudman & Dowd LLP ("RGRD") as Local Class Counsel pursuant to Fed. R. Civ. P. 23(g).

## I.   INTRODUCTION

Plaintiffs seek certification of a class consisting of all persons and entities who purchased or acquired the publicly traded securities of Vocera Communications, Inc. ("Vocera" or the "Company") between March 28, 2012 and May 2, 2013, inclusive (the "Class Period"), and who were damaged thereby (the "Class").[1]

Securities fraud cases such as this one are particularly appropriate candidates for class action treatment under Rule 23(b)(3) because the elements of the cause of action generally relate to the acts or omissions of the defendants and because individual damages might be insufficient to justify bringing individual cases.

Like most securities cases, this action easily satisfies all the requirements of Rule 23(a): (i) the fact that tens of millions of Vocera shares traded on the New York Stock Exchange ("NYSE") during the Class Period and more than 1,000 persons and/or entities purchased or acquired Vocera common stock during the Class Period, demonstrates that the proposed class is so numerous that joinder of all members is impracticable; (ii) common questions of law and fact

---

[1] *See* Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("CAC" or "Complaint"), ECF No. 104, ¶¶ 1, 408. (An unredacted version of the Complaint was filed under seal, ECF No. 103-4.) Excluded from the Class are (i) Defendants Vocera, Robert J. Zollars ("Zollars"), William R. Zerella ("Zerella"), and Brent D. Lang ("Lang") (collectively, "Defendants"); (ii) members of the immediate families of Zollars, Zerella, and Lang; (iii) Vocera's subsidiaries and affiliates; (iv) any person who is or was an officer or director of Vocera or any of Vocera's subsidiaries or affiliates during the Class Period; (v) any entity in which any Defendant has a controlling interest; and (vi) the legal representatives, heirs, successors and assigns of any such excluded person or entity. *Id.* ¶ 409.

1    predominate because Class members were injured by the same alleged misconduct;[2] (iii) for the

2    same reason, the claims of the representative parties as well as the defenses thereto are typical of

3    the claims and defenses applicable to the Class; and (iv) Plaintiffs are adequate Class

4    Representatives because their interests are not antagonistic to those of other Class members, and

5    Plaintiffs and their counsel are fully able to vigorously prosecute this action on behalf of the

6    Class.

7           This action also satisfies Rule 23(b)(3)'s predominance and superiority requirements.

8    Questions common to all Class members predominate over any questions affecting only

9    individual Class members.  In particular, a class-wide presumption of reliance is doubly satisfied

10   here:  *First*, Plaintiffs' showing of market efficiency for Vocera's securities triggers the "fraud-

11   on-the-market" presumption of reliance articulated in *Basic Inc. v. Levinson*, 485 U.S. 224

12   (1988), and recently reaffirmed in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398,

13   2414 (2014) (*Halliburton II*); *second*, Defendants' material omissions trigger the presumption of

14   reliance articulated in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54

15   (1972).  Further, proceeding as a class action is superior to other available methods for fairly and

16   efficiently adjudicating Class members' claims.

17          Accordingly, Plaintiffs request certification of the Class, with Plaintiffs serving as

18   Co-Class Representatives and Lead Counsel serving as Class Counsel.

19   **II.    LEGAL STANDARD**

20          When a court evaluates class certification, "the question is not whether the plaintiff or

21   plaintiffs have stated a cause of action or will prevail on the merits, but rather, whether the

22   requirements of Rule 23 are met."  *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 245

23   (N.D. Cal. 2013) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974)).

24   Importantly, while "the trial court must conduct a 'rigorous analysis' to determine whether the

25   party seeking certification has met the prerequisites of Rule 23 . . . the substantive allegations of

26

27          [2] Common questions of law and fact implicated include Defendants' alleged
     misrepresentations and omissions, the materiality of such misrepresentations and omissions, and
28   Defendants' scienter.

1   the complaint must be accepted as true . . . [and] [n]either the possibility that a plaintiff will be

2   unable to prove his allegations, nor the possibility that the later course of the suit might

3   unforeseeably prove the original decision to certify the class wrong, is a basis for declining to

4   certify a class which apparently satisfies Rule 23." *Marsh v. First Bank of Del.*, No. 11-cv-5226,

5   2014 WL 554553, at *4 (N.D. Cal. Feb. 7, 2014) (internal quotations and citations omitted).

6   Because merits questions may be considered "only to the extent - that they are relevant to

7   determining whether the Rule 23 prerequisites for class certification are satisfied," *In re*

8   *Diamond Foods*, 295 F.R.D. at 245 (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133

9   S. Ct. 1184, 1194-95 (2013)), the court only requires "sufficient material before him to determine

10   the nature of the allegations, and rule on compliance with the Rule's requirements[.]" *Blackie v.*

11   *Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

12   **III.    STATEMENT OF FACTS**

13          This action alleges that Defendants violated Sections 10(b) and 20(a) of the Securities

14   Exchange Act of 1934 and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5

15   promulgated thereunder.  This Court has already determined that the Complaint provides detailed

16   allegations that Vocera and certain of its officers deceived the investing public by concealing that

17   the Company's growth was being negatively impacted by factors including government

18   legislative reform, and that Defendants secretly cannibalized Vocera's backlog of bookings to

19   meet the Company's own sales and revenue projections as an unsustainable artifice to maintain

20   the appearance of growth.  *See* Order Granting in Part and Denying in Part Defendants' Motion

21   to Dismiss ("Order"), ECF No. 143, pgs. 2-3.  Throughout the Class Period, the Complaint

22   alleges that Defendants made numerous materially false and misleading statements and

23   omissions, by "consistently touting the growth of the company to investors as strong, consistent,

24   and in line with the growth pattern of prior years," while *failing to disclose* both (i) that the

25   Company was not performing as well as the Defendants had led the market to believe, and

26   (ii) that Vocera was shipping products from its backlog of bookings ahead of time to pump up its

27   quarterly sales figures, thus concealing the Company's ongoing shortfalls in projected sales and

28   revenue.  *Id.*

1    In a partial corrective disclosure on February 27, 2013, Defendants admitted for the first

2  time that government sequestration was affecting their government contracts, but they continued

3  to mislead the market about the Company's current growth and growth potential, touting private

4  hospital business and telling the market that "[o]ur pipeline to the government remains very

5  strong." CAC ¶¶ 236-246. Then, on May 2, 2013, Defendants finally admitted that government

6  healthcare reform was affecting both Vocera's government *and* commercial business, and that

7  the Company growth story Defendants had continued to tout throughout the Class Period simply

8  was not sustainable. CAC ¶¶ 262-270. Defendants also admitted that the "high visibility" into

9  Vocera's expected revenue and earnings—which Defendants had previously touted as a product

10  of Vocera's business model, which placed new sales or bookings into backlog—was

11  compromised. *Id.*

12    These disclosures each resulted in a dramatic decline in the price of Vocera's stock as the

13  market responded to the revelation that Defendants had been concealing its compromised growth

14  story by manipulating its backlog of bookings. *Id.* ¶¶ 236-246, 262-270; Order at 2-3.

