1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
    EKATERINI M. POLYCHRONOPOULOS
3  (284838)
    Post Montgomery Center
4  One Montgomery Street, Suite 1800
    San Francisco, CA 94104
5  Telephone: 415/288-4545
    415/288-4534 (fax)
6  shawnw@rgrdlaw.com
    katerinap@rgrdlaw.com
7
    *Liaison Counsel for Plaintiffs*
8
    LABATON SUCHAROW LLP
9  JONATHAN GARDNER *(pro hac vice)*
    CAROL C. VILLEGAS  *(pro hac vice)*
10  140 Broadway
    New York, New York 10005
11  Telephone: 212/907-0700
    212/818-0477 (fax)
12  jgardner@labaton.com
    cvillegas@labaton.com
13
14  *Lead Counsel for Lead Plaintiffs and the Class*

15  [Additional counsel appear on signature page]

16           UNITED STATES DISTRICT COURT

17          NORTHERN DISTRICT OF CALIFORNIA

18  IN RE VOCERA COMMUNICATIONS,  )  MASTER FILE NO. 3:13-cv-03567 EMC
    INC., SECURITIES LITIGATION  )
19                      )
    ————————————————————————  )  CLASS ACTION
20                      )
    This Document Relates to:  )  LEAD PLAINTIFFS' NOTICE OF
21                      )  UNOPPOSED MOTION AND UNOPPOSED
      All Actions.  )  MOTION FOR PRELIMINARY APPROVAL
22                      )  OF PROPOSED CLASS ACTION
    ————————————————————————  )  SETTLEMENT AND MEMORANDUM OF
23                      )  POINTS AND AUTHORITIES IN SUPPORT
                      )  THEREOF
24                      )
                      )  Date: March 3, 2016
25                      )  Time: 1:30 p.m.
                      )  Judge: The Hon. Edward M. Chen
26                      )  Dep't: 5, 17th Floor
    ————————————————————————  )

27

28

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3
PRELIMINARY STATEMENT ...................................................................................... 2

4
    A.    Description of the Action ................................................................................ 3

5
    B.    Settlement Discussions .................................................................................. 6

6
    C.    The Proposed Settlement ............................................................................... 6

7
    D.    Proposed Schedule of Events ........................................................................ 6

8
ARGUMENT .................................................................................................................... 7

9
I.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL ................................ 7

10
    A.    The Settlement is the Result of a Thorough, Rigorous, and Arm's-Length
Process .......................................................................................................... 9

11

12
    B.    The Settlement Is Well Within the Range of Reasonableness .................... 12

13
    C.    The Proposed Notice Program Satisfies Rules 23(d) and (e) as well as Due
Process Requirements ................................................................................. 15

14
    D.    Proposed Plan of Allocation ....................................................................... 17

15
II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT
CLASS ................................................................................................................... 18

16
    A.    Standards Applicable to Class Certification ............................................... 18

17
    B.    The Settlement Class Meets the Requirements of Rule 23(a) .................... 19

18
         1.    Rule 23(a) Numerosity ................................................................... 19

19
         2.    Rule 23(a)(2):  Questions of Law or Fact Are Common ............... 20

20
         3.    Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical ...................... 21

21
         4.    Rule 23(a)(4)  The Lead Plaintiffs Are Adequate ........................ 22

22
    C.    The Settlement Class Meets the Requirements of Rule 23(b)(3) ................ 22

23
         1.    Common Questions of Law or Fact Predominate ......................... 22

24
         2.    A Class Action Is a Superior Method of Adjudication ................. 24

25
CONCLUSION ............................................................................................................... 24

26

27

28

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*,
   No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)........................................9

*In re Am. Int'l Grp, Inc. Sec. Litig.*,
   No. 04-8141 (S.D.N.Y.)........................................10

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................18, 19, 23

*Arnold v. United Artists Theatre Circuit, Inc.*,
   158 F.R.D. 439 (N.D. Cal. 1994)........................................20

*Basic v. Levinson*,
   485 U.S. 224 (1988)........................................23

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
   07-Civ-10453, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009)........................................22

*In re Bear Stearns Cos. Sec. Derivative and ERISA Litig*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................10

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ........................................21

*In re Broadwing, Inc. ERISA Litig.*,
   252 F.R.D. 369 (S.D. Ohio 2006) ........................................14

*Ching v. Siemens Indus., Inc.*,
   No. C 11-4838 MEJ, 2013 WL 6200190 (N.D. Cal. Nov. 27, 2013)........................................16

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ........................................12

*In re Citigroup, Inc.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ........................................10

*In re Comput. Memories Sec. Litig.*,
   111 F.R.D. 675 (N.D. Cal. 1986)........................................21

*In re Cooper Cos. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ........................................18, 20, 23

*In re Daou Sys., Inc., Sec. Litig.*,
   411 F.3d 1006 (9th Cir. 2005) ........................................13

MASTER FILE NO. 3:13-cv-03567 EMC
LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

ii

*In re Delphi Corp. Sec. Derivative & ERISA Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ................................................................10

*Desai v. Deutsche Bank Sec. Ltd.*,
   573 F.3d 931 (9th Cir. 2009) ..............................................................19, 24

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   No. MDL-901, 1993 WL 144861 (C.D. Cal. Feb. 26, 1993) .....................12, 23

*Grant v. Capital Mgmt. Servs., L.P.*,
   No. 10-cv-2471-WQH (BGS), 2013 WL 6499698 (S.D. Cal. Dec. 11, 2013)........8

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................19, 20, 23

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ...................................................................19

*Howell v. JBI, Inc.*,
   298 F.R.D. 649 (D. Nev. 2014)..................................................................20

*In re HP Sec. Litig.*,
   No. 3:12-CV-05980-CRB, 2015 WL 4477936 (N.D. Cal. July 20, 2015) ............15

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007).........................................................13

*Jaffe v. Morgan Stanley & Co.*,
   No. C 06-3903 (TEH), 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) .....................18

*In re Juniper Networks, Inc. Sec. Litig.*,
   264 F.R.D. 584 (N.D. Cal. 2009)................................................................21

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...................................................................15

*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) *aff'd*, 151 F.
   3d 1234 (9th Cir. 1998)............................................................................9

*Lo v. Oxnard European Motors, LLC*,
   No. 11CV1009 JLS (MDD), 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011)..........14

*McPhail v. First Command Fin. Planning, Inc.*,
   247 F.R.D. 598 (S.D. Cal. 2007) ...............................................................24

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)....................................................................22

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010)......................................................................7

MASTER FILE NO. 3:13-CV-03567 EMC
LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

iii

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
     238 F.R.D. 482 (C.D. Cal. 2006) .......................................................................................23

*In re NVIDIA Corp. Derivative Litig.*,
     C-06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ...............................11

*In re Omnivision Techs., Inc.*,
     559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................................11

*Orvis v. Spokane Cty*,
     281 F.R.D. 469 (E.D. Wash. 2012)......................................................................................14

*Perez-Funez v. Dist. Dir., I.N.S*,
     611 F. Supp. 990 (C.D. Cal. 1984) ......................................................................................20

*In re Portal Software, Inc. Sec. Litig.*,
     No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ....................................9

*Redwen v. Sino Clean Energy, Inc.*,
     No. CV 11-3936 PA, 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013) ...................17

*Sandoval v. Tharaldson Emp. Mgmt.*,
     No. EDCV 08-00482-VAP, 2009 WL 3877203 (C.D. Cal. Nov. 17, 2009) ..........................19

*Satchell v. Fed. Express Corp.*,
     No. C03-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................9

*In re Syncor ERISA Litig.*,
     227 F.R.D. 338 (C.D. Cal. 2005) .........................................................................................21

*In re Syncor ERISA Litig.*,
     516 F.3d 1095 (9th Cir. 2008) ...............................................................................................8

*In re THQ Inc. Sec. Litig.*,
     No. 00-1783AHM(EX), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ...............................18

