ROBBINS GELLER RUDMAN
 & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

*Liaison Counsel for Plaintiffs*

LABATON SUCHAROW LLP
JONATHAN GARDNER *(pro hac vice)*
CAROL C. VILLEGAS  *(pro hac vice)*
140 Broadway
New York, New York 10005
Telephone: 212/907-0700
212/818-0477 (fax)
jgardner@labaton.com
cvillegas@labaton.com

*Lead Counsel for Lead Plaintiffs and the Class*

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE VOCERA COMMUNICATIONS, INC., SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| ———————————————— | |
| This Document Relates to: | |
| All Actions. | |

MASTER FILE NO. 3:13-cv-03567 EMC

CLASS ACTION

LEAD PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

Date:  June 23, 2016
Time: 1:30 p.m.
Judge: The Hon. Edward M. Chen
Dep't: 5, 17th Floor

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 2

PRELIMINARY APPROVAL AND THE NOTICE PROGRAM ........................................... 3

ARGUMENT ........................................................................................................................... 5

I.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE
     UNDER THE APPLICABLE STANDARD AND SHOULD BE APPROVED ............... 5

     A.   The Standard for Final Approval of Class Action Settlements ................................ 5

     B.   Application of the Ninth Circuit's Criteria Supports Final Approval of the
          Settlement ............................................................................................................... 7

          1.   The Strength of Lead Plaintiffs' Case and Risks Associated with
               Continued Litigation ....................................................................................... 7

          2.   The Expense and Likely Duration of Further Litigation ............................. 11

          3.   The Risk of Maintaining Class-Action Status Through Trial .................... 11

          4.   The Amount Offered in the Settlement ........................................................ 12

          5.   The Extent of Discovery Completed and the Stage of the Proceedings ....... 13

          6.   The Experience and Views of Counsel ........................................................ 15

          7.   The Settlement is Not the Product of Collusion .......................................... 15

II.  THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR,
     ADEQUATE AND REASONABLE AND SHOULD BE APPROVED ........................ 16

III. THE COURT SHOULD GRANT FINAL CLASS CERTIFICATION FOR
     SETTLEMENT PURPOSES ....................................................................................... 17

CONCLUSION ...................................................................................................................... 18

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

i

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*ATLAS v. Accredited Home Lenders Holding Co.*,
No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009).......................7, 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ............................................................15

*Boring v. Bed Bath & Beyond*,
No. 12-cv-05259-JST, 2014 WL 2967474 (N.D. Cal. June 30, 2014) ..................................18

*Churchill Vill. L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ............................................................6

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ......................................................5, 6, 16

*In re Delphi Corp. Sec. Derivative & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ........................................................16

*Destefano v. Zynga*,
No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016 ) ........................... *passim*

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)........................................................................9

*Eisen v. Porsche Cars N. Am., Inc.*,
No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ......................14

*Garner v. State Farm Mut. Auto Ins. Co.*,
No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)........................5

*Glickenhaus & Co., et al. v. Household Int'l, Inc., et al.*,
787 F.3d 408 (7th Cir. 2015) ............................................................11

*In re Heritage Bond Litig.*,
No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005)...........................................16

*Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v.*
*Int'l Game Tech., Inc.*,
No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)....................13

*Janus Capital Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)........................................................................11

Master File No. 3:13-cv-03567 EMC
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

ii

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ............................................................................6

*Linney v. Cellular Alaska P'Ship*,
    No. C 96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd*, 151
    F.3d 1234 (9th Cir. 1998) .................................................................................15

*McPhail v. First Command Fin. Planning, Inc.*,
    No. 05cv179-IEG- JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ...............................13

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F. 3d 454 (9th Cir. 2000) ............................................................... *passim*

*Mendoza v. Tucson Sch. Dist. No. 1*,
    623 F.2d 1338 (9th Cir. 1980) ............................................................................4

*Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ..............................................................4, 11, 15

*Nguyen v. Radient Pharms. Corp.*,
    No. SACV 11-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ..................................10

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...........................................................................5, 6

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................12, 13, 15, 16

*In re Portal Software, Inc. Sec. Litig.*,
    No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)........................6, 14, 16

*Redwen v. Sino Clean Energy, Inc.*,
    No. 11-3936, 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013)...........................14, 17

*Satchell v. Fed. Express Corp.*,
    No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)....................................15, 16

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ...........................................................................6, 11

*In re TracFone Unlimited Serv. Plan Litig.*,
    112 F. Supp. 3d 993, 997 (N.D. Cal. 2015) ...........................................................5, 6

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ...............................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..................................................................................12

Master File No. 3:13-cv-03567 EMC
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

iii

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y 1985), *aff'd*, 798 F.2d 735 (2d Cir. 1986) ...................................10

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................................................................16

Fed. R. Civ. P. 23(a) ............................................................................................................18

Fed. R. Civ. P. 23(b)(3) ........................................................................................................18

Fed. R. Civ. P. 23(c)(1)(C) ...................................................................................................12

Fed. R. Civ. P. 23(e) ..............................................................................................................5

Fed. R. Civ. P. 23(f) .........................................................................................................11, 12

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

iv

1

## NOTICE OF MOTION

2    TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that on June 23, 2016 at 1:30 p.m., Lead Plaintiffs Arkansas

4    Teacher Retirement System and Baltimore County Employees' Retirement System, on behalf of

5    themselves and all members of the proposed Settlement Class, will move this Court for orders:

6    (1) granting final approval of the proposed Settlement of the Action; and (2) approving the

7    proposed Plan of Allocation for the net proceeds of the Settlement.