15  **IV.   ARGUMENT**

16    **A.    Plaintiffs' Claims are Well Suited for Class Treatment**

17    This is a quintessential case for class certification. The claims arise from the alleged

18  false and misleading public statements and omissions made by Defendants in violation of the

19  federal securities laws. Class actions like this one serve both public and private interests in

20  obtaining legal redress for violations of regulatory schemes, particularly those governing the

21  securities markets. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) ("The securities

22  statutes seek to maintain public confidence in the marketplace. They do so by deterring fraud, in

23  part, through the availability of private securities fraud actions.") (citation omitted).

24    In determining whether this action should be certified as a class action, the question is not

25  whether Plaintiffs will prevail on the merits of the claims alleged, but whether the requirements

26  of Rule 23 are satisfied. *See Amgen*, 133 S. Ct. at 1194-95 ("Rule 23 grants courts no license to

27  engage in free-ranging merits inquiries at the certification stage. Merits questions may be

28

1    considered to the extent—but only to the extent—that they are relevant to determining whether

2    the Rule 23 prerequisites for class certification are satisfied.").

3           Furthermore, it has long been recognized that securities fraud cases such as this one are

4    particularly appropriate candidates for class action treatment under Rule 23(b)(3) because the

5    elements of the cause of action generally relate to the acts or omissions of the defendants and

6    because individual damages might be insufficient to justify bringing individual cases.  *See, e.g.,*

7    *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591 (1997).  Where, as here, the underlying securities

8    are traded in an efficient market, reliance upon the alleged misrepresentations is presumed.

9    *Halliburton II*, 134 S. Ct. at 2414 (upholding the fraud on the market presumption adopted in

10   *Basic*, 485 U.S. 224).  Additionally, because "the case can be characterized as one that primarily

11   alleges omissions," Plaintiffs are also entitled to a presumption of reliance pursuant to *Affiliated*

12   *Ute Citizens of Utah  v. United States*, 406 U.S. 128 (1972).  *See Binder v. Gillespie*, 184 F.3d

13   1059, 1063-64 (9th Cir. 1999).  Consequently, here there is no question that common issues

14   predominate and class certification is proper in this action.

15          **B.     The Requirements of Rule 23(a) are Satisfied**

16          Class certification should be granted because this action satisfies each of the four

17   prerequisites set forth in Rule 23(a):  (1) numerosity; (2) commonality; (3) typicality; and (4)

18   adequacy.  *See, e.g.*, *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014); *In re Diamond Foods*,

19   295 F.R.D. at 244-45.

20          **1.     The Members of the Proposed Class are so Numerous that Joinder of
                     All Members is Impracticable**

21          Rule 23(a)(1) permits class certification if "the class is so numerous that joinder of all

22   members is impractical."  To satisfy the numerosity requirement, "[a] specific minimum number

23   is not necessary, and plaintiffs need not state the exact number of potential class members."

24   *Richie v. Blue Shield of Cal.*, No. 13-cv-2693, 2014 WL 6982943, at *15 (N.D. Cal. Dec. 9,

25   2014).  Rather, "numerosity is presumed where the plaintiff class contains forty or more

26   members," *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009); *see also*

27   William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 3:12 (5th ed. 2015) (same).

28

1    While the exact number of Class members is unknown to Plaintiffs at this time and can

2    be ascertained only through a notice program,[3] Defendants have admitted that that the Putative

3    Class contains more than 100 members.  *See* Defendants' Objections and Responses to Plaintiffs'

4    First Set of Requests for Admission ("RFA Responses"), Ex. 1 at 4.[4]  Furthermore, Vocera had

5    an average of 23.2 million shares outstanding and actively trading on the NYSE during the Class

6    Period.  S*ee* Report on Market Efficiency of Professor Steven P. Feinstein, Ph.D., CFA

7    ("Feinstein Report"), Ex. 2, ¶ 80.  "The Court certainly may infer that, when a corporation has

8    millions of shares trading on a national exchange, more than 40 individuals purchased stock over

9    the course of more than a year."  *In re Cooper Cos.*, 254 F.R.D. at 634 (finding numerosity).

10   Furthermore, Vocera common stock had an average weekly trading volume of approximately 1

11   million shares over the Class Period (Feinstein Report, Ex. 2, ¶ 48), adding up to more than 56

12   million shares traded during that period.  As with the total number of shares outstanding, "in

13   securities cases, when millions of shares are traded during the proposed class period, a court may

14   infer that the numerosity requirement is satisfied."  *Dean v. China Agritech*, No. 11-cv-1331,

15   2012 WL 1835708, at *4 (C.D. Cal. May 3, 2012) (finding numerosity).

16   Accordingly, the numerosity prong is satisfied.

17   **2.    Questions of Law and Fact are Common to the Proposed Class**

18   Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  The

19   commonality requirement has been construed permissively.  *In re UTStarCom, Inc., Sec. Litig.*,

20   No. 04-cv-4908, 2010 WL 1945737, at *4 (N.D. Cal. May 12, 2010).  "All questions of fact and

21   law need not be common to satisfy the rule."  *In re Juniper Networks, Inc. Sec. Litig.,* 264 F.R.D.

22   584, 588 (N.D. Cal. 2009) (internal quotations omitted).  "The existence of shared legal issues

23   with divergent factual predicates is sufficient, as is a common core of salient facts coupled with

24   disparate legal remedies."  *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (quoting

25

---

26   [3] Record owners and other members of the Class may be identified from records maintained by Vocera or its transfer agent and may be notified of the pendency of the Action by mail, using

27   a form of notice similar to that customarily used in securities class actions.

28   [4] Throughout, "Ex." refers to exhibits to the Declaration of Jonathan Gardner in Support of Class Certification, Appointment of Class Representatives, and Approval of Class Counsel.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).  Indeed, "[c]ommonality simply requires that there be at least *one* legal or factual issue common to the class." *In re VeriSign, Inc. Sec. Litig.*, No. 02-cv-2270, 2005 WL 7877645, at *5 (N.D. Cal. Jan. 13, 2005) (emphasis added); *see also Parsons*, 754 F.3d at 675 ("Plaintiffs need not show . . . that every question in the case, or even a preponderance of questions, is capable of class wide resolution.  So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2).") (internal quotations and citations omitted).  "[C]ommonality 'is easily met in cases where class members all bought or sold the same stock in reliance on the same disclosures made by the same parties, even when damages vary.'" *In re VeriSign*, 2005 WL 7877645, at *5; *see also In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 528 (N.D. Cal. 2009) ("Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.") (quoting *Blackie*, 524 F.2d at 902) (alteration omitted).