*Tsirekidze v. Syntax-Brillian Corp.*,
     No. CV-07-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17, 2009)..........................21

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
     MDL No. 551, 1988 WL 158947 (W.D. Wash. July 28, 1988) .............................................13

*West v. Circle K Stores, Inc.*,
     No. S-04-0438 WBS (GGH), 2006 WL 1652598 (E.D. Cal. June 13, 2006)....................8, 12

*Williams v. Costco Wholesale Corp.*,
     No. O2cv2003 IEG (AJB), 2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ...............................22

*Young v. Polo Retail*,
     LLC, No. C-02-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ...........................8

MASTER FILE NO. 3:13-CV-03567 EMC
LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

iv

*In re Zynga Inc. Sec. Litig.*,
    No. 12 cv 04007 (JSC) 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)............................8, 9, 10

**Statutes**

15 U.S.C. §78u-4(a)(4) ....................................................................................................16

15 U.S.C. §78u-4(a)(7)(A)-(F)........................................................................................16

**Rules**

Fed. R. Civ. P. 23 ..............................................................................................8, 15, 18, 23

Fed. R. Civ. P. 23(a) ................................................................................................2, 19

Fed. R. Civ. P. 23(a)(1)..................................................................................................19

Fed. R. Civ. P. 23(a)(2)...........................................................................................20, 21

Fed. R. Civ. P. 23(a)(3)..................................................................................................21

Fed. R. Civ. P. 23(a)(4)..................................................................................................22

Fed. R. Civ. P. 23(b) ......................................................................................................19

Fed. R. Civ. P. 23(b)(3).................................................................................2, 19, 22, 24

Fed. R. Civ. P. 23(b)(3)(A)-(D)......................................................................................24

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................15

Fed. R. Civ. P. 23(e) .........................................................................................................2

Fed. R. Civ. P. 23(g)(1)..................................................................................................22

MASTER FILE NO. 3:13-CV-03567 EMC
LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

v

1

## NOTICE OF UNOPPOSED MOTION

2

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3        PLEASE TAKE NOTICE that on March 3, 2016 at 1:30 p.m., Lead Plaintiffs Arkansas

4   Teacher Retirement System and Baltimore County Employees' Retirement System, on behalf of

5   themselves and all members of the proposed Settlement Class, hereby respectfully move this

6   Court for an Order, pursuant to Rule 23 of the Federal Rules of Civil Procedure:  (i) granting

7   preliminary approval to the proposed Settlement; (ii) preliminarily certifying the Settlement

8   Class for settlement purposes only; (iii) preliminarily appointing Lead Plaintiffs as Class

9   Representatives, Lead Counsel as Class Counsel, and Robbins Geller Rudman & Dowd LLP as

10  Liaison Counsel; (iv) approving the proposed form and substance of the Notice, Proof of Claim

11  and Release form, and Summary Notice as well as the proposed method of disseminating notice;

12  (vi) scheduling a date for the Settlement Hearing; and (vii) such other and further relief as this

13  Court deems just and proper.  This motion is supported by the following memorandum of points

14  and authorities and the accompanying Declaration of Jonathan Gardner and the exhibits attached

15  thereto.

16        Defendants do not oppose the relief requested.  A proposed Order Granting Preliminary

17  Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date

18  for Hearing on Final Approval of Settlement, with annexed exhibits, which was negotiated by the

19  parties is also submitted herewith.

20

## STATEMENT OF ISSUES TO BE DECIDED

21        (1) Whether the Court should preliminarily approve the proposed Settlement and

22  schedule a date for the Settlement Hearing;

23        (2) Whether the Court should preliminarily certify the Settlement Class for settlement

24  purposes only and preliminarily appoint Lead Plaintiffs as Class Representatives, Lead Counsel

25  as Class Counsel, and Robbins Geller Rudman & Dowd LLP as Liaison Counsel;

26        (3) Whether the Court should approve the proposed form and substance of the Notice,

27  Proof of Claim and Release form, and Summary Notice as well as the proposed method of

28  disseminating notice.

MASTER FILE NO. 3:13-CV-03567 EMC
LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

1

MEMORANDUM OF POINTS AND AUTHORITIES

PRELIMINARY STATEMENT

Arkansas Teacher Retirement System ("ATRS") and Baltimore County Employees' Retirement System ("BCERS" and, together with ATRS, "Lead Plaintiffs"), through Lead Counsel Labaton Sucharow LLP ("Labaton Sucharow" or "Lead Counsel"), submit this memorandum of points and authorities in support of their unopposed motion, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e), for preliminary approval of a proposed $9 million settlement (the "Settlement") of this securities class action as set forth in the Stipulation and Agreement of Settlement, dated as of January 14, 2016 (the "Stipulation") entered into with Vocera Communications, Inc. ("Vocera" or the "Company"), Robert J. Zollars, Brent D. Lang, and William R. Zerella (collectively, the "Individual Defendants" and, with Vocera, the "Defendants").[1]

For the reasons set forth below, Lead Plaintiffs respectfully submit that the Court should, in accordance with the accompanying [Proposed] Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement (the "Preliminary Approval Order"):  (i) grant preliminary approval of the proposed Settlement on the terms set forth in the Stipulation; (ii) certify, for purposes of settlement only, a class of all persons and entities that purchased or otherwise acquired the publicly traded securities of Vocera between March 28, 2012 and May 2, 2013, inclusive, and were allegedly damaged thereby (the "Settlement Class"); (iii) appoint Lead Plaintiffs as Class Representatives, Lead Counsel as Class Counsel, and Robbins Geller Rudman & Dowd LLP as Liaison Counsel; (iv) approve the form and substance of the proposed Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release form ("Proof of Claim"), and the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Summary

---

[1] All capitalized terms used herein are defined in the Stipulation and have the same meanings as set forth therein.  The Stipulation is annexed as Exhibit 1 to the accompanying Declaration of Jonathan Gardner ("Gardner Decl."), dated January  15, 2016.

MASTER FILE NO. 3:13-CV-03567 EMC
LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

2

1   Notice"), appended as Exhibits 1 through 3 to the proposed Preliminary Approval Order, as well

2   as the manner of notifying the Settlement Class of the Settlement; and (v) schedule a hearing to

3   determine whether the Settlement and Plan of Allocation should be finally approved and to

4   consider Lead Counsel's application for an award of attorneys' fees and payment of expenses

5   (the "Settlement Hearing").

6           In addition to the approvals mentioned above, Lead Plaintiffs further request that the

7   Court approve the appointment of The Garden City Group, LLC ("GCG") as Claims

8   Administrator.

9           Lead Plaintiffs respectfully submit that the Settlement is an excellent result for the

10  Settlement Class.  The Settlement was informed by a comprehensive investigation, discovery,

11  aggressive motion practice, and intensive arm's-length negotiations before an experienced

12  mediator, the Honorable Layn R. Phillips (ret.) ("Judge Phillips").  For the reasons stated herein,

13  Lead Plaintiffs respectfully request that the Court grant this motion.

14          **A.     Description of the Action**

15          Beginning in August of 2013, two securities class action complaints were filed alleging

16  that Defendants violated the federal securities laws.  The actions were consolidated into this

17  Action by Order dated November 20, 2013.  ECF No. 61.  By the same Order, the Court

18  appointed ATRS and BCERS as Lead Plaintiffs and approved Lead Plaintiffs' selection of

19  Labaton Sucharow as Lead Counsel to represent the proposed class.

20          On September 19, 2014, Lead Plaintiffs filed the Consolidated Amended Class Action

21  Complaint (the "Complaint," ECF No. 104) asserting violations of Section 11 of the Securities

22  Exchange Act of 1933 (the "Securities Act") by Vocera, the Individual Defendants, certain of

23  Vocera's directors, as well as J.P. Morgan Securities LLC, Piper Jaffray & Co., Robert W. Baird

24  & Co., William Blair & Company, LLC, Wells Fargo Securities, LLC, and Leerink Partners LLC