8          This motion is supported by the following memorandum of points and authorities and the

9    accompanying Declaration of Jonathan Gardner and the exhibits attached thereto.

10         Pursuant to local rule, proposed orders are being submitted herewith, however updated

11   proposed orders will be submitted with Lead Plaintiffs' reply submission on or before June 9,

12   2016, after the deadlines for requesting exclusion and objecting have passed.

13

## STATEMENT OF ISSUES TO BE DECIDED

14         (1) Whether the Court should grant final approval to the proposed class action Settlement

15   and Plan of Allocation; and

16         (2) Whether the Court should finally certify the Settlement Class, for purposes of the

17   Settlement only.

18

19

20

21

22

23

24

25

26

27

28

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Plaintiffs Arkansas Teacher Retirement System ("ATRS") and Baltimore County Employees' Retirement System ("BCERS"), as Court-appointed lead plaintiffs ("Lead Plaintiffs") respectfully submit this memorandum of points and authorities in support of their motion for (i) final approval of the proposed settlement (the "Settlement") of the above-captioned class action; (ii) final approval of the proposed Plan of Allocation; and (iii) final certification of the Settlement Class for purposes of this Settlement only.[1]

**PRELIMINARY STATEMENT**

As detailed in the Stipulation, Vocera Communications, Inc. ("Vocera" or the "Company"), Robert J. Zollars, Brent D. Lang, and William R. Zerella (collectively, the "Individual Defendants" and, with Vocera, the "Defendants") have agreed to pay or caused to be paid $9 million to secure a settlement of the claims in this proposed class action settlement (the "Settlement"). This recovery is a favorable result for the Settlement Class and avoids the risks and expenses of continued litigation, including the risk of recovering less than the Settlement Amount, or no recovery at all.

As described below and in the accompanying Gardner Declaration[2], Lead Plaintiffs faced, and would continue to face, vigorous opposition from Defendants with respect to the legal and factual bases of Lead Plaintiffs' claims. In particular, had the Settlement not been reached, Lead Plaintiffs would have faced considerable hurdles in proving falsity, scienter, loss causation, and establishing the Settlement Class's full amount of damages at trial.

---

[1]	All capitalized terms not otherwise defined herein shall have the same meanings set forth and defined in the Stipulation and Agreement of Settlement, dated as of January 14, 2016 (the "Stipulation", ECF No. 186-1).

[2]	The Declaration of Jonathan Gardner in Support of Lead Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses ("Gardner Declaration" or "Gardner Decl.") contains a detailed description of the allegations and claims, the procedural history of the Action, and the events that led to the Settlement, among other matters.

All exhibits referenced herein are annexed to the Gardner Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___-___." The first numerical reference refers to the designation of the entire exhibit attached to the Gardner Declaration and the second numerical reference refers to the exhibit designation within the exhibit itself.

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

2

As set forth in detail in the Gardner Declaration, an agreement to settle this Action was reached only after more than two years of litigation, which included, *inter alia*: (i) the review and analysis of publicly available information concerning Vocera; (ii) interviews of 23 former Vocera employees and other persons with relevant knowledge (four of whom provided information as confidential witnesses that was included in the complaint); (iii) preparation of a detailed Consolidated Amended Class Action Complaint ("Complaint"); (iv) successful opposition, at least in part, of Defendants' comprehensive motion to dismiss; (v) formal discovery, involving, among other things, the review of approximately 771,000 pages of documents from Defendants and non-parties; and (vi) participation in mediation efforts, which included the exchange of comprehensive mediation statements and a full-day mediation session with the assistance of an experienced mediator.

In light of Lead Plaintiffs' informed assessment of the strengths and weaknesses of the claims and defenses asserted and the risks and delays associated with continued litigation and trial, Lead Plaintiffs and Lead Counsel believe the Settlement is fair, reasonable, and adequate. Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement. In addition, the Plan of Allocation, which was developed with the assistance of Lead Plaintiffs' consulting damages expert, is a fair and reasonable method for distributing the Net Settlement Fund and should also be approved by the Court. Lastly, Lead Plaintiffs request that the Court finally certify, for settlement purposes only, the Settlement Class.

## PRELIMINARY APPROVAL AND THE NOTICE PROGRAM

On March 4, 2016, the Court entered an order preliminarily approving the Settlement (the "Preliminary Approval Order") (ECF No. 198). Pursuant to and in compliance with the Preliminary Approval Order, through records maintained by Vocera's transfer agent, information gathered from brokerage firms and requests made by individuals and brokerage firms, beginning on March 18, 2016, Garden City Group, LLC ("GCG"), the Court-appointed Claims Administrator, caused the Notice and Proof of Claim and Release form (together, the "Claim Packet") to be mailed to potential Settlement Class Members. *See* Ex. 4 ¶¶2-6. A total of 19,847 Claim Packets were mailed as of May 18, 2016. *Id.* ¶6. On April 1, 2016, the Summary Notice

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

3

was published in *Investor's Business Daily* and was issued over *PR Newswire*. *Id*. ¶8 and Exs. C and D attached thereto. On March 18, 2016, the Notice and Proof of Claim were posted on the case-dedicated website established by GCG for purposes of this Settlement. *Id*. ¶9.