Here, all Class members are alleged to have been harmed as a result of a common course of conduct arising from material misrepresentations and omissions Defendants made to the investing public.  Thus, there is a well-defined community of interest in the questions of law and fact at issue, which include the following:

    (a)   Whether Defendants violated the Securities Exchange Act of 1934 (the "Exchange Act");

    (b)   Whether Defendants omitted and/or misrepresented material facts;

    (c)   Whether Defendants knowingly or recklessly disregarded that their statements were false and misleading;

    (d)   Whether the price of Vocera's stock was artificially inflated as a result of Defendants' misrepresentations and/or omissions; and

(e)   Whether and to what extent disclosure of the truth regarding Defendants' omissions and/or misrepresentations of material facts caused class members to suffer economic loss and damages.

These common issues satisfy the commonality prong.  *See In re Juniper Networks*, 264 F.R.D. at 588-89 (noting that under 9th Circuit precedent, "[r]epeated misrepresentations by a company to its stockholders satisfy the commonality requirement," and embellishing on the plain logic behind this straightforward precedent by reciting a similar list of common factors typical to securities class actions in finding commonality); *In re Bridgepoint Educ., Inc. Sec. Litig.*, No. 12-cv-1737, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) (holding that commonality was satisfied by common questions "including whether [defendant] made false statements, whether those statements were material, whether they were intentionally false, and whether they caused class members' losses.").[5]

### 3.    Plaintiffs' Claims are Typical of Those of the Proposed Class

Rule 23(a)(3) requires that the class representative's claims and defenses must be "typical" of the claims or defenses of the prospective class.  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *In re Diamond Foods*, 295 F.R.D. at 252 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon*, 976 F.2d at 508).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those absent class members; they need not be substantially

---

[5] A finding of commonality is not affected by the fact that Class members will have varying damages because they purchased and sold securities at different times.  *James v. UMG Recordings, Inc.*, No. 11-cv-1613, 2012 WL 12265529, at *2 (N.D. Cal. Nov. 29, 2012) ("[E]ven though potential class members may have individual defenses and damages issues, this does not make class certification unreasonable if other common factors predominate.") (citing *In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 530 n.8 (N.D. Cal. 2010)).

identical." *Hanlon*, 150 F.3d at 1020.  Where a plaintiff's "claims arise from the same events and conduct that gave rise to the claims of other class members" they are typical of the class.  *In re Bridgepoint Educ.*, 2015 WL 224631, at *5.  Moreover, "[w]e do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct."  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

Here, typicality is satisfied because Plaintiffs' claims are founded on the same alleged facts and legal theories as the claims of all other Class members—*i.e.*, the alleged artificial inflation and consequent market correction of the price of Vocera's stock caused by Defendants' fraudulent public statements and omissions—and the injury Plaintiffs suffered is alleged to be the same as the injury suffered by the proposed Class as a whole.  *See In re Bridgepoint Educ.*, 2015 WL 224631, at *5 ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members.  They are, therefore, typical of the class.")

### 4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Proposed Class and Should be Appointed Co-Class Representatives

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  "The purpose of adequacy 'is to protect the legal rights of absent class members.'"  *In re VeriSign*, 2005 WL 7877645, at *8.  When Plaintiffs have "a sufficient interest in the outcome of the case to ensure vigorous advocacy" and do not have interests "antagonistic to those of the proposed class," the adequacy requirement is met.  1-14A James Moore et al., Moore's Manual Federal Practice & Procedure § 14A.25[1] (3d ed. 2012); *see also Ellis*, 657 F.3d at 985 ("Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees.").  "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs

1   and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985

2   (quoting *Hanlon*, 150 F.3d at 1020).

3          Adequacy is amply satisfied here because Plaintiffs' interests are not antagonistic to those

4   of other Class members, and Plaintiffs' counsel is qualified, experienced, and fully capable of

5   prosecuting this action vigorously on behalf of the Class.  As set forth above, Plaintiffs

6   purchased Vocera common stock during the Class Period and were injured by the same material

7   misrepresentations and omissions that injured all proposed Class members.  Thus, Plaintiffs'

8   interest in establishing Defendants' liability and obtaining the maximum possible recovery is

9   aligned with the interests of absent Class members.  Plaintiffs have also demonstrated their

10   willingness and ability to serve as Class Representatives.  Among other responsibilities

11   throughout the litigation so far, Plaintiffs have supervised and monitored the progress of court

12   proceedings, participated in discussions with Lead Counsel concerning case developments,

13   requested and evaluated regular status reports from Lead Counsel, searched for and produced

14   documents relevant to their claims and their status as Lead Plaintiffs, are preparing to be

15   deposed, and have reviewed pleadings in this action.  *See* Lead Plaintiffs' Declarations in

16   Support of Class Certification.

17          Moreover, as set forth in Section D, below, Plaintiffs have engaged qualified,

18   experienced and capable attorneys who have an excellent track record in prosecuting complex

19   securities class actions such as this litigation.  As their actions in this case and others

20   demonstrate, Plaintiffs' chosen counsel have committed, and are willing to commit, considerable

21   resources to the prosecution of this action, and have fully, fairly and more than adequately

22   represented the interests of the Class in this action to date.  *See K.M. v. Regence Blue Shield*, No.

23   13-cv-1214, 2015 WL 519932, at *4 (W.D. Wash. Feb. 9, 2015) ("Questions of a class

24   representative's adequacy dovetail with questions of his counsel's adequacy.").

25          In sum, Plaintiffs are well-suited to represent the Class, have no interests antagonistic to

26   other Class members and, like other Class members, have been injured by Defendants' material

27   misrepresentations and omissions during the Class Period and suffered losses therefrom.  No

28   unique defenses apply to Plaintiffs.  Plaintiffs are willing and able to prosecute this action on

1    behalf of the Class and "will fairly and adequately protect the interests of the class."  *See* Rule

2    23(a)(4).  Accordingly, the Court should appoint Lead Plaintiffs as Co-Class Representatives and

3    Lead Counsel as Class Counsel.

4            **C.        The Requirements of Rule 23(b) are Satisfied**

5            In addition to meeting the prerequisites of Rule 23(a), a class action must also satisfy at

6    least one of the conditions of Rule 23(b).  Lead Plaintiffs seek class certification under Rule

7    23(b)(3), which requires "predominance" and "superiority," both of which are satisfied here.

8            **1.        Common Questions of Law and Fact Predominate**

9            Rule 23(b)(3) requires "that the questions of law or fact common to class members

10   predominate over any questions affecting only individual members."  This requirement "tests

11   whether proposed classes are sufficiently cohesive to warrant adjudication by representation."