25  (the "Underwriters"); violations of Section 12(a)(2) of the Securities Act by Vocera and the

26  Underwriters; violations of Section 15 of the Securities Act against the Individual Defendants

27  and certain of Vocera's directors; violations of Section 10(b) of the Securities Exchange Act of

28  1934 (the "Exchange Act") against Vocera and the Individual Defendants; and violations of

1    Section 20(a) of the Exchange Act against the Individual Defendants.

2         The Complaint alleged, among other things, that with respect to the Securities Act claims,

3    the registration statement issued in connection with Vocera's March 28, 2012 initial public

4    offering ("IPO"), represented that new healthcare reform legislation entitled the "Patient

5    Protection and Affordable Care Act" (the "ACA") was having a positive impact on the market

6    for Vocera's product.  Complaint ¶¶343, 349-53, 365-72.  The Complaint also alleged that the

7    registration statement issued in connection with Vocera's September 7, 2012 secondary offering

8    ("SPO") repeated these positive statements.  *Id.* ¶¶ 354, 355, 373-79.  The Complaint alleged that

9    Defendants failed to disclose that at the time of the IPO and the SPO, health care reform was

10   having a negative impact on Vocera's bookings and revenues.  *Id.* ¶¶358-63, 371-72, 380-81.

11   With respect to the Exchange Act claims, the Complaint alleged, among other things, that

12   Defendants made false and misleading statements regarding the effect of the ACA and the

13   Budget Control Act ("BCA") and the true financial condition of the Company.  In particular, the

14   Complaint alleged that at the time of the IPO and during the Class Period, healthcare reform was

15   negatively impacting Vocera's business in the form of reduced bookings (sales), as hospitals

16   tightened their belts on the large capital outlays required to install and operate Vocera's product.

17   *Id.* ¶¶94-97.  As alleged in the Complaint, to mask the effect that healthcare reform was having

18   on the Company, Defendants allegedly recognized revenue ahead of schedule, pulling in orders

19   from backlog to make up for the revenue shortfall and to "smooth" Vocera's earnings.  *Id.*

20   ¶¶103-04, 111-15.  The Complaint alleged that during this time, Defendants continued to tout the

21   Company's growth and "strong results" allegedly misleading the market as to Vocera's true

22   financial condition.  *Id.* ¶¶ 170-72, 191, 214.

23        The Complaint further alleged that in a partial corrective disclosure on February 27,

24   2013, Defendants disclosed that Vocera was seeing delays in government deals due to budget

25   sequestration and the Company's backlog had decreased year over year.  *Id.* ¶¶237-45.   The

26   Complaint alleged that these disclosures resulted in a stock drop of 9%.  *Id.* ¶246.  According to

27   the Complaint, Defendants allegedly continued to provide the market with revenue guidance that

28   was higher than the annual guidance the Company had allegedly struggled to meet in 2012.  *Id.*

¶242.  Then, on May 2, 2013, the Company disclosed that results for Q1 2013 (ended March 31, 2013) would be lower than had been expected due to customers' expense reductions associated with healthcare reform, the effect of government sequestration and sales execution issues.  *Id.* ¶¶ 262-65.  Vocera also reduced its annual guidance for 2013 at that time. *Id.* ¶263.  The Complaint alleged that after the May 2, 2013 announcement, the Company's stock price to declined by over 37%.  *Id.* ¶268.

The Complaint was based upon Lead Counsel's extensive factual investigation, which included, among other things, the review and analysis of:  (i) documents filed publicly by the Company with the Securities & Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and Defendants; (iii) research reports issued by financial analysts concerning the Company; and (iv) other publicly available information and data concerning the Company.  In addition, Lead Counsel interviewed 23 confidential witnesses and consulted with experts on market efficiency and damages issues.

Defendants have vigorously denied the allegations in the Complaint, and filed motions to dismiss the Complaint on November 3, 2014 (ECF Nos. 110 and 111), which Lead Plaintiffs opposed on November 26, 2014 (ECF Nos. 120 and 121).  On February 11, 2015, the Court issued an Order granting the motion to dismiss claims brought under the Securities Act but denying Defendants' motion to dismiss the Exchange Act claims.  ECF No. 143.  On April 27, 2015, Defendants filed and served answers to the Complaint.  ECF No. 156.

Thereafter, the Parties engaged in discovery, including the service of document requests and subpoenas by Lead Plaintiffs.   During the course of discovery, Lead Plaintiffs reviewed approximately 483,980 pages of documents produced by Defendants and confidential witnesses, including emails from the Individual Defendants, and reviewed approximately 31,500 documents produced in response to 35 third-party subpoenas.  Lead Plaintiffs have also taken Vocera's 30(b)(6) deposition.

On July 15, 2015, Lead Plaintiffs moved for class certification (ECF No. 163), which Defendants opposed on September 2, 2015 (ECF No. 170).[2] Lead Plaintiffs submitted their reply brief in further support of class certification on September 30, 2015 (ECF No. 179). The motion was pending when the Parties agreed to settle the Action.

**B.      Settlement Discussions**

Pursuant to a Scheduling Order directing the Parties to participate in private mediation by December 31, 2015, Defendants and Lead Plaintiffs engaged Judge Phillips, a former United States District Judge and U.S. Attorney with extensive experience in mediating complex securities class actions. On October 15, 2015, Lead Plaintiffs and Defendants met with Judge Phillips in an attempt to reach a settlement. Prior to the mediation session, the Parties exchanged mediation briefs. Following arm's-length negotiations, the Parties reached a settlement and executed a Settlement Term Sheet on October 15, 2015.

**C.      The Proposed Settlement**

Pursuant to the proposed Settlement, Defendants and/or their insurers shall pay, or cause to be paid, the Settlement Amount into an interest-bearing escrow account (the "Settlement Fund") within thirty (30) calendar days after both (i) the Court enters the Preliminary Approval Order, and (ii) Lead Counsel provides to Defendants' Counsel information necessary to effectuate a transfer of funds to the Escrow Account. In exchange for this payment, upon the Effective Date of the Settlement, Lead Plaintiffs and the Settlement Class will release all Released Claims against the Released Defendant Parties. The definition of Released Claims has been tailored to release only claims that relate to the purchase or acquisition of Vocera securities during the Class Period that were raised or could have been raised by Class Members. *See* Stipulation ¶¶ 1(aa), 4.

**D.      Proposed Schedule of Events**

Lead Plaintiffs respectfully propose the following schedule for the various Settlement-

---

[2] The proposed Settlement Class is the same as the class proposed in the class certification motion.

MASTER FILE NO. 3:13-cv-03567 EMC
LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

6

related events:[3]

| | |
|---|---|
| Deadline for mailing individual Notices and Proofs of Claim (the "Notice Date") | ***10 business days after entry of Preliminary Approval Order*** |
| Deadline for publication of Summary Notice in *Investor's Business Daily* and transmission over *PR Newswire* | ***Within 14 calendar days of the Notice Date*** |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses | ***No later than 35 calendar days before the Settlement Hearing*** |
| Deadline for submission of requests for exclusion from the Settlement Class or objections to the Settlement, Plan of Allocation, or the request for attorneys' fees and expenses | ***Received no later than 21 calendar days before the Settlement Hearing*** |
| Deadline for filing reply papers in support of the Settlement, the Plan of Allocation, and/or Lead Counsel's application for an award of attorneys' fees and expenses | ***No later than 7 calendar days before the Settlement Hearing*** |
| Settlement Hearing | ***At the Court's convenience, but no fewer than 100 calendar days after the date of the instant motion*** |
| Deadline for submission of Proofs of Claim | ***Postmarked or received no later than 120 calendar days after the Notice Date*** |

The foregoing schedule is similar to those used and approved by numerous courts in class action settlements and complies with the Ninth Circuit's ruling in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010).

## **ARGUMENT**

## I.     **THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

As a matter of public policy, settlement is a strongly favored method for resolving

---

[3] Additionally, Defendants' Counsel have indicated that no later than ten (10) days after this motion is filed with the Court, Defendants will serve notice of the Settlement pursuant to the Class Action Fairness Act ("CAFA").