The Notice described, *inter alia*, the claims asserted in the Action, the contentions of the Parties, the course of the litigation, the terms of the Settlement, the attorneys' fees and expense request, the Plan of Allocation, the right to object to the Settlement, and the right to seek to be excluded from the Settlement Class. *See generally* Ex. 4-A. The Notice also gave the deadlines for objecting or seeking exclusion from the Settlement Class and advised potential Settlement Class Members of the scheduled Settlement Hearing before this Court. *Id*. at 7-8. The Notice specifically notified Settlement Class Members that Lead Counsel's request for attorneys' fees would not exceed 25% of the Settlement Fund and its request for payment of expenses would not exceed $450,000, plus interest at the same rate as earned by the Settlement Fund. *Id*. at 2, 6.

The Ninth Circuit has held that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980) (citation omitted). Lead Plaintiffs respectfully submit that the notice program utilized here readily meets this standard. *See, e.g.*, *Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (finding notice sufficient when, as here, it described the background of the case and the terms of the proposed settlement, and provided class members with "clear instructions about to how object").

To date, the Settlement Class's reaction to the proposed Settlement has been positive. While the date (June 2, 2016) to opt-out from or object to the Settlement has not yet passed, to date there have been no requests for exclusion and no objections to the proposed Settlement and Plan of Allocation.[3]

---

[3]   As noted below, Lead Plaintiffs will file reply papers on or before June 9, 2016 responding to requests for exclusion or objections, if any. Lead Plaintiffs' reply papers will also report on the number of class members who have submitted claims to date.

Master File No. 3:13-cv-03567 EMC
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

4

## ARGUMENT

**I.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER THE APPLICABLE STANDARD AND SHOULD BE APPROVED**

### A.   The Standard for Final Approval of Class Action Settlements

Strong judicial policy favors settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "there is an overriding public interest in settling and quieting litigations," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  Class-action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  Settlements of complex cases such as this one greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims.  *See, e.g.*, *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain and substantial recovery for the Plaintiff class.") (citation and internal quotation marks omitted).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis.  The standard for determining whether to grant final approval to a class action settlement is whether the proposed settlement is "fundamentally fair, adequate, and reasonable."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 997 (N.D. Cal. 2015) (J. Chen) (same).  In making this determination, courts in the Ninth Circuit consider and balance a number of factors, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

5

governmental participant; and (8) the reaction of class members to the proposed settlement.[4]

*See Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026); *Officers for Justice,* 688 F.2d at 625 (same); *In re TracFone*, 112 F. Supp. 3d at 998 (J.Chen) (same).  Courts have also considered "the role taken by the lead plaintiff in [the settlement] process, a factor somewhat unique to the PSLRA."  *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) (internal citation omitted).  Not all of these factors will apply to every class action settlement and, under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

The determination of whether a settlement is fair, adequate and reasonable is committed to the Court's sound discretion.  *See Mego*, 213 F.3d at 458 ("Review of the district court's decision to approve a class action settlement is extremely limited.") (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)).  In applying the pertinent factors, the Court need not reach conclusions about the merits of the case, in part because the Court will be called upon to decide the merits if the action proceeds.  *See Officers for Justice*, 688 F.2d at 625 ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. . . .  [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.").  The Court's discretion in assessing the fairness of the settlement is also circumscribed by "the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Officers for Justice*, 688 F.2d at 626); *Class Plaintiffs*, 955 F.2d at 1276 (same).

---

[4]      With respect to the seventh factor, there was no governmental investigation that assisted with the investigation or prosecution of the Action.  As to the eighth factor, Settlement Class Members have until June 2, 2016 to request exclusion from the Settlement Class or object to the matters to be considered during the Settlement Hearing.  Lead Plaintiffs will file a reply brief responding to any objections and addressing exclusion requests no later than June 9, 2016.

### B.   Application of the Ninth Circuit's Criteria Supports Final Approval of the Settlement

#### 1.   The Strength of Lead Plaintiffs' Case and Risks Associated with Continued Litigation

To determine whether the proposed Settlement is fair, reasonable and adequate, the Court must balance the continuing risks of litigation against the benefits afforded to class members and the immediacy and certainty of a substantial recovery.  *See Mego*, 213 F.3d at 458.  Although Lead Plaintiffs believe that the case against Defendants is strong, that confidence must be tempered by the fact that the Settlement is beneficial and that every case involves significant risk of no recovery, particularly in a complex case such as the one at bar.  There is no question that Lead Plaintiffs would have confronted a number of challenges, including: establishing that Defendants' statements and omissions were false and misleading at the time they were made, proving that Defendants acted with scienter, and proving loss causation as well as the appropriate calculation of damages – each of which could have barred a recovery at trial.  *See ATLAS v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009) (approving settlement where "litigating the complex securities fraud class action to completion would have resulted in substantial delay and expense").