12   *Amchem*, 521 U.S. at 623.  Where "[t]he claims of all class members will be proven by the same

13   evidence because Defendants' alleged misconduct affected all class members in the same

14   manner," common questions predominate.  *In re Celera Corp. Sec. Litig.*, No. 10-cv-2604, 2014

15   WL 722408, at *4 (N.D. Cal. Feb. 25, 2014); *see also In re Diamond Foods*, 295 F.R.D. at 246

16   ("[The predominance inquiry] focuses on the relationship between the common and individual

17   issues.  Class certification under Rule 23(b)(3) is proper when common questions represent a

18   significant portion of the case and can be resolved for all members of the class in a single

19   adjudication.") (citing *Hanlon*, 150 F.3d at 1022) (internal quotations omitted).  Rule 23(b)(3)

20   "does *not* require a plaintiff seeking class certification to prove that each 'element of her claim is

21   susceptible to classwide proof,'" just "that common questions '*predominate* over any questions

22   affecting only individual [class] members.'"  *Amgen*, 133 S. Ct. at 1196 (alterations omitted).

23          For class certification purposes, the Supreme Court has found, and recently reiterated,

24   that falsity, materiality and loss causation are common issues to a class because "failure of

25   proof" of any of these elements "would end the case" for all putative class members.  *Amgen*,

26   133 S. Ct. at 1195-96 ("materiality is a 'common question' for purposes of Rule 23(b)(3)")

27   (alteration omitted); *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2186 (2011)

28

1    (*Halliburton I* ) (plaintiffs are not required to "show loss causation as a condition of obtaining

2    class certification"); *Halliburton II*, 134 S. Ct. at 2416-17.

3            Here, it is beyond dispute that the questions of law and fact common to all class members

4    include:  (i) whether Defendants engaged in a scheme to defraud and intentionally or recklessly

5    made materially false and misleading statements and omissions; and (ii) whether this scheme and

6    these false and misleading statements and omissions caused damages to members of the Class as

7    a whole.  As in most securities fraud class action cases, the answer to each of these questions will

8    be tried and proven by common evidence because Defendants' alleged misconduct affected all

9    class members in the same manner, *i.e.*, Defendants' scheme and false and misleading statements

10   and omissions artificially inflated the price of Vocera common stock.  *See, e.g., In re Emulex*

11   *Corp. Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002) ("The predominant questions of law or

12   fact at issue in this case are the alleged misrepresentation[s] Defendants made during the Class

13   Period and are common to the class"); *Amchem*, 521 U.S. at 625 ("Predominance is a test readily

14   met in certain cases alleging . . . securities fraud") (citing Rule 23(b)(3) advisory committee

15   notes).

16           Once the common questions underlying these claims are resolved, all that will remain is

17   the purely mechanical act of computing the damages suffered by each Class member.[6,7]  By

18   contrast, there are no significant individual issues.

19                      **2.      Plaintiffs Are Entitled to a Presumption of Reliance Under Both *Basic***
                             **and *Affiliated Ute***

20

21           In a Rule 10b-5 action involving false and misleading statements, courts look to the

22   fraud-on-the-market presumption of reliance recently reaffirmed by the Supreme Court in

23

24   ────────────────────
         [6] Plaintiffs' expert, Professor Steven Feinstein, is fully capable of adequately calculating
25   damages on a class-wide basis at a later stage of the litigation.  Feinstein Report, Ex. 2, ¶¶ 166-
     68 (setting forth common methodology for calculating class wide damages).
         [7] As the Ninth Circuit has repeatedly held "'the amount of damages is invariably an individual
26   question and does not defeat class action treatment.'"  *Levya v. Medline Indus.*, 716 F.3d 510,
     513-14 (9th Cir. 2013) (internal alteration omitted); *see also Messner v. Northshore Univ.*
27   *HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) ("It is well established that the presence of
     individualized questions regarding damages does not prevent certification under Rule
28   23(b)(3).").

1   *Halliburton II*, 134 S. Ct. at 2407-08.  Furthermore, in "a mixed case of misstatements and

2   omissions," a presumption of reliance pursuant to *Affiliated Ute*, 406 U.S. at 153-54, is also

3   applicable if "the case can be characterized as one that primarily alleges omissions."  *Binder*, 184

4   F.3d at 1063-64; *see also Cartwright v. Viking Indus., Inc.*, No. 07-cv-2159, 2009 WL 2982887,

5   at *14 (E.D. Cal. Sept. 14, 2009) (reliance is presumed "where the plaintiffs have primarily

6   alleged omissions, even though the plaintiffs allege a mix of misstatements and omissions.")

7   (citing *Binder*, 184 F.3d at 1064) (internal quotations and alteration omitted).  In a case

8   "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to

9   recovery.  *All that is necessary is that the facts withheld be material in the sense that a*

10  *reasonable investor might have considered them important in the making of this decision*."

11  *Affiliated Ute*, 406 U.S. at 153-54 (emphasis added) (citations omitted).

12          Here, plaintiffs have established that they are entitled to a presumption of reliance under

13  both *Basic* and *Affiliated Ute*.

14          **(a)     Plaintiffs Are Entitled to a Presumption of Reliance Under**
                      ***Basic*'s Fraud-on-the-Market Theory**

15          Class-wide reliance is established in this action through the "fraud-on-the-market"

16  presumption of reliance—that "the market price of shares traded on well-developed markets

17  reflects all publicly available information, and, hence, any material misrepresentations" and that

18  investors in such markets transact "in reliance on the integrity of that price"—which the Supreme

19  Court set forth in *Basic*, 485 U.S. 224, 246 (1988) and recently reaffirmed in *Halliburton II*, 134

20  S. Ct. 2398, 2408 (2014).  Application of *Basic* dispenses with the requirement that each Class

21  member prove individual reliance on Defendants' alleged misstatements and/or omissions.  *See*

22  485 U.S. at 241-42.  To invoke the *Basic* presumption of reliance, Plaintiffs must establish that

23  "(1) the alleged misrepresentations were publicly known, (2) the stock traded in an efficient

24  market, and (3) the relevant transaction took place between the time the misrepresentations were

25  made and the time the truth was revealed."  *In re Diamond Foods*, 295 F.R.D. at 247 (quotations

26  omitted)(citing *Halliburton I,* 131 S. Ct. at 2185).

27

28

1    Here, the *Basic* prerequisites of publicity, market efficiency, and market timing are easily

2    met.  Plaintiffs have alleged that Defendants made material public misrepresentations and

3    omissions that artificially inflated (or artificially maintained) the market price of Vocera's stock.

4    *See, e.g.*, CAC ¶¶ 41, 271-276.  Because Plaintiffs bought Vocera common stock during the

5    Class Period and suffered losses when the truth was disclosed, *id.*, "the relevant transaction took

6    place between the time the misrepresentations were made and the time the truth was revealed."

7    *In re Diamond Foods*, 295 F.R.D. at 247 (internal quotations omitted).  Finally, Vocera's

8    common stock traded on the NYSE, which is an efficient market.  *Argent Classic Convertible*

9    *Arbitrage Fund L.P. v. Countrywide Fin. Corp.*, No. 07-cv-7097, 2008 WL 8166001, at *3 (C.D.