MASTER FILE NO. 3:13-CV-03567 EMC
LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

7

1   disputes, especially in complex class actions.  *See, e.g., In re Syncor ERISA Litig.*, 516 F.3d

2   1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements,

3   particularly where complex class action litigation is concerned.") (citation omitted); *Grant v.*

4   *Capital Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH (BGS), 2013 WL 6499698, at *2 (S.D. Cal.

5   Dec. 11, 2013) ("Voluntary conciliation and settlement are the preferred means of dispute

6   resolution in complex class action litigation.") (citation and internal quotation marks omitted).

7       Federal Rule of Civil Procedure 23 requires court approval for any settlement of a class

8   action.  Approval of class action settlements normally proceeds in two stages:  (i) preliminary

9   approval, followed by notice to the class; and (ii) final approval.  *See, e.g., West v. Circle K*

10  *Stores, Inc.*, No. S-04-0438 WBS (GGH), 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006);

11  Manual for Complex Litigation §13.14 at 173 (4th ed. 2004).  By this motion, Lead Plaintiffs

12  request that the Court take the first step in the approval process:  preliminary approval of the

13  Settlement.

14      The preliminary approval standard involves "both a procedural and a substantive

15  component."  *Young v. Polo Retail*, LLC, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D.

16  Cal. Oct. 25, 2006).  As the court in *Young* explained:

17          "[i]f the proposed settlement appears to be the product of serious, informed, non-

18          collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

19          treatment to class representatives or segments of the class, and falls within the range of

20          possible approval, then the court should direct that the notice be given to the class

21          members of a formal fairness hearing. . . ."

22  *Id.* (citing Manual for Complex Litigation, Second § 30.44 (1985)) (alterations in original); *see*

23  *also In re Zynga Inc. Sec. Litig.*, No. 12 cv 04007 (JSC) 2015 WL 6471171, at *8-11 (N.D. Cal.

24  Oct. 27, 2015) (granting preliminary approval after finding proposed settlement was "non-

25  collusive," lacks obvious deficiencies," and was "within the range of possible approval").

26      A court "need not conduct a full settlement fairness appraisal before granting preliminary

27  approval."  *Grant*, 2013 WL 6499698, at *5 (citation and internal quotation marks omitted).

28  "The Court cannot fully assess all of [the] fairness factors until after the final approval hearing;

thus, 'a full fairness analysis is unnecessary at this stage.'  Instead, 'the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval after such time as any party has had a chance to object and/or opt out.'"[4]  *Zynga Inc.* 2015 WL 6471171, at *8 (internal quotations omitted).  Applying the standards set forth above, the Settlement should be preliminarily approved.

### A.   The Settlement is the Result of a Thorough, Rigorous, and Arm's-Length Process

There is an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arm's-length negotiations."  *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *see also Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) *aff'd*, 151 F. 3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair.") (citation omitted).  Here, the Parties have vigorously litigated and investigated the Action since its inception and the Settlement was achieved only after an intense arm's-length mediation session under the supervision of an experienced mediator with considerable knowledge and expertise in the field of federal securities law.

Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, No. C03-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) (same).  Here, Judge Phillips played an active role in addressing the relevant issues with the Parties and

---

[4] In connection with final approval of the Settlement, the Court will be asked to review the following factors identified by the Ninth Circuit: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."  *Zynga Inc.* 2015 WL 6471171, at *8 (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

1   bringing about the Settlement.  *See In re Citigroup, Inc.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013)

2   (noting the procedural fairness of settlement mediated by Judge Phillips); *In re Bear Stearns*

3   *Cos. Sec. Derivative and ERISA Litig,* 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (describing

4   Judge Phillips as "an experienced and well-regarded mediator of complex securities cases"); *see*

5   *also In re Delphi Corp. Sec. Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008)

6   (speaking of Judge Phillips, "the Court and the parties have had the added benefit of the insight

7   and considerable talents of a former federal judge who is one of the most prominent and highly

8   skilled mediators of complex actions").  Indeed, "[t]he use of a mediator and the presence of

9   discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a

10  settlement.'"  *Zynga*, 2015 WL 6471171, at *9 (quoting *Villegas v. J.P. Morgan Chase & Co.*,

11  No. CV 09-00261 (SBA), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012)).

12      Before and during the mediation session, the strengths and weaknesses of Lead Plaintiffs'

13  and Defendants' respective claims and defenses were fully explored by the Parties and Judge

14  Phillips.  The Parties focused on disputed issues of the alleged falsity of Defendants' statements

15  concerning the ACA and the BCA, scienter, loss causation, and damages.  With an informed

16  understanding of these various issues, the Lead Plaintiffs agreed to the Settlement.  There was,

17  therefore, no collusion. Additionally, the Settlement does not treat Lead Plaintiffs preferentially.[5]

18      Additionally, throughout the Action Lead Plaintiffs had the benefit of the advice of

19  knowledgeable counsel with extensive experience in shareholder class action litigation and

20  securities fraud cases.  Labaton Sucharow is among the most experienced and skilled firms in the

21  securities litigation field, and has a long and successful track record in such cases.  *See* Ex. 2.

22  Labaton Sucharow has served as lead counsel in a number of high profile matters, for example:

23  *In re Am. Int'l Grp, Inc. Sec. Litig.*, No. 04-8141 (S.D.N.Y.) (representing the Ohio Public

24

25      [5]  The proposed Plan of Allocation provides formulas for calculating the recognized
    claims of each Settlement Class Member, including Lead Plaintiffs, based on each Settlement
26  Class Member's purchases and sales of publicly traded securities of Vocera during the Class
    Period.  Lead Plaintiffs will recover under the Plan of Allocation, like all other Settlement Class
27  Members, according to the Plan of Allocation.  Lead Counsel prepared the Plan of Allocation
    after careful consideration and with the assistance of a consulting damages expert.  The Plan of
28  Allocation will be fully disclosed in the Notice to be mailed to potential Settlement Class
    Members.

1    Employees Retirement System, State Teachers Retirement System of Ohio, and Ohio Police &

2    Fire Pension Fund and reaching settlements of $1 billion); *In re HealthSouth Corp. Sec. Litig.*,

3    No. 03-1501 (N.D. Ala.) (representing the State of Michigan Retirement System, New Mexico

4    State Investment Council, and the New Mexico Educational Retirement Board and securing

5    settlements of more than $600 million); and *In re Countrywide Sec. Litig.*, No. 07-5295 (C.D.

6    Cal.) (representing the New York State and New York City Pension Funds and reaching

7    settlements of more than $600 million).

8         Courts give considerable weight to the opinion of experienced and informed counsel.

9    *See, e.g., In re NVIDIA Corp. Derivative Litig.*, C-06-06110-SBA (JCS), 2008 WL 5382544, at

10   *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that

11   settlement is in the best interest of those affected by the settlement.") (citation omitted).

12   Therefore, "[t]he recommendations of plaintiffs' counsel should be given a presumption of

13   reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)

14   (citation and internal quotation marks omitted).   In *Omnivision*, the court held that the

15   recommendation of counsel weighed in favor of settlement given their familiarity with the

16   dispute and their significant experience in securities litigation.  *Id.*  Lead Counsel likewise have a

17   thorough understanding of the merits of the Action and extensive experience in securities fraud

18   litigation in particular.   Lead Counsel's belief in the fairness and reasonableness of the

19   Settlement warrants a presumption of reasonableness.

20        Throughout the course of the Action, Lead Counsel developed a thorough understanding

21   of the facts of the case and merits of the claims due to an extensive and thorough analysis of,

22   *inter alia*:  (i) 23 confidential witness interviews; (ii) publicly available information regarding

23   the Company; (iii) substantive briefing on Defendants' motion to dismiss; (iv) the production of

24   approximately 483,980 pages of discovery documents produced by Defendants and confidential

25   witnesses; (v) frank discussions with Defendants' Counsel during the mediation process; and (vi)

26   consultation with damages experts.