#### (a)   Falsity Defenses

Lead Plaintiffs faced substantial risks in proving that Defendants' statements and alleged omissions were false and misleading at the time that they were made or occurred.  Gardner Decl. ¶¶72-76.  Defendants would likely argue that the statements contained in Vocera's earnings calls, releases, offering materials, and 10-K, including Vocera's forecasts and guidance, and the statements underlying those forecasts, such as predictions of growth and performance and the anticipated effects of the ACA, are protected from liability by the PSLRA "safe harbor."  *Id.* ¶73. If the protection applied, Lead Plaintiffs would have to prove Defendants' actual knowledge to overcome the defense.  Defendants would also argue that this is not a restatement case and at no time did Lead Plaintiffs allege that Vocera adjusted its financial results or backtracked on its historical accounts.  *Id.* ¶74.  Accordingly, Lead Plaintiffs would face a challenge in rebutting Defendants' argument that the misstatements could not have been false or misleading when

made.  Defendants would also likely argue that Lead Plaintiffs' claim that Defendants misled the market by improperly accelerating backlog to meet public guidance in order to maintain the appearance of a healthy company is unsupported by any evidence or a meaningful pattern, and, in any event, accelerating the Company's backlog is valid and consistent with normal industry practice.  *Id*. ¶¶75-76.  While Lead Plaintiffs believe they would be successful at summary judgment or a trial, they also recognize there were hurdles to proving the falsity of the alleged misstatements.  *See Destefano v. Zynga*, No. 12-cv-04007-JSC, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016 ) (approving settlement and noting that the risks of proving liability weigh in favor of approval where proving the falsity of the alleged misstatements will be difficult).

### (b)     Scienter Defenses

Even if Defendants' statements and alleged omissions were found by a jury to have been false, Defendants cannot be liable under the Securities Exchange Act of 1934 (the "Exchange Act") for such falsity, unless Defendants acted with scienter—*i.e*., knowledge of such falsity, or reckless disregard for whether the statements were true or false.  Here, Defendants would have denied that Lead Plaintiffs could prove that there was an intentional or severely reckless violation of the Exchange Act.  Gardner Decl. ¶¶77-80.  In particular, Defendants would have argued that the testimony of confidential witnesses could not prove a single specific fact suggesting Defendants' knowledge of or participation in any sort of fraudulent activity.  *Id*. ¶78. Additionally, Defendants would argue that Lead Plaintiffs cannot rely on the stock sales of Zollars and Lang during the Class Period, to further prove scienter, given that although Zollars and Lang sold shares during the Class Period, these sales only represented 23% and 46% of their respective holdings, and that such amounts are not indicative of scienter.  *Id*. ¶80.  Defendants would also argue that the sales by Zollars and Lang occurred in connection with the September 7, 2012 secondary public offering ("SPO") and partial release of the lock-up in late 2012 and are therefore not suspicious in timing given that it is only natural they would want to sell some shares and diversify once the lock-up expired.  *Id*.

### (c)   Loss Causation and Disaggregation Defenses

Another risk in continuing the litigation is the difficulty of proving loss causation and damages, which would be hotly contested by Defendants at summary judgment, in pretrial *Daubert* motions, and at trial.  The United States Supreme Court has confirmed that the law requires that "a plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).  Principally, Defendants would likely have asserted that any potential investment losses suffered by Lead Plaintiffs and the Settlement Class were not caused by the disclosure of any alleged fraud.  In that regard, and as set forth in great detail in the Gardner Declaration (*see* ¶¶82-84), Defendants were expected to argue that nothing in the alleged disclosures of February 27, 2013 or May 2, 2013 tied the Company's disappointing results to any sort of improprieties concerning Vocera's backlog practices, and that any impact of the ACA or the BCA could not have been anticipated.  With respect to the BCA, Defendants would argue that it was not until December 2012 that Congress appeared deadlocked and automatic budget cuts did not begin in earnest until March 2013.  *Id.* ¶83.  If this position prevailed, the class claims would have been dismissed entirely.  *See Zynga*, 2016 WL 537946, at *10 (approving settlement and noting the particular challenges of proving loss causation).

The issue of disaggregation would also be hotly contested.  As set forth in the Gardner Declaration, Lead Plaintiffs' consulting damages expert estimated that the Settlement Class sustained maximum aggregate damages between the range of approximately $100 million to $225 million, assuming that 100% of the two alleged stock drops were proven to relate to revelations of the alleged fraud.[5]  The range in estimate is also a function of when the "locked-up" shares from Vocera's March 28, 2012 IPO ("IPO") and the SPO are assumed to have begun trading.  Gardner Decl. ¶¶8, 87.  Defendants would have likely asserted that, at most, assuming that the declines following both alleged corrective disclosures could be attributed in their entirety to information that should have been revealed earlier, maximum potential damages were

---

[5]   If only the May 2, 2013 disclosure were established at trial, Lead Plaintiffs' expert estimated maximum aggregate damages in the range of approximately $80 million to $170 million.  Gardner Decl. ¶87.

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

9

approximately $145 million.  *Id.* ¶85.  However, this number, according to Defendants, vastly

overstates the potentially recoverable damages given the strong evidence against loss causation,

and given that only a portion, if any, of the stock price declines on February 28, 2013 and May 3,

2013 could be attributed to corrective information.  *Id.*  For instance, Defendants would likely

argue that the majority of the price decline on February 28, 2013 related to information unrelated

to the alleged fraud, and that with respect to the May 2, 2013 disclosure, Defendants would

likely focus on the fact that the Company also announced a substantial reduction in its full year

guidance, and therefore, most, if not all, of the price decline was unrelated to the alleged fraud.