10   Cal. Nov. 13, 2008) (noting that if a stock trades on the NYSE and has a high trading volume,

11   then "an efficient market is presumed" and "reliance is easily pled with a simple allegation that

12   the NYSE price was relied upon.").

13   Accordingly, the predominance prong is satisfied.

14                              **i.      Vocera Common Stock Traded In an Efficient Market**

15   Courts, including the Ninth Circuit, consider the factors set forth in *Cammer v. Bloom*,

16   711 F. Supp. 1264 (D.N.J. 1989), when evaluating market efficiency.  *In re Diamond Foods*, 295

17   F.R.D. at 247.  The five *Cammer* factors are "[1] whether the stock trades at a high weekly

18   volume; [2] whether securities analysts follow and report on the stock; [3] whether the stock has

19   market makers and arbitrageurs; [4] whether the company is eligible to file [a short form

20   registration statement]; and [5] whether there are 'empirical facts showing a cause and effect

21   relationship between unexpected corporate events or financial releases and an immediate

22   response in the stock price.'"  *Binder*, 184 F.3d at 1065 (quoting *Cammer*, 711 F. Supp. at 1286-

23   87); *see also, e.g.*, *Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 571 (C.D. Cal. 2012)

24   (same); *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 268 n.16 (N.D. Cal. 2011) (same).  Some

25   courts, including certain district courts in the Ninth Circuit, have found that four additional

26   factors can weigh in favor of finding market efficiently: (i) large market capitalization;

27   (ii) narrow bid-ask spread; (iii) large public float; and (iv) the presence of institutional investors.

28   *See, e.g.*, *Nguyen*, 287 F.R.D. at 574; *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 432 n.3

1  (D. Ariz. 2013); *see also* Feinstein Report, Ex. 2, ¶¶ 35-45 (discussing the relevance of both the

2  *Cammer* factors and the four additional factors).

3    Here, each of the above-listed factors supports a finding of market efficiency:

4  **a)    Vocera Stock Experienced High Trading Volume**

5    Under the first *Cammer* factor, "[a] high average trading volume supports a finding of

6  market efficiency, because it 'implies significant investor interest in the company,' and that

7  interest 'implies a likelihood that many investors are executing trades on the basis of newly

8  available or disseminated corporate information.'" *Nguyen*, 287 F.R.D. at 571 (quoting *Cammer*,

9  711 F. Supp. at 1286).  In addition, courts have recognized that turnover, "measured by average

10  weekly trading of 2% or more of the outstanding shares would justify a strong presumption that

11  the market for the security is an efficient one; 1% would justify a substantial presumption."  *Id.*

12  (quoting *Cammer*, 711 F. Supp. at 1286).

13    Here, Vocera common stock traded on the NYSE regularly and actively throughout the

14  Class Period, with an average *daily* trading volume of 204,472 shares, representing an average

15  weekly turnover of *4.4%* of shares outstanding, more than doubling the turnover that would

16  support a strong presumption that the market for the security is an efficient one.  *See* Feinstein

17  Report, Ex. 2, ¶¶ 47-48; RFA Responses, Ex. 1 at 11-12.

18    Thus, the first *Cammer* factor supports a strong presumption that Vocera common stock

19  traded in an efficient market during the Class Period.

20  **b)    A Sufficient Number of Financial Analysts**
     **Covered Vocera**

21

22    Under the second *Cammer* factor, "[c]overage by securities analysts indicates market

23  efficiency because the price of a company's stock is often affected by analyst reports of

24  information they learn about that stock."  *Nguyen*, 287 F.R.D. at 571 (quoting *Cammer*, 711

25  F. Supp. at 1286).

26    Here, at least 8 equity analysts covered Vocera during the Class Period, including major

27  firms such as J.P. Morgan, Leerink Swann, Piper Jaffray, Wells Fargo, and William Blair.

28  Feinstein Report, Ex. 2, ¶¶ 51-52.  Between them, these analysts published at least *46* analyst

1   reports on Vocera during the Class Period.  *Id.*  Thus, the second *Cammer* factor supports a

2   finding of market efficiency.  *See, e.g.*, *Cammer*, 711 Supp. at 1283 n.30 (fifteen analyst reports

3   issued in a one year period surrounding the class period supported plaintiff's prima facie

4   showing of an efficient market for the company's stock); *In re Diamond Foods*, 295 F.R.D. at

5   248 (coverage by 13 analysts supported finding of market efficiency); *Levine v. SkyMall, Inc.*,

6   No. 99-cv-166, 2002 WL 31056919, at *5-6 (D. Ariz. May 24, 2002) (coverage by four firms

7   weighed in favor of concluding that the market for the stock was efficient, despite absence of

8   "big name" firms).

9                              **c)      Vocera Common Stock Traded on the NYSE**

10          According to the third *Cammer* factor, "market makers . . . further provide a mechanism

11   through which the market could be expected to receive information and fully incorporate it into

12   the stock price of a security, as these individuals 'would react swiftly to company news and

13   reported financial results by buying or selling stock and driving it to a changed price level.'"  *In*

14   *re Diamond Foods*, 295 F.R.D. at 248 (quoting *Cammer*, 711 F. Supp. at 1286-87).  "A market-

15   maker is one who helps establish a market for securities by reporting bid-and-asked quotations

16   (the price a buyer will pay for a security and the price a seller will sell a security) and who stands

17   ready to buy or sell at these publicly quoted prices."  *In re Countrywide Fin. Corp. Sec. Litig.*,

18   273 F.R.D. 586, 613-14 (C.D. Cal. 2009) (internal quotations and citation omitted).

19          Here, Vocera common stock traded on the NYSE, which—unlike the type of over-the-

20   counter markets considered in *Cammer*, which rely on decentralized market makers to provide

21   liquidity for trading—relies on a computerized system to match orders and provide quotes in a

22   highly developed network of brokers, virtually guaranteeing a liquid market for the security.

23   Feinstein Report, Ex. 2, ¶¶ 59-65.  Nonetheless, there were still *129* market makers for Vocera

24   common stock during the Class Period, *id.* at ¶ 64, more than fulfilling both the letter and spirit

25   of this factor.  *See In re Diamond Foods*, 295 F.R.D. at 248 (finding that just *19* brokers fulfilled

26   this *Cammer* factor for a stock trading on a developed market such as the NYSE or NASDAQ).