27        At the point of settlement, Lead Plaintiffs were in an excellent position to evaluate the

28   strengths and weaknesses of their allegations, the defenses raised thereto, and the substantial

risks of continued litigation, because of, among other things, the considerable factual and legal research their counsel performed in connection with the briefing on both the motion to dismiss and motion for class certification and the extensive preparation work that was performed in connection with the mediation.

**B.     The Settlement Is Well Within the Range of Reasonableness**

"[A]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *West*, 2006 WL 1652598, at *11 (citation omitted).  This Settlement is within the range of reasonableness for several reasons.

*First*, the $9 million Settlement is in-line with the median amount of securities class action settlements in 2014.  As reported by NERA Economic Consulting in its most recent settlement study, the median settlement figure during 2014 was $6.5 million.  *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2014 Full-Year Review* (Jan. 20, 2015) at 28 (Ex. 3).  Additionally, 58% of settlements approved in 2014 settled for amounts below ten million.  *Id*. at 29.

*Second*, the fairness and adequacy of the Settlement is underscored by taking into account the amount of estimated damages recovered and the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *See, e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (the risk, expense, complexity, and likely duration of further litigation supported final approval of settlement).  Based on Lead Plaintiffs' consulting  damages expert's analyses, total class-wide aggregate damages ranged from approximately $100 million to $225 million, assuming that 100% of the two alleged abnormal stock drops was related to revelation of the alleged fraud and depending upon differing interpretations of when certain shares traded following the conclusion of a lock-up provision following the IPO.  Alternatively, if only the strongest corrective disclosure date (May 2, 2013) was accepted by the Court or the fact finder, damages would range from approximately $20 million to $170 million, again assuming 100% of the stock drop was attributable to the alleged fraud and depending on differing interpretations of the effect of the lock-up provision.  Thus, the $9 million settlement represents a recovery of between 4% and

MASTER FILE NO. 3:13-CV-03567 EMC
LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

12

45% of estimated class-wide damages.  Of course, Defendants vigorously contested the amount of the alleged stock drops attributable to Lead Plaintiffs' allegations and Lead Plaintiffs' damages analysis and underlying assumptions.  *See* Gardner Decl. ¶ 2.

At this juncture, the $9 million Settlement represents an immediate and substantial tangible recovery, without the considerable risk, expense, and delay of prevailing on class certification, discovery, summary judgment motions, trial, and post-trial litigation.  *See, e.g.*, *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551, 1988 WL 158947, at *4 (W.D. Wash. July 28, 1988) (finding settlement to be in the "best interests of the class . . . before it is subjected further to the vagaries of litigation").  While Lead Plaintiffs believe they successfully can establish all the elements of their securities fraud claims, they face considerable obstacles in continuing the Action.  Specifically, there are substantial challenges regarding falsity and scienter,[6] loss causation and damages, and certifying a litigation class.  *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (recognizing "the issues of scienter and causation are complex and difficult to establish at trial" and concluding that "settlement is a prudent course").

If the case proceeded, Lead Plaintiffs would have to respond to Defendants' anticipated motion for summary judgment directed to both liability and damages issues.  Among other things, Defendants would likely assert that the allegedly false and misleading statements are neither false, misleading, nor material.  Defendants would also likely assert that the allegedly false and misleading statements are protected from liability under the PSLRA "safe harbor" and even absent the safe harbor, Lead Plaintiffs would not be able to prove that the statements were made with actual knowledge of falsity.  Defendants would also argue that, with respect to scienter, Lead Plaintiffs cannot point to any evidence demonstrating that Defendants acted with the required mental state necessary to constitute securities fraud and that none of the confidential witnesses relied on have any personal knowledge of wrongdoing.  Defendants would also

---

[6] As the Ninth Circuit has recognized, assessing falsity and scienter is a "unitary inquiry" because these matters are often "strongly inferred from the same set of facts."  *In re Daou Sys., Inc., Sec. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005) (citations and internal quotation marks omitted).

MASTER FILE NO. 3:13-CV-03567 EMC
LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

13

1   contend that their business practices were entirely valid and consistent with industry standards.

2   Further, Defendants would argue that Lead Plaintiffs cannot prove loss causation because the

3   two corrective disclosures do not reveal to the market the particular fraudulent practice upon

4   which Lead Plaintiffs' theory rests, and that the evidence will establish that the Company timely

5   disclosed what it knew at the time.

6       Additionally, Lead Plaintiffs faced a risk that the litigation class would not be certified.

7   There is no doubt that Defendants would appeal any class certification order and argue that Lead

8   Plaintiffs' efficiency of the market argument must fail.  In particular, Defendants would likely

9   assert that the report submitted by Lead Plaintiffs' expert disregards critical facts inconsistent

10  with market efficiency and is inadequate to support a finding that the market for Vocera stock

11  was efficient throughout the Class Period.

12      Even if Lead Plaintiffs were able to overcome all of these challenges, there would still be

13  a complex trial and likely appeals.  Accordingly, in light of the substantial risks of expense and

14  delay from continued litigation, and compared to the settlement amounts recovered in similar

15  class actions, the certain and immediate recovery of $9 million represents a good result for the

16  Settlement Class that is well within the range of reasonableness.  *See, e.g., Orvis v. Spokane Cty*,

17  281 F.R.D. 469, 475 (E.D. Wash. 2012) ("the proposed benefit to class members appears to the

18  Court to be within the range of fair and reasonable compensation given the uncertain outcome of

19  the legal arguments and the risks and probable delay for Plaintiff and class members if litigation

20  were to proceed toward trial."); *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS

21  (MDD), 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (addressing preliminary approval

22  and stating that "'[c]onsidering the potential risks and expenses associated with continued

23  prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate

24  uncertainty of recovery through continued litigation,' the Court finds that, on balance, the

25  proposed settlement is fair, reasonable, and adequate") (alteration in original) (citation omitted);

26  *cf. In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 373-74 (S.D. Ohio 2006) ("the difficulty

27  [p]laintiffs would encounter in proving their claims, the substantial litigation expenses, and a

28  possible delay in recovery due to the appellate process, provide justifications for this [c]ourt's

MASTER FILE NO. 3:13-CV-03567 EMC
LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

14

1   approval of the proposed [s]ettlement.”).

2       **C.**    **The Proposed Notice Program Satisfies Rules 23(d) and (e) as well as Due Process Requirements**

3

4       Lead Counsel proposes that mailed and published notice be given in the form of the

5   Notice and Summary Notice, attached as Exhibits 1 and 3 to the proposed Preliminary Approval

6   Order.  Notice to the Settlement Class in the form and in the manner set forth in the proposed

7   Preliminary Approval Order will fulfill the requirements of due process and comply with the

8   Federal Rules of Civil Procedure and the PSLRA.

9       Notice must be given to class members in the most practicable manner under the

10  circumstances and must describe "'the terms of the settlement in sufficient detail to alert those

11  with adverse viewpoints to investigate and to come forward and be heard.'"  *See, e.g., Lane v.*

12  *Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez v. West Publ'g Corp.*, 563

13  F.3d 948, 962 (9th Cir. 2009)); *see also* Fed. R. Civ. P. 23(c)(2)(B).  Lead Plaintiffs propose to

14  give Settlement Class Members notice in two ways:  (i) by first-class mail, addressed to all

15  Settlement Class Members who can reasonably be identified and located; and (ii) by publication

16  notice in *Investor's Business Daily* and transmission over *PR Newswire*.  *See In re HP Sec.*

17  *Litig.*, No. 3:12-CV-05980-CRB, 2015 WL 4477936 (N.D. Cal. July 20, 2015) (finding the

18  procedures for notice, including mailing individual notice and publication notice satisfy Rule 23,

19  the PSLRA, and constitute the best notice practicable).  Neither Defendants, nor Lead Counsel,

20  nor the Claims Administrator have access to potential Settlement Class Members' email

21  addresses for dissemination of the Notice, however, the Notices will be posted on the website for

22  the Settlement and Lead Counsel's website.