Defendants also may have argued that if the February 27, 2013 announcement fully disclosed

issues related to the BCA and backlog, then none of the May 3, 2013 decline could also be

attributed to those issues, which would have substantially decreased overall damages.  *Id.* ¶86.

Resolution of these damages issues would no doubt involve the testimony of expert

witnesses and the Parties would end up in a "battle of the experts" where it would be impossible

to predict with any certainty which arguments would find favor with a jury.  *See*, *e.g.*, *Nguyen v.*

*Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *2 (C.D.

Cal. May 6, 2014) (approving settlement in securities case where "[p]roving and calculating

damages required a complex analysis, requiring the jury to parse divergent positions of expert

witnesses in a complex area of the law" and "[t]he outcome of that analysis is inherently difficult

to predict and risky") (citation omitted); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735,

744 (S.D.N.Y 1985), *aff'd*, 798 F.2d 735, 744-45 (2d Cir. 1986) (approving settlement where "it

is virtually impossible to predict with any certainty which testimony would be credited, and

ultimately, which damages would be found to have been caused by actionable, rather than the

myriad nonactionable factors such as general market conditions").  The outcome could well have

depended on whose testifying expert the jury believed or even whether the jury was able to

follow the economic theories used by the experts.  The Settlement eliminates the risk that the

jury might award less than the amount of the Settlement or nothing at all to the Settlement Class.

In sum, as a result of the availability to Defendants of the various defenses described,

*supra* and in the Gardner Declaration, it is possible that, even if a court or a jury were to find that

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

10

1    Defendants knowingly made misleading statements, Settlement Class Members would recover

2    no damages, or damages in an amount smaller than the amount of the Settlement.

3                    **2.      The Expense and Likely Duration of Further Litigation**

4            Final approval is also supported by the expense and likely duration of continued

5    litigation.  *See Torrisi*, 8 F.3d at 1376 ("the cost, complexity and time of fully litigation the case

6    all suggest that this settlement was fair").  "In most situations, unless the settlement is clearly

7    inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

8    uncertain results."  *Nat'l Rural Telecomm.  Coop,* 221 F.R.D. at 526.  Here, the expense and

9    duration of preparing and trying the case before a jury and the subsequent motion practice on a

10   likely appeal of the Court's decision on the motion to dismiss, class certification, summary

11   judgment, post-trial motions, and a jury verdict would be significant.  Barring a settlement, there

12   is no question that this case would be litigated for years, taking a considerable amount of court

13   time and costing millions of additional dollars, with the possibility that the end result would be

14   no better for the class, and might even be worse.  *See Zynga,* 2016 WL 537946, at *10

15   ("continuing litigation would not only be costly – representing expenses that would take away

16   from any ultimate classwide recovery – but would also delay resolution and recovery for

17   Settlement Class Members"); *cf Glickenhaus & Co., et al. v. Household Int'l, Inc., et al.*, 787

18   F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of

19   litigation on loss causation grounds and error in jury instruction under *Janus Capital Grp., Inc. v.*

20   *First Derivative Traders*, 564 U.S. 135 (2011)).

21           The Settlement, therefore, provides sizeable and tangible relief to the Settlement Class

22   now, without subjecting Settlement Class Members to the risks, duration and expense of

23   continuing litigation.  This factor weighs strongly in favor of final approval of the Settlement

24                   **3.      The Risk of Maintaining Class-Action Status Through Trial**

25           While Lead Plaintiffs are confident that they would have prevailed on their motion for

26   class certification, which was pending at the time the Parties agreed to settle, the outcome of

27   such a contested motion was far from certain.  Even if Lead Plaintiffs prevailed, there is no doubt

28   that Defendants would have filed a Rule 23(f) petition for an interlocutory appeal of the decision.

Master File No. 3:13-cv-03567 EMC                                                                11
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

Even if Lead Plaintiffs defeated a Rule 23(f) petition, under Rule 23(c)(1)(C), a Court's prior grant of certification "may be altered or amended before final judgment." It is possible, therefore, that the class could be decertified or modified if the litigation were to continue. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (noting that even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").

### 4.    The Amount Offered in the Settlement

In evaluating the fairness of a settlement, a fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay and expense. In this regard, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Mego*, 213 F.3d at 459 (citation omitted). Indeed, "[t]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Wal-Mart Stores*, *Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).

The proposed $9 million Settlement is well within the range of reasonableness in light of the best possible recovery at trial and the risks of continued litigation. As noted above, according to analyses prepared by Lead Plaintiffs' consulting damages expert, the Settlement Class sustained maximum aggregate damages in the range of approximately $100 million to $225 million, assuming that 100% of the two alleged stock drops were related to revelations of the alleged fraud, with $100 million being the more realistic maximum valuation.[6] The $9 million Settlement thus represents approximately 4% to 9% of this maximum estimated damages amount. *See* Gardner Decl. ¶¶8-9.

Under either analysis, the percentages fall well within the range of approval, and courts have generally approved settlements in cases since the passage of the Private Securities

---

[6]    As noted earlier, if only the May 2, 2013 disclosure were established at trial, Lead Plaintiffs' expert estimated maximum aggregate damages in the range of approximately $80 million to $170 million, in which case the Settlement Amount would represent 5% to 11% of estimated damages. Gardner Decl. ¶87.