27

28

1

**d)** **Eligibility for Short Form Registration**

2     The fourth *Cammer* factor, eligibility to file a short form registration statement (Form S-

3  3) is "based on the assumption that the market has sufficient information about an issuer." *See*

4  *Countrywide*, 273 F.R.D. at 613 (citing *Cammer*, 711 F. Supp. at 1284). Because the SEC only

5  permits the use of an S-3 short form Registration Statement by issuers whose securities are

6  presumed to be actively traded and widely followed, Form S-3 filing eligibility is indicative of

7  market efficiency. *Cammer*, 711 F. Supp. at 1284-85. Until recently, the key requirement for S-

8  3 eligibility with regard to this *Cammer* factor was that a company must possess at least $75

9  million in public float – that is, "common equity held by non-affiliates of the registrant." *Nguyen*,

10  287 F.R.D. at 573 (focusing its S-3 filing eligibility analysis on the $75 million public float

11  requirement despite noting that the SEC had relaxed this requirement since *Cammer*); *In re*

12  *Countrywide*, 273 F.R.D. at 613 n.82 (noting that the prominence of S-3 filing eligibility as an

13  important *Cammer* factor "may be due more to tradition than its value," but that the public float

14  aspect of this factor, at least, is important enough that "[c]ourts sometimes consider public float

15  as a separate factor as well."). Today, the SEC has loosened the public float requirement, and

16  now requires only a *market capitalization* of more than $75 million for S-3 eligibility. 17 C.F.R.

17  § 239.13. Here, Vocera's public float during the Class Period averaged $317.5 million, Feinstein

18  Report, Ex. 2, ¶ 71, while its market capitalization averaged $596.8 million, *id.* at ¶ 77. Thus,

19  the fourth *Cammer* factor is clearly satisfied.[8]

20

21

22     [8] The SEC also requires a company to demonstrate that it timely filed all reports required
under the Exchange Act for a period of 12 months before it may file a Form S-3 (*see* 17 C.F.R. §

23  239.13 (a)(3)). Because the beginning date of the Class Period is the date of Vocera's initial
public offering on March 28, 2012, Vocera was not technically eligible to file a Form S-3 until it

24  had met this additional requirement. However, the filing requirement is only relevant to market
efficiency considerations to the extent it demonstrates that "a minimum amount of publicly

25  available information" is available. *In re Countrywide*, 273 F.R.D. at 613 n.82. In addition to
regularly filing financial reports with the SEC throughout the Class Period, Vocera filed

26  registration statements for its common stock containing three years of financial statement data
prior to its IPO. *See* Feinstein Report, Ex. 2, ¶¶ 72, 74. Vocera's registration statement and

27  financial reports, supplemented by information provided by analysts and news coverage,
provided investors with maximum access to financial information about the Company on a

28  continuous basis throughout the Class Period.

### e) The Price of Vocera Common Stock Reacted to New Information

The fifth *Cammer* factor is also the most important, because a causal connection between new information and stock price movement is "the essence of an efficient market and the foundation for the fraud on the market theory." *Nguyen*, 287 F.R.D. at 574 (quoting *Cammer*, 711 F. Supp. at 1287); *Countrywide*, 273 F.R.D. at 614 (the fifth *Cammer* factor is the "most important" in the analysis). As explained in *Countrywide*:

> Event studies are by far the most common test for a causal connection. An event study attempts to determine whether new information correlates with a price movement—including the price movement's direction and, perhaps, magnitude. Causation may be inferred from this correlation. Naturally, the inference that the new information has caused the price movement is stronger under some circumstances. For example, the inference will be stronger: (1) the more statistically significant the correlation; (2) the more objectively defined the event is; (3) the better the study controls for nonfraud factors; and (4) the larger and more representative the sample.

*Id.*

Here, Plaintiffs' expert Professor Steven Feinstein has conducted a thorough event study, *see* Feinstein Report, Ex. 2, ¶¶ 94-165, setting forth "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price." *In re Diamond Foods*, 295 F.R.D. at 248 (quoting *Cammer,* 711 F. Supp. at 1287). Professor Feinstein also conducted additional empirical tests on Class Period earnings and guidance announcement events which further support the event study's finding of a causal connection between the market learning new information about Vocera and movement in Vocera's stock price. *See* Feinstein Report, Ex. 2, ¶¶ 144-63; *Nguyen*, 287 F.R.D. at 574.

Thus, the fifth *Cammer* factor supports a finding of market efficiency.

### f) Other Market Efficiency Considerations also Support Efficiency

Some courts, including certain district courts in the Ninth Circuit, have found that four additional factors can weigh in favor of finding market efficiently: (i) large market capitalization; (ii) narrow bid-ask spread; (iii) large public float; and (iv) the presence of institutional investors. *See, e.g.*, *Nguyen*, 287 F.R.D. at 574; *Smilovits*, 295 F.R.D. at 432 n.3;

1    *see also Lumen v. Anderson*, 280 F.R.D. 451, 460 (W.D. Mo. 2012) (*Cammer* does not provide a

2    checklist but rather factors to be considered).

3         Here, each of these additional factors was present during the Class Period.  First, as

4    discussed in Section iv, *supra*, Vocera's large market capitalization and public float support a

5    finding of market efficiency.  Feinstein Report, Ex. 2, ¶¶ 78, 81.  Second, the bid-ask spread for

6    Vocera's common stock in dollar terms averaged $0.05 during the Class Period, well below the

7    typical bid-ask spreads exhibited by other publicly-traded stocks in the U.S. during that period.

8    *Id.* ¶¶ 86-87.  Expressed as a percentage, the average bid-ask spread for Vocera common stock

9    over the course of the Class Period was 0.19%.  *Id.* ¶ 84.  Significantly, courts have found a

10   spread as high as 2.44% to weigh in favor of market efficiency.  *See Nguyen*, 287 F.R.D. at 574

11   (noting this fact and consequently finding that a spread of 0.58% supported efficiency).  Third, at

12   least 131 major institutions owned Vocera common stock during the Class Period, further

13   supporting a finding of market efficiency.  Feinstein Report, Ex. 2, ¶ 54; *In re Xcelera.com Sec.*

14   *Litig.*, 430 F.3d 503, 515 (1st Cir. 2005) (affirming class certification where "at least thirty"

15   institutional investors invested in Xcelera during the class period).

16        Each factor discussed above supports a finding of market efficiency.  Accordingly, the

17   Class is entitled to a presumption of reliance.  *See Halliburton I*, 131 S. Ct. at 2185 (citing *Basic*

18   *Inc.*, 485 U.S. at 243).

19              **(b)    Plaintiffs Are Entitled to a Presumption of Reliance Under**
                        ***Affiliated Ute***
20

21        Further, or in the alternative, because the claims stated (and upheld) in this case revolve

22   around Defendants' material omissions of information that, if revealed, would have significantly

23   altered the total mix of information available to investors at the time the information was

24   concealed, Plaintiffs are also entitled to a presumption of reliance under *Affiliated Ute*.  The

25   *Affiliated Ute* presumption applies to claims "involving primarily a failure to disclose."  406 U.S.