23      The form and substance of the notice program are sufficient.  The proposed forms of

24  notice describe the terms of the Settlement and the Settlement Class' recovery; the

25  considerations that caused Lead Plaintiffs and Lead Counsel to conclude that the Settlement is

26  fair, adequate, and reasonable; the maximum attorneys' fees and expenses that may be sought;

27  the procedure for requesting exclusion from the Settlement Class; the procedure for objecting to

28  the Settlement; the procedure for participating in the Settlement; the proposed Plan of

1   Allocation; and the date and place of the Settlement Hearing.  *See Ching v. Siemens Indus., Inc.*,

2   No. C 11-4838 MEJ, 2013 WL 6200190, at *6 (N.D. Cal. Nov. 27, 2013) (approving notice that

3   "adequately describes the nature of the action, summarizes the terms of the settlement, identifies

4   the class and provides instruction on how to opt out and object, and sets forth the proposed fees

5   and expenses to be paid to Plaintiff's counsel and the settlement administrator in clear,

6   understandable language").

7            The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*,

8   stating: (i) the amount of the Settlement determined in the aggregate and on an average per share

9   basis; (ii) that the Parties do not agree on the average amount of damages per share that would be

10  recoverable in the event Lead Plaintiffs prevailed, and stating the issue(s) on which the Parties

11  disagree; (iii) that Lead Counsel intend to make an application for an award of attorneys' fees

12  and expenses (including the amount of such fees and expenses determined on an average per

13  share basis), and a brief explanation of the fees and expenses sought;[7] (iv) the name, telephone

14  number, and address of one or more representatives of counsel for the Settlement Class who will

15  be available to answer questions concerning any matter contained in the Notice; and (v) the

16  reasons why the Parties are proposing the Settlement.  *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).  The

17  proposed Notice contains all of the information required by the PSLRA.[8]

18           The Notices will, when mailed and published as provided for in the Preliminary Approval

19  Order submitted herewith, fairly apprise Settlement Class Members of the Settlement and their

20  options with respect thereto, and fully satisfy all due process requirements.

21           Lead Counsel also propose that the Court appoint GCG as the Claims Administrator for

22  _____

23  [7] As set forth in the Notice, Lead Counsel intend to move for attorneys' fees of no more than 25% of the Settlement Fund and litigation expenses of no more than $450,000.  A 25% fee would amount to $2.25 million, which is approximately half of the legal fees billed by Lead Counsel to the case.  Accordingly, the requested fee would provide no multiplier to Lead Counsel.  As also set forth in the Notice, Lead Plaintiffs may seek reimbursement of their expenses (including lost wages), as permitted by the PSLRA, 15 U.S.C. §78u-4(a)(4), in an amount not to exceed $40,000.  If such a request is made, it will be fully briefed in Lead Counsel's opening motion for an award of attorneys' fees and expenses.

[8] As set forth in the Notice, the average recovery per allegedly damaged share of publicly traded common stock of Vocera would be $0.64 per share before deduction of Court-approved fees and expenses, such as attorneys' fees and expenses, and approximately $0.44 per allegedly damaged share after deduction of attorneys' fees and expenses.

1   the Settlement in order to provide all notices approved by the Court to Settlement Class

2   Members, to process Claim Forms, and to administer the Settlement.  GCG is the recognized

3   leader in legal administration services for class action settlements and legal noticing programs in

4   the country.  *See* Ex. 4.  For 30 years, GCG has administered some of the largest class actions of

5   all time.  *Id.*  In particular, GCG has successfully handled the notice and administration of some

6   of the largest and most complicated securities class actions, including the $6.19 billion

7   settlement in the *WorldCom* securities litigation and the $2.2 billion settlement in the *Nortel I*

8   and *II* securities litigations, among many others.  *Id.*  GCG's in-house staff  includes more than

9   100 former attorneys and a staff of more than 1,000 employees, many of whom have or had

10   licenses and certifications in disciplines germane to class action administration, such as CPAs,

11   CFAs, and Series 3, 4, and 7 qualifications.  *Id.*[9]

12          **D.**     **Proposed Plan of Allocation**

13          At the Settlement Hearing, the Court will be asked to approve the proposed Plan of

14   Allocation for the Settlement proceeds, which is reflected in full in the Notice.  The Plan of

15   Allocation was drafted with the assistance of Lead Plaintiffs' damages expert.  "[A] plan of

16   allocation . . . fairly treats class members by awarding a pro rata share to every Authorized

17   Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative

18   strengths and weaknesses of class members' individual claims and the timing of purchases of the

19   securities at issue."  *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 U.S.

20   Dist. LEXIS 100275, at *29 (C.D. Cal. July 9, 2013) (citation and internal quotation marks

21   omitted).  Here, the Plan of Allocation reflects the allegations that the price of Vocera publicly

22   traded securities was artificially inflated during the Class Period and that the inflation was

23   removed on February 27, 2013 and May 2, 2013.  The plan provides for the distribution of the

24   Net Settlement Fund to Settlement Class Members who purchased or otherwise acquired Vocera

25

26           [9] While the ultimate costs of noticing and administering the Settlement are dependent on
the number of notices provided to Settlement Class Members, the number of claims filed, the

27   complexity of those claims, and a variety of other factors, GCG estimates that costs of
administration, which will be paid out of the Settlement Fund, may fall between $150,000 and

28   $250,000.  This is just an estimate.

1    publicly traded securities during the Class Period based on the amount of alleged artificial

2    inflation reflected in the prices of Vocera's securities at the time of purchase and disposition.

3        Individual claimants' recoveries will depend upon when they bought Vocera securities

4    and whether they bought, sold, or held the securities after the Class Period.  Eligible claimants

5    will recover their proportioned amount of the Net Settlement Fund based on their Recognized

6    Loss under the Plan of Allocation.   The Claims Administrator will calculate claimants'

7    Recognized Losses and Lead Counsel will file a motion seeking approval of the claim

8    determinations once the administration of the Settlement is complete.

9        With respect to a *cy pres* award of any amounts remaining after distribution of the Net

10   Settlement Fund to eligible claimants, the Stipulation does not specific a recipient.  Once it is no

11   longer economically feasible to distribute the Net Settlement Fund, Lead Plaintiffs will request

12   Court approval of a recipient.  *See* Stipulation ¶ 26.

13   **II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT
         CLASS**

14       **A.    Standards Applicable to Class Certification**

15       At the Settlement Hearing, the Court will be asked to grant final approval of the

16   Settlement on behalf of the Settlement Class.  For that reason, it is appropriate for the Court to

17   consider, at the preliminary approval stage, whether the certification of the Settlement Class is

18   appropriate.  *See Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 (TEH), 2008 WL 346417, at *2

19   (N.D. Cal. Feb. 7, 2008).

20       Courts have acknowledged the propriety of certifying a class solely for purposes of a

21   class action settlement.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Indeed,

22   in the Ninth Circuit, "Rule 23 is to be liberally construed in a securities fraud context because

23   class actions are particularly effective in serving as private policing weapons against corporate

24   wrongdoing." *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) (citation and

25   internal quotation marks omitted); *see also In re THQ Inc. Sec. Litig.*, No. 00-1783AHM(EX),

26   2002 WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002) ("'[T]he law in the Ninth Circuit is very well

27   established that the requirements of Rule 23 should be liberally construed in favor of class action

28

1    cases brought under the federal securities laws.'") (citations omitted).

2         A settlement class, like other certified classes, must satisfy all the requirements of Rule

3    23(a) and (b). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  Nevertheless,

4    the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class.  *See Amchem*

5    *Prods.*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is

6    not a consideration when settlement-only certification is requested.").