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

12

Litigation Reform Act of 1995 ("PSLRA"), that recover a comparable or far smaller percentage of maximum damages.  *See McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate); *Omnivision,* 559 F. Supp. 2d at 1042 ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements") (citation omitted); *Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.,* No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum damages that plaintiffs believe could be recovered at trial and noting that the amount is within the median recovery in securities class actions settled in the last few years).

Moreover, the Settlement is above the median reported settlement amount in 2015, which was $6.1 million.  *See* Gardner Decl. ¶7; Ex. 3 at 6.

Therefore, the Settlement is a favorable result that falls well within the range of reasonableness.

### 5.    The Extent of Discovery Completed and the Stage of the Proceedings

The stage of the proceedings and the amount of discovery completed are also factors courts consider in determining the fairness, reasonableness and adequacy of a settlement.  *See Mego*, 213 F.3d at 459.  When the Parties agreed to the Settlement, Lead Plaintiffs had litigated the motions to dismiss the Complaint, moved for class certification, and were in the process of merits discovery.

Merits discovery involved, among other things, serving document requests on Defendants and subpoenas on non-parties; numerous meet and confer sessions with Defendants as to the scope and manner of Defendants' document production; the review and analysis of approximately 771,000 pages of core documents produced by Defendants and non-parties; and one 30(b)(6) deposition taken by Lead Counsel of the Company's current CEO.  Gardner Decl. ¶¶41-51, 55.  Additionally, Lead Counsel defended two 30(b)(6) depositions of Lead Plaintiffs. *Id*. ¶¶52-54.

Master File No. 3:13-cv-03567 EMC
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

13

1    In connection with class certification, Lead Plaintiffs filed an expert report on market

2    efficiency in support of their July 15, 2015 motion for class certification, as well as a rebuttal

3    expert report.  *Id.* ¶¶56-59, 61.

4    The above is in addition to the informal discovery conducted by Lead Counsel prior to

5    filing the Complaint, which involved, among other things, review and analysis of: press releases,

6    news articles, and other public statements issued by or concerning Defendants, research reports

7    issued by financial analysts concerning the Company, industry specific legislation, including the

8    ACA and BCA, and internal Vocera documents provided by two former Vocera employees; as

9    well as locating and contacting dozens of former Vocera employees and other witnesses with

10   relevant knowledge, with the accounts of four former employees included in the Complaint as

11   confidential witness accounts.  *Id.* ¶¶20-24.

12   Furthermore, the Parties engaged in a mediation session before an experienced mediator

13   that was preceded by the exchange of mediation statements and numerous exhibits detailing the

14   Parties' respective positions and supporting evidence.  *Id.* ¶¶62-63.

15   In short, Lead Plaintiffs had a full understanding of the likelihood of success and the

16   potential recovery at trial at the time the Settlement was agreed to.  *See Zynga,* 2016 WL 537946,

17   at *12 (noting that the extent of discovery completed and stage of proceedings supports final

18   approval of settlement where plaintiffs engaged in a pre-filing investigation, opposed defendants'

19   motions to dismiss and a motion for reconsideration, worked with consultants, propounded and

20   responded to some discovery, and prepared and participated in mediation session); *Portal*

21   *Software,* 2007 WL 4171201, at *4 ("The settlement reflects three and a half years of completed

22   work including pre-filing investigation, locating and interviewing over twenty-one witnesses, . . .

23   and plaintiff's analysis of defendants' motion for summary judgment . . . As a result, the true

24   value of the class's claims were well known."); *Eisen v. Porsche Cars N. Am., Inc.,* No. 2:11-cv-

25   09405-CAS-FFMx, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement

26   where record established that "all counsel had ample information and opportunity to assess the

27   strengths and weaknesses of their claims and defenses"); *Redwen v. Sino Clean Energy, Inc.,* No.

28   11-3936, 2013 U.S. Dist. LEXIS 100275, at *22 (C.D. Cal. July 9, 2013) (settlement approved

Master File No. 3:13-cv-03567 EMC
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof                    14

1   when, as here, "the parties have spent a significant amount of time considering the issues and

2   facts in this case and are in a position to determine whether settlement is a viable alternative").

3   This factor supports final approval of the Settlement.

###### 6.      The Experience and Views of Counsel

5           Experienced counsel, negotiating at arm's-length, have weighed the factors discussed

6   above and endorse the Settlement.  As courts have stated, the views of the attorneys actively

7   conducting the litigation and who are most closely acquainted with the facts of the underlying

8   litigation, are entitled to "great weight." *Nat'l Rural Telecomm.*, 221 F.R.D. at 528; *see also*

9   *Zynga,* 2016 WL 537946, at *13 ("A district court is entitled to give consideration to the opinion

10  of competent counsel that the settlement is fair, reasonable, and adequate.") (internal quotation

11  omitted).

12          Lead Counsel firmly believes that the Settlement is fair, adequate and reasonable, and

13  particularly so in view of the risks, burdens and expense of continued litigation.  Further, it is

14  respectfully submitted that plaintiffs' counsel are experienced and able lawyers in this area of

15  practice (*see* Gardner Decl. ¶121 and Exs. 5-H and 6-E) and "[t]here is nothing to counter the

16  presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d

17  at 1043.  Accordingly, this factor strongly favors approval of the Settlement.