26   at 153; *see also, e.g.*, *Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159

27   (2008); *Binder*, 184 F.3d at 1064 (the *Affiliated Ute* presumption applies to Ninth Circuit "cases

28   that primarily allege omissions.").  In such cases, "positive proof of reliance is ***not*** a prerequisite

to recovery." *Affiliated Ute*, 406 U.S. at 153-54 (emphasis added); *see also Vervaecke v. Chiles, Heider & Co. Inc.*, 578 F.2d 713, 717 (8th Cir. 1978) (explaining that "reliance has little rational role in cases of nondisclosure, largely because of the difficulty of proving reliance on the negative") (internal quotations omitted).  Instead, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of [their] decision." *Affiliated Ute*, 406 U.S. at 153-54; *see also Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 447 (N.D. Cal. 2009) (same).

The *Affiliated Ute* doctrine arises out of the pragmatic reality that "as a practical matter [reliance on an omission] is impossible to prove."  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 469 (S.D.N.Y. 2013) (internal quotations omitted).  This is because, "[w]hen a defendant's fraud consists primarily of omissions, requiring a plaintiff to show a speculative set of facts, *i.e.*, how he would have behaved if omitted material information had been disclosed, places an unrealistic evidentiary burden on the 10(b) plaintiff."  *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 47 (S.D.N.Y. 2013) (alteration and internal quotations omitted).  "Accordingly, reliance is presumed when it would be impossible to prove." *Id.*

Furthermore, as with the fraud-on-the-market presumption of reliance, a plaintiff need not prove materiality in order to invoke the *Affiliated Ute* presumption at the class certification stage; it need only be alleged.  *See Amgen*, 133 S. Ct. at 1195 ("[B]ecause the question of materiality is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor, materiality can be proved through evidence common to the class.") (alteration, ellipsis, and internal quotations omitted); *In re Sadia S.A. Sec. Litig.*, 269 F.R.D. 298, 308 (S.D.N.Y. 2010) ("Demonstrating materiality under the fraud on the market and *Affiliated Ute* presumptions presents essentially the same inquiry."); *Fogarazzo v. Lehman Bros. Inc.*, 232 F.R.D. 176, 187 (S.D.N.Y. 2005) ("[T]he *Affiliated Ute* presumption is simply the fraud on the market presumption applied to material omissions.  Both presumptions depend on the materiality of the undisclosed or misstated information."); *Plascencia*, 259 F.R.D. at 447 (granting class certification in a case "involving primarily a failure to disclose" because, at trial, "a jury may

find that the [undisclosed] initial interest rate and negative amortization features of the loans were material in the sense that a reasonable person would have wanted to know about them.  The jury thus may presume that class members would not have agreed to purchase their loans if Defendants had clearly disclosed that the initial one percent rate was ephemeral and that negative amortization was certain to occur if only the minimum payments were made.").

Here, there can be no dispute that "the case can be characterized as one that primarily alleges omissions," *Binder*, 184 F.3d at 1064, and that materiality has been adequately alleged.  Defendants deceived the market (1) by omitting to inform the market that Vocera's growth trajectory was off-track and the Company was not performing as well as expected because sales bookings were being negatively impacted by factors including government legislative reform, and (2) by omitting to inform the market that the Company was papering over these issues by accelerating performance and revenue recognition on its backlog of existing bookings until this backlog was so depleted that the entire artifice collapsed.  *See, e.g.,* CAC ¶¶ 8-23 (summarizing this process).  As in *Plascencia*, class certification should be granted here because a reasonable person deciding whether to purchase Vocera stock would have wanted to know this concealed information—that the Company was experiencing ongoing shortfalls in projected sales and revenue and that Vocera was cannibalizing its bookings backlog to hide this slowdown from investors—and a jury presented with these facts could reasonably conclude that class members would not have agreed to purchase Vocera stock if Defendants had clearly disclosed that Vocera's seemingly healthy revenue figures were being artificially propped up by an unsustainable cycle of "borrowing" from the future until there was nothing left to borrow.  *Plascencia*, 259 F.R.D. at 447.  Plaintiffs are therefore entitled to the *Affiliated Ute* presumption to establish reliance.

### 3.    Superiority is Established

Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Courts recognize the class action device as superior to other methods for fairly and efficiently adjudicating large-scale securities class actions, which assert claims on behalf of numerous individuals.  The Supreme

1    Court has explained that class actions "permit the plaintiffs to pool claims which would be

2    uneconomical to litigate individually" and that "most of the plaintiffs would have no realistic day

3    in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809

4    (1985); *accord In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir.

5    2009) ("A principal purpose behind Rule 23 class actions is to promote 'efficiency and economy

6    of litigation.'") (citation omitted).

7         In assessing the superiority prong, Rule 23(b)(3) sets forth four factors:

8         (a)    the class members' interests in individually controlling the prosecution of separate

9                actions;

10        (b)    the extent and nature of any litigation concerning the controversy already

11               commenced;

12        (c)    the desirability of concentrating the litigation of the claims in one forum; and

13        (d)    the likely difficulties in managing a class action.

14        Here, each factor weighs strongly in favor of class certification.

15        *First*, the interest of Class members in asserting individual claims is limited.  The

16   proposed Class consists of a large number of purchasers of Vocera stock who are geographically

17   dispersed and whose individual damages likely are small enough to keep individual litigation

18   from being economically worthwhile.  Absent certification, the burden and expense of litigating

19   would not be distributed among the Class, one of the advantages afforded by the class action

20   mechanism.  *See Siemers v. Wells Fargo & Co.*, 243 F.R.D. 369, 376 (N.D. Cal. 2007) ("The

21   amounts involved are modest per investor.  No single investor could hope to recover more than it

22   would cost to prosecute an individual suit.").

23        *Second*, Lead Counsel is not aware of other pending §10(b) litigation commenced by any

24   Class member in the United States that tracks the allegations set forth in the Complaint.  The

25   absence of other matters further confirms the limited interest individual Class members have in

26   prosecuting separate actions.

27        *Third*, concentrating the litigation in this Court has many benefits, including eliminating

28   the risk of inconsistent adjudication and promoting the fair and efficient use of the judicial

1   system.  *See Erikson v. Cornerstone Propane Partners LP*, No. 03-cv-2522, 2003 WL 22232387,

2   at \*2 (N.D. Cal. Sept. 15, 2003).  This factor thus weighs in favor of class certification.

3       Lastly, Plaintiffs do not foresee any management difficulties that will preclude this action

4   from being maintained as a class action.  Consistent with Rule 23(b)(3), certification of the case

5   as a class action would not only be superior to other available methods for fairly and efficiently

6   adjudicating the controversy, but also appears to be the sole method for fairly and efficiently

7   litigating the claims of all members of the proposed Class.  *See, e.g.*, *Nguyen*, 287 F.R.D. at 575

8   ("If united by a common core of facts, and a presumption of reliance on an efficient market, class

9   actions are the superior way to litigate a case alleging violations of securities fraud.")

10      Accordingly, under the Rule 23(b)(3) factors, the class action mechanism is superior to

11  any other method to secure the just, speedy, and efficient determination of Class members'

12  claims.