7         As discussed below and in the filings related to Plaintiffs' Notice of Motion and Motion

8    for Class Certification, Appointment of Class Representatives, and Approval of Class Counsel

9    (ECF No. 163), the Action satisfies all the factors for certification.  Under Rule 23(a), a class

10   may be certified if:  (i) it is so numerous that joinder of all members is impracticable; (ii) there

11   are questions of law and fact common to the class; (iii) the claims or defenses of the

12   representative parties are typical of the claims or defenses of the class; and (iv) the representative

13   parties will fairly and adequately protect the interests of the class.  *See, e.g., Sandoval v.*

14   *Tharaldson Emp. Mgmt.*, No. EDCV 08-00482-VAP (OPx), 2009 WL 3877203, at *1 (C.D. Cal.

15   Nov. 17, 2009).  The proposed class additionally must fall within one of the three categories of

16   class actions defined in Rule 23(b).  *See, e.g., Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931,

17   936 (9th Cir. 2009).

18        Lead Plaintiffs request that the Court preliminarily certify a Settlement Class of all

19   persons and entities that purchased or acquired the publicly traded securities of Vocera between

20   March 28, 2012 and May 2, 2013, inclusive, and were allegedly damaged thereby, excluding

21   those persons and entities expressly identified in ¶ 1(hh) of the Stipulation.[10]

22        **B.    The Settlement Class Meets the Requirements of Rule 23(a)**

23             **1.    Rule 23(a) Numerosity**

24        Rule 23(a)(1) requires that the class be so numerous that joinder of all members is

25   impracticable.  "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or

26   inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*,

27   _____

28   [10] As mentioned above, the definition of the Settlement Class is consistent with the
     definition of the class proposed in Lead Plaintiffs' class certification motion.

329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted).  There is no fixed number of class members which either compels or precludes the certification of a class.  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994).  Indeed, the exact size of the class need not be known so long as "'general knowledge and common sense indicate that [the class] is large.'"  *Perez-Funez v. Dist. Dir., I.N.S*, 611 F. Supp. 990, 995 (C.D. Cal. 1984) (citation omitted).  In securities litigation, courts regularly find the numerosity requirement is satisfied with respect to putative purchasers of nationally traded securities on the volume of outstanding shares.  *See Howell v. JBI, Inc.*, 298 F.R.D. 649, 654-55 (D. Nev. 2014) ("in securities cases, when millions of shares are traded during the proposed class period, a court may infer that the numerosity requirement is satisfied"); *Cooper Cos.*, 254 F.R.D. at 634 ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year.  It is likely that thousands of people made such purchases.").

Here, there can be no dispute that the Settlement Class satisfies numerosity and consists of (at least) thousands of investors.  During the Class Period, Vocera had between 22 million to 24 million shares of common stock outstanding and actively trading on the New York Stock Exchange ("NYSE").  *See* Complaint ¶ 410; *see also* Report on Market Efficiency of Professor Steven P. Feinstein, Ph.D., CFA (ECF No. 164-2), ¶ 80 (noting that Vocera had an average of 23.2 million shares outstanding and actively trading on the NYSE during the Class Period).  Common sense dictates that these shares were purchased by hundreds of thousands of investors, making joinder impracticable.

### 2.    Rule 23(a)(2):  Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit construes this requirement "permissively," and has stated that that "[a]ll questions of fact and law need not be common to satisfy the rule."  *Hanlon*, 150 F.3d at 1019.

Securities fraud cases have long been found to satisfy the commonality requirement:

The overwhelming weight of authority holds that repeated misrepresentations of the sort

MASTER FILE NO. 3:13-CV-03567 EMC
LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

20

alleged here satisfy the "common question" requirement.  Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975); *see also In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("Repeated misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2).").

In this case, common questions of both law and fact abound.  The central questions–whether Defendants' public statements during the Class Period regarding Vocera's business, in particular–whether health care reform was having a negative impact on Vocera's bookings and revenues were false and misleading and whether Defendants acted with the requisite mental state–are the same for all class members.

### 3.    Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical

Rule 23(a)(3) is satisfied where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory.  *In re Comput. Memories Sec. Litig.*, 111 F.R.D. 675, 680 (N.D. Cal. 1986).  Rule 23(a)(3) does not require plaintiffs to show that their claims are identical on every issue to those of the class, but merely that significant common questions exist.  *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005).  Differences in the amount of damages, the size or manner of purchase, type of purchase, and even the specific documents influencing the purchase will not render the claim atypical in most securities actions. *See Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838, at *4 (D. Ariz. July 17, 2009).

Here, Lead Plaintiffs' claims are typical to those of the other Members of the Settlement Class.  Like all Settlement Class Members, Lead Plaintiffs purchased or acquired the publicly traded securities of Vocera during the Class Period and claim to have suffered damages when

MASTER FILE NO. 3:13-CV-03567 EMC
LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

21

1  Defendants' alleged material misstatements and omissions were revealed.

2  **4.    Rule 23(a)(4)  The Lead Plaintiffs Are Adequate**

3  Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect

4  the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The proper resolution of this issue requires

5  that two questions be addressed:  (a) do the named plaintiffs and their counsel have any conflicts

6  of interest with other class members and (b) will the named plaintiffs and their counsel prosecute

7  the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

8  462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

9  Here, Lead Plaintiffs are sophisticated institutional investors who have and will continue

10  to represent the interests of the Settlement Class fairly and adequately.  There is no antagonism

11  or conflict of interest between Lead Plaintiffs and the proposed Settlement Class.  Lead Plaintiffs

12  and Members of the Settlement Class share the common objective of maximizing their recovery

13  from Defendants when considering the totality of the relevant circumstances.

14  In addition, Lead Counsel has extensive experience and expertise in complex securities

15  litigation and class action proceedings throughout the United States.[11]  Lead Counsel is well

16  qualified and able to conduct the Action and has ably and effectively represented Lead Plaintiffs

17  and the proposed Settlement Class throughout the Action.  Therefore, Rule 23(a)(4) is satisfied.[12]

18  **C.    The Settlement Class Meets the Requirements of Rule 23(b)(3)**

19  **1.    Common Questions of Law or Fact Predominate**

20  Rule 23(b)(3) sets forth two requirements, the first being that the "questions of law or fact

21  common to the members of the class predominate over any questions affecting only individual

22  members."  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes

---

[11] *See* Lead Counsel's Firm Resume (Ex. 2); *see also In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 07-Civ-10453, 2009 WL 50132, at *10 (S.D.N.Y. Jan. 5, 2009) (stating that Labaton Sucharow has "substantial experience in the prosecution of shareholder and securities class actions").

[12] Lead Counsel has and will continue to fairly and adequately represent the interests of the Settlement Class.  Accordingly, Lead Counsel should be appointed as Class Counsel for the Settlement Class under Rule 23(g)(1).  *See, e.g., Williams v. Costco Wholesale Corp.*, No. O2cv2003 IEG (AJB), 2010 WL 761122, at *6 (S.D. Cal. Mar. 4, 2010) (appointing as Class Counsel attorneys who, as here, have "extensive experience in class actions" and appeared "competent to represent the class").

1    are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at

2    623.  "'When common questions present a significant aspect of the case and they can be resolved

3    for all members of the class in a single adjudication, there is clear justification for handling the

4    dispute on a representative rather than on an individual basis.'"  *Hanlon*, 150 F.3d at 1022

5    (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice &

6    Procedure § 1778 (2d ed. 1986)).  The predominance requirement is "readily met" in securities

7    class actions.  *Amchem Prods.*, 521 U.S. at 625; *see also Cooper Cos.*, 254 F.R.D. at 632

8    ("[S]ecurities fraud cases fit Rule 23 'like a glove.'") (citation omitted).