###### 7.      The Settlement is Not the Product of Collusion

19          Another factor is whether there is any evidence that the settlement is the result of

20  collusion.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011);

21  *see also Mego*, 213 F.3d at 458.  "The involvement of experienced class action counsel and the

22  fact that the settlement agreement was reached in arm's length negotiations, after relevant

23  discovery had taken place create a presumption that the agreement is fair." *Linney v. Cellular*

24  *Alaska P'Ship*, No. C 96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151

25  F.3d 1234 (9th Cir. 1998).  The presumption is entirely proper here.  The Settlement is the

26  product of extensive and informed arm's-length negotiations with the assistance of United States

27  District Court Judge Layn R. Phillips (Ret.) ("Judge Phillips"), a well-respected and highly

28  experienced mediator.  *See Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 WL 1114010,

Master File No. 3:13-cv-03567 EMC
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

15

at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *ATLAS v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009) ("The settlement negotiations were also fair.  They were closely supervised by the Honorable Layn Phillips (Ret.) and conducted at arm's length by experienced and competent counsel."); *see also In re Delphi Corp. Sec. Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (speaking of Judge Phillips, "the Court and the parties have had the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent and highly skilled mediators of complex actions").

Finally, the recommendation of Lead Plaintiffs, sophisticated institutional investors, also supports the fairness of the Settlement.  *See* Exs. 1 ¶5 and 2 ¶5.  Courts generally give weight to the lead plaintiffs in evaluating the process of the settlement as well as its substantive fairness. *See Portal Software*, 2007 WL 4171201, at *5 ("[F]actor (10), the role taken by the lead plaintiff in the settlement process, supports settlement because lead plaintiff was intimately involved in the settlement negotiations.").

Accordingly, this factor, like the others discussed above, strongly favors approval of the Settlement.  Lead Plaintiffs respectfully submit that the Settlement is fundamentally fair, adequate and reasonable and should be approved.

## II.  THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR, ADEQUATE AND REASONABLE AND SHOULD BE APPROVED

The standard of approval of a plan of allocation in a class action under Rule 23 of the Federal Rules of Civil Procedure is the same as the standard applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate.  *Class Plaintiffs,* 955 F.2d at 1284; *Omnivision*, 559 F. Supp. 2d at 1045.  An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel.  *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005).  Here, Lead Counsel prepared the Plan of Allocation after careful consideration and with the assistance of a consulting damages expert.  Gardner Decl. ¶¶91-95.  The Plan of Allocation was fully described in the Notice.  *See* Ex. 4-A at 9-12.  A total of 19,847 copies of the Notice have been mailed to potential Settlement

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

16

1   Class Members and, as of the filing of this motion, no Settlement Class Member has filed an

2   objection to it.  Ex. 4 ¶¶6, 15.

3          "[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to

4   every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter

5   alia, the relative strengths and weaknesses of class members' individual claims and the timing of

6   purchases of the securities at issue."  *Redwen*, 2013 U.S. Dist. LEXIS 100275, at *29 (citation

7   and internal quotation marks omitted).  Here, the Plan of Allocation provides for distribution of

8   the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on "Recognized

9   Loss" formulas tied to liability and damages.  These formulas consider the amount of alleged

10  artificial inflation in the prices of Vocera publicly traded common stock and/or call options (or

11  deflation in the prices of put options), as quantified by Lead Plaintiffs' expert.  *See* Ex. 4-A at 9-

12  12.  Lead Plaintiffs' consulting damages expert analyzed the movement in the prices of Vocera

13  securities and took into account the portion of the price drops attributable to the alleged fraud.

14  Gardner Decl. ¶93.  Claimants will be eligible for a payment based on when they purchased,

15  held, or sold their Vocera securities.

16          Accordingly, for all of the reasons set forth herein and in the Gardner Declaration, the

17  Plan of Allocation is fair, reasonable and adequate and should be approved.

18  **III.    THE COURT SHOULD GRANT FINAL CLASS CERTIFICATION FOR
              SETTLEMENT PURPOSES**

19
20          In presenting the proposed Settlement to the Court for preliminary approval, Lead

21  Plaintiffs requested that the Court preliminarily certify the Settlement Class for settlement

    purposes so that notice of the proposed Settlement, the final approval hearing and the rights of
22
    Settlement Class Members to request exclusion, object, or submit proofs of claim could be
23
    issued.  In its Preliminary Approval Order, entered on March 4, 2016, this Court preliminarily
24
    certified the Settlement Class.  ECF No. 198.
25
            Nothing has changed to alter the propriety of the Court's certification and no potential
26
    Settlement Class Member has objected to class certification.  Accordingly, and for all the reasons
27
    stated in Lead Plaintiffs' Notice of Unopposed Motion and Unopposed Motion for Preliminary
28
    Approval of Proposed Class Action Settlement and Memorandum of Points and Authorities in

1   Support Thereof (ECF No. 185), incorporated herein by reference, Lead Plaintiffs now request

2   that the Court:  (i) finally certify the Settlement Class for purposes of carrying out the Settlement

3   pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (ii) appoint Lead Plaintiffs as Class Representatives;

4   and (iii) appoint Lead Counsel as Class Counsel.  *See, e.g.*, *Boring v. Bed Bath & Beyond*, No.