13      **D.      Plaintiff's Counsel Should Be Appointed Class Counsel**

14      Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel."

15  Plaintiffs respectfully request that the Court appoint its chosen Lead Counsel, Labaton Sucharow

16  LLP, as Class Counsel, and Robbins Geller Rudman & Dowd LLP as Local Class Counsel.  In

17  appointing class counsel, the court should consider counsel's work "in identifying or

18  investigating potential claims in the action," "counsel's experience in handling class actions,"

19  "counsel's knowledge of the applicable law," and "the resources that counsel will commit to

20  representing the class."  Rule 23(g)(1)(A)(i)-(iv).  Lead Counsel is well-qualified to prosecute

21  this case on behalf of Plaintiffs and the other members of the Class.

22      Labaton Sucharow attorneys have extensive securities litigation experience and have

23  successfully prosecuted numerous securities fraud class actions on behalf of injured investors.

24  *See* Labaton Sucharow Firm Biography, Ex. 3.  With the assistance of Robbins Geller attorneys

25  as local counsel, Lead Counsel has already undertaken a vigorous prosecution of this action,

26  including conducting an extensive investigation of the claims, developing a detailed plan for the

27  prosecution of the case, defeating Defendants' motion to dismiss, engaging in discovery, and

28  pursuing class certification.  Accordingly, Labaton Sucharow fulfills the requirements of Rule

1    23(g) and the Court should appoint Labaton Sucharow as Class Counsel and Robbins Geller as

2    Local Class Counsel.

3    **V.      CONCLUSION**

4          Plaintiffs respectfully request that the Court: (i) certify this action as a class action

5    pursuant to Rules 23(a) and 23(b)(3); (ii) appoint Lead Plaintiffs ATRS and Baltimore County as

6    Class Representatives pursuant to Rules 23(a) and 23(b)(3); (iii) appoint Labaton Sucharow LLP

7    as Class Counsel and Robbins Geller Rudman & Dowd LLP as Local Class Counsel pursuant to

8    Rule 23(g); and (iv) grant Plaintiffs any such further relief as the Court deems just and proper.

9

10   Dated: July 15, 2015.                     Respectfully submitted,

11                                             LABATON SUCHAROW LLP

12                                             /s/ Jonathan Gardner
                                               JONATHAN GARDNER (*pro hac vice*)
13                                             CAROL C. VILLEGAS (*pro hac vice*)
                                               SAMUEL B. C. DE VILLIERS (*pro hac vice*)
14                                             140 Broadway
                                               New York, NY 10005
15                                             Telephone: 212/907-0700
                                               212/818-0477 (fax)
16
                                               *Counsel for Plaintiffs and the Proposed Class*
17
                                               ROBBINS GELLER RUDMAN
18                                               & DOWD LLP
                                               DANIELLE S. MYERS
19                                             655 West Broadway, Suite 1900
                                               San Diego, CA 92101
20                                             Telephone:  619/231-1058
                                               619/231-7423 (fax)
21
                                               ROBBINS GELLER RUDMAN
22                                               & DOWD LLP
                                               SHAWN A. WILLIAMS
23                                             EKATERINI M. POLYCHRONOPOULOS
                                               Post Montgomery Center
24                                             One Montgomery Street, Suite 1800
                                               San Francisco, CA 94104
25                                             Telephone: 415/288-4545
                                               415/288-4534 (fax)
26
                                               *Liaison Counsel for Plaintiffs and the Proposed*
27                                             *Class*

28

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on July 15, 2015, I authorized the electronic filing of the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification of such filing

4  to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify

5  that I have mailed the foregoing document or paper via the United States Postal Service to the

6  non-CM/ECF participants indicated on the attached Service List.

7      I certify under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct.

9      Executed on July 15, 2015.

10                                              /s/ Jonathan Gardner
                                                JONATHAN GARDNER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mailing Information for a Case 3:13-cv-03567-EMC**

*Brado v. Vocera Communications Inc et al*

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Marie Caroline Bafus**
  mbafus@fenwick.com,vsheehan@fenwick.com,pnichols@fenwick.com,
  dsheppard@fenwick.com
- **Joel H. Bernstein**
  jbernstein@labaton.com,lmehringer@labaton.com,dgoldsmith@labaton.com,
  sauer@labaton.com,electroniccasefiling@labaton.com
- **Norman J. Blears**
  nblears@sidley.com,kmay@sidley.com,epickens@sidley.com
- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,vsheehan@fenwick.com,mbafus@fenwick.com,
  kayoung@fenwick.com,pnichols@fenwick.com,ckevane@fenwick.com
- **Joseph Daniel Cohen**
  jcohen@scott-scott.com
- **Hal Davis Cunningham**
  hcunningham@scott-scott.com,efile@scott-scott.com
- **Samuel De Villiers**
  sdevilliers@labaton.com
- **Matthew James Dolan**
  mdolan@sidley.com,adeparedes@sidley.com
- **Catherine Duden Kevane**
  ckevane@fenwick.com,pnichols@fenwick.com
- **Amber L. Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,RobynS@zhlaw.com
- **Joseph A. Fonti**
  jfonti@bftalaw.com
- **Jonathan Gardner**
  jgardner@labaton.com,cvillegas@labaton.com,lmehringer@labaton.com,
  acoquin@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,
  agreenbaum@labaton.com
- **Mark S. Goldman**
  goldman@lawgsp.com
- **Joseph P. Guglielmo**
  jguglielmo@scott-scott.com,edewan@scott-scott.com,tcrockett@scott-
  scott.com,efile@scott-scott.com
- **Susan Samuels Muck**
  smuck@fenwick.com,vsheehan@fenwick.com,rchang@fenwick.com,
  kayoung@fenwick.com,pnichols@fenwick.com,jbretan@fenwick.com,
  acaloza@fenwick.com
- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com
- **David R. Scott**
  drscott@scott-scott.com
- **Ronnie Solomon**
  rsolomon@fenwick.com,mguidoux@fenwick.com
- **Michael Walter Stocker**
  mstocker@labaton.com,drogers@labaton.com,lmehringer@labaton.com

- **Simona Gurevich Strauss**
  sstrauss@stblaw.com,niels.melius@stblaw.com,janie.franklin@stblaw.com,
  sblake@stblaw.com
- **Stephen J. Teti**
  steti@scott-scott.com
- **Carol C. Villegas**
  cvillegas@labaton.com,mpenrhyn@labaton.com,lmehringer@labaton.com,
  acoquin@labaton.com,thoffman@labaton.com,fmalonzo@labaton.com,
  acarpio@labaton.com
- **Shawn A. Williams**
  shawnw@rgrdlaw.com,erinj@rgrdlaw.com,katerinap@rgrdlaw.com,
  e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Michael John von Loewenfeldt**
  mvl@kerrwagstaffe.com,phan@kerrwagstaffe.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

   (No manual recipients)