9         Here, common questions of law and fact predominate over individual questions because

10    Defendants' alleged fraudulent statements and omissions affected all Settlement Class Members

11    in the same manner (i.e., through public statements made to the market and documents publicly

12    filed with the SEC.  Predominance of common questions generally will be found when, as

13    alleged here, "'many purchasers have been defrauded over time by similar misrepresentations, or

14    by a common scheme to which alleged non-disclosures related.'"  *Negrete v. Allianz Life Ins. Co.*

15    *of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006) (citation omitted); *see also In re First Capital*

16    *Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL-901, 1993 WL 144861, at *6 (C.D. Cal. Feb.

17    26, 1993) ("The Ninth Circuit has repeatedly found that common issues predominate in federal

18    securities actions where the proposed class members have all been injured by the same alleged

19    course of conduct.").

20         Moreover, class-wide reliance is established in this Action through the application of the

21    "fraud-on-the-market" presumption of reliance in *Basic v. Levinson*, 485 U.S. 224, 241-42

22    (1988).  Application of *Basic* dispenses with the requirement that each Settlement Class Member

23    prove individual reliance on Defendants' alleged misstatements and/or omissions.  *See id.* at 241-

24    42.  In order to be entitled the *Basic* presumption of reliance, the market for the security must be

25    "efficient."  *Id.* at 248.  Here, where Vocera's securities are traded on NYSE, a national

26    securities exchange, there is sufficient evidence of market efficiency.  *See* ECF No. 163 at 13-22;

27    ECF No. 164-2 at ¶¶ 47-65.

28

1

### 2.    A Class Action Is a Superior Method of Adjudication

2       Finally, Rule 23(b)(3) also requires that the action be superior to other available methods

3  for the fair and efficient adjudication of the controversy.  The rule lists several matters pertinent

4  to this finding:

5       (A)    the class members' interests in individually controlling the prosecution or defense

6  of separate actions;

7       (B)    the extent and nature of any litigation concerning the controversy already begun

8  by or against class members;

9       (C)    the desirability or undesirability of concentrating the litigation of the claims in the

10  particular forum; and

11       (D)    the likely difficulties in managing a class action.

12  Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Desai*, 573 F.3d at 937.  Each factor weighs in favor of

13  superiority here.  *See, e.g., McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 615

14  (S.D. Cal. 2007) (noting "class action is the superior method for fair and efficient adjudication"

15  because individual suits would "'clog [ ] the federal courts with innumerable individual suits

16  litigating the same issues repeatedly,'" the plaintiffs assert complex claims that "would be very

17  costly to litigate," and each claim is for a "relatively small amount") (alteration in original)

18  (citation omitted).

19       Further, without the settlement class device, Defendants could not obtain a class-wide

20  release, and therefore would have had little, if any, incentive to enter into the Settlement.

21  Certification of a class for settlement purposes will allow the Settlement to be administered in an

22  organized and efficient manner.

23       Accordingly, this Court should preliminarily certify the Settlement Class.

24                           ### CONCLUSION

25       For the foregoing reasons, Lead Plaintiffs respectfully request that the Court issue an

26  order substantially in the form of the proposed Preliminary Approval Order: (a) preliminarily

27  certifying the Settlement Class; (b) preliminarily approving the Settlement; (c) holding that the

28  manner and forms of notice set forth in the Preliminary Approval Order satisfy due process and

1   provide the best notice practicable under the circumstances; (d) setting a date for the Settlement

2   Hearing; (e) appointing Lead Plaintiffs as Class Representatives, Lead Counsel as Class Counsel

3   and Robbins Geller as Liaison Counsel; (f) appointing GCG as Claims Administrator; (g)

4   ordering that notice substantially in the forms of the proposed notices be given to the proposed

5   Settlement Class; and (h) granting such other and further relief as may be required.

6

7   Dated: January 15, 2016                    Respectfully submitted,

8                                              LABATON SUCHAROW LLP

9                                              /s/ Jonathan Gardner
                                               JONATHAN GARDNER (*pro hac vice*)
10                                             CAROL C. VILLEGAS (*pro hac vice*)
                                               140 Broadway
11                                             New York, NY 10005
                                               Telephone: 212/907-0700
12                                             212/818-0477 (fax)

13                                             *Counsel for Lead Plaintiffs and the Proposed*
                                               *Settlement Class*

14                                             ROBBINS GELLER RUDMAN
                                                & DOWD LLP
15                                             DANIELLE S. MYERS
                                               655 West Broadway, Suite 1900
16                                             San Diego, CA 92101

17                                             Telephone: 619/231-1058
                                               619/231-7423 (fax)
18
                                               ROBBINS GELLER RUDMAN
19                                               & DOWD LLP
                                               SHAWN A. WILLIAMS
20                                             EKATERINI M. POLYCHRONOPOULOS
                                               Post Montgomery Center
21                                             One Montgomery Street, Suite 1800
                                               San Francisco, CA 94104
22                                             Telephone: 415/288-4545
                                               415/288-4534 (fax)
23
                                               *Liaison Counsel for Lead Plaintiffs and the*
24                                             *Proposed Settlement Class*

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Service List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 15, 2016

/s/ Jonathan Gardner
JONATHAN GARDNER

**Mailing Information for a Case 3:13-cv-03567-EMC**

*Brado v. Vocera Communications Inc et al*

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Marie Caroline Bafus**
  mbafus@fenwick.com,vsheehan@fenwick.com,pnichols@fenwick.com,
  dsheppard@fenwick.com
- **Joel H. Bernstein**
  jbernstein@labaton.com,lmehringer@labaton.com,dgoldsmith@labaton.com,
  sauer@labaton.com,electroniccasefiling@labaton.com
- **Norman J. Blears**
  nblears@sidley.com,kmay@sidley.com,epickens@sidley.com
- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,vsheehan@fenwick.com,mbafus@fenwick.com,
  kayoung@fenwick.com,pnichols@fenwick.com,ckevane@fenwick.com
- **Joseph Daniel Cohen**
  jcohen@scott-scott.com
- **Hal Davis Cunningham**
  hcunningham@scott-scott.com,efile@scott-scott.com
- Yah E. Demann
  ydemann@labaton.com
- **Matthew James Dolan**
  mdolan@sidley.com,adeparedes@sidley.com
- **Catherine Duden Kevane**
  ckevane@fenwick.com,pnichols@fenwick.com
- **Amber L. Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,RobynS@zhlaw.com
- **Joseph A. Fonti**
  jfonti@bftalaw.com
- **Jonathan Gardner**
  jgardner@labaton.com,cvillegas@labaton.com,lmehringer@labaton.com,
  acoquin@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,
  agreenbaum@labaton.com
- **Mark S. Goldman**
  goldman@lawgsp.com
- **Joseph P. Guglielmo**
  jguglielmo@scott-scott.com,edewan@scott-scott.com,tcrockett@scott-
  scott.com,efile@scott-scott.com
- **Susan Samuels Muck**
  smuck@fenwick.com,vsheehan@fenwick.com,rchang@fenwick.com,
  kayoung@fenwick.com,pnichols@fenwick.com,jbretan@fenwick.com,
  acaloza@fenwick.com
- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com
- **David R. Scott**
  drscott@scott-scott.com
- **Ronnie Solomon**
  rsolomon@fenwick.com,mguidoux@fenwick.com
- **Michael Walter Stocker**
  mstocker@labaton.com,drogers@labaton.com,lmehringer@labaton.com

- **Simona Gurevich Strauss**
  sstrauss@stblaw.com,niels.melius@stblaw.com,janie.franklin@stblaw.com,
  sblake@stblaw.com
- **Stephen J. Teti**
  steti@scott-scott.com
- **Carol C. Villegas**
  cvillegas@labaton.com,mpenrhyn@labaton.com,lmehringer@labaton.com,
  acoquin@labaton.com,thoffman@labaton.com,fmalonzo@labaton.com,
  acarpio@labaton.com
- **Shawn A. Williams**
  shawnw@rgrdlaw.com,erinj@rgrdlaw.com,katerinap@rgrdlaw.com,
  e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Michael John von Loewenfeldt**
  mvl@kerrwagstaffe.com,phan@kerrwagstaffe.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

(No manual recipients)