5   12-cv-05259-JST, 2014 WL 2967474, at *2 (N.D. Cal. June 30, 2014) ("For the reasons

6   discussed in the Court's Preliminary Approval Order, the Court finds that the requirements for

7   certification of the conditionally certified settlement class have been met, and that the

8   appointment of . . . Class Representative and . . . Class Counsel is proper.").

9   **CONCLUSION**

10          For the foregoing reasons, Lead Plaintiffs respectfully requests that the Court:  (i) grant

11   final approval of the Settlement; (ii) approve the Plan of Allocation as fair, reasonable and

12   adequate; (iii) find that notice to the Settlement Class was provided as required and to the

13   satisfaction of due process and the PSLRA; (iv) finally certify the Settlement Class; and

14   (v) appoint Lead Plaintiffs as Class Representatives and Lead Counsel as Class Counsel.

15   Dated: May 19, 2016                      Respectfully submitted,

16
                                            LABATON SUCHAROW LLP
17
                                            /s/ Jonathan Gardner
18                                          JONATHAN GARDNER (*pro hac vice*)
                                            CAROL C. VILLEGAS (*pro hac vice*)
19                                          140 Broadway
                                            New York, NY 10005
20                                          Telephone: 212/907-0700
                                            212/818-0477 (fax)
21
                                            *Counsel for Lead Plaintiffs and the Proposed*
22                                          *Settlement Class*

23                                          ROBBINS GELLER RUDMAN
                                             & DOWD LLP
24                                          DANIELLE S. MYERS
                                            655 West Broadway, Suite 1900
25                                          San Diego, CA 92101
                                            Telephone: 619/231-1058
26                                          619/231-7423 (fax)

27                                          ROBBINS GELLER RUDMAN
                                             & DOWD LLP
28                                          SHAWN A. WILLIAMS
                                            Post Montgomery Center

One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

*Liaison Counsel for Lead Plaintiffs and the
Proposed Settlement Class*

Master File No. 3:13-cv-03567 EMC
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

19

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Service List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 19, 2016

/s/ Jonathan Gardner
JONATHAN GARDNER

**Mailing Information for a Case 3:13-cv-03567-EMC**

*Brado v. Vocera Communications Inc et al*

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Marie Caroline Bafus**
  mbafus@fenwick.com,vsheehan@fenwick.com,pnichols@fenwick.com,
  dsheppard@fenwick.com
- **Joel H. Bernstein**
  jbernstein@labaton.com,lmehringer@labaton.com,dgoldsmith@labaton.com,
  sauer@labaton.com,electroniccasefiling@labaton.com
- **Norman J. Blears**
  nblears@sidley.com,kmay@sidley.com,epickens@sidley.com
- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,vsheehan@fenwick.com,mbafus@fenwick.com,
  kayoung@fenwick.com,pnichols@fenwick.com,ckevane@fenwick.com
- **Joseph Daniel Cohen**
  jcohen@scott-scott.com
- **Hal Davis Cunningham**
  hcunningham@scott-scott.com,efile@scott-scott.com
- Yah E. Demann
  ydemann@labaton.com
- **Matthew James Dolan**
  mdolan@sidley.com,adeparedes@sidley.com
- **Catherine Duden Kevane**
  ckevane@fenwick.com,pnichols@fenwick.com
- **Amber L. Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,RobynS@zhlaw.com
- **Joseph A. Fonti**
  jfonti@bftalaw.com
- **Jonathan Gardner**
  jgardner@labaton.com,cvillegas@labaton.com,lmehringer@labaton.com,
  acoquin@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,
  agreenbaum@labaton.com
- **Mark S. Goldman**
  goldman@lawgsp.com
- **Joseph P. Guglielmo**
  jguglielmo@scott-scott.com,edewan@scott-scott.com,tcrockett@scott-
  scott.com,efile@scott-scott.com
- **Susan Samuels Muck**
  smuck@fenwick.com,vsheehan@fenwick.com,rchang@fenwick.com,
  kayoung@fenwick.com,pnichols@fenwick.com,jbretan@fenwick.com,
  acaloza@fenwick.com
- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com
- **David R. Scott**
  drscott@scott-scott.com
- **Ronnie Solomon**
  rsolomon@fenwick.com,mguidoux@fenwick.com
- **Michael Walter Stocker**
  mstocker@labaton.com,drogers@labaton.com,lmehringer@labaton.com

- **Simona Gurevich Strauss**
  sstrauss@stblaw.com,niels.melius@stblaw.com,janie.franklin@stblaw.com,
  sblake@stblaw.com
- **Stephen J. Teti**
  steti@scott-scott.com
- **Carol C. Villegas**
  cvillegas@labaton.com,mpenrhyn@labaton.com,lmehringer@labaton.com,
  acoquin@labaton.com,thoffman@labaton.com,fmalonzo@labaton.com,
  acarpio@labaton.com
- **Shawn A. Williams**
  shawnw@rgrdlaw.com,erinj@rgrdlaw.com,katerinap@rgrdlaw.com,
  e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Michael John von Loewenfeldt**
  mvl@kerrwagstaffe.com,phan@kerrwagstaffe.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

(No manual recipients)