ROBBINS GELLER RUDMAN
 & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

*Liaison Counsel for Plaintiffs*

LABATON SUCHAROW LLP
JONATHAN GARDNER *(pro hac vice)*
CAROL C. VILLEGAS  *(pro hac vice)*
140 Broadway
New York, New York 10005
Telephone: 212/907-0700
212/818-0477 (fax)
jgardner@labaton.com
cvillegas@labaton.com


*Lead Counsel for Lead Plaintiffs and the Class*

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE VOCERA COMMUNICATIONS, INC., SECURITIES LITIGATION ———————————————————— This Document Relates to:   All Actions. ———————————————————— | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

MASTER FILE NO. 3:13-cv-03567 EMC

<u>CLASS ACTION</u>

LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Date: June 23, 2016
Time: 1:30 p.m.
Judge: The Hon. Edward M. Chen
Dep't: 5, 17th Floor

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 2

ARGUMENT .............................................................................................................. 3

I.      LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF THE
        COMMON FUND SHOULD BE APPROVED ................................................ 3

        A.      Counsel Are Entitled to an Award of Attorneys' Fees from the Common
                Fund ..................................................................................................... 3

        B.      A Reasonable Percentage of the Fund Recovered Is the Appropriate Method
                for Awarding Attorneys' Fees in Common Fund Cases ........................... 4

        C.      A Fee of 25% of the Settlement Fund Is Reasonable ............................ 5

        D.      Analysis Under the Percentage Method and the *Vizcaino* Factors Justifies a
                Fee Award of 25% in this Case ............................................................. 6

                1.      The Result Achieved ................................................................ 6

                2.      The Risks of Litigation ............................................................ 7

                3.      The Skill Required and the Quality of Work ............................. 10

                4.      The Contingent Nature of the Fee and the Financial Burden Carried
                        by Lead Counsel .................................................................... 11

                5.      A 25% Fee Award is the Ninth Circuit's Benchmark and Is
                        Comparable to Attorneys' Fees Awarded in Similar Cases ........ 13

                6.      Reaction of the Settlement Class ............................................ 14

                7.      Lodestar Cross-Check ........................................................... 15

II.     PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE
        NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ........................... 17

III.    LEAD PLAINTIFFS ARE ENTITLED TO PAYMENT OF REASONABLE
        EXPENSES ............................................................................................. 19

CONCLUSION ........................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
 77 F.3d 1215 (10th Cir. 1996) ............................................................13

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
 472 U.S. 299 (1985)............................................................................12

*Blum v. Stenson*,
 465 U.S. 886 (1984).............................................................................4

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980).............................................................................3

*Class Plaintiffs v. Jaffe Schlesinger P.A.*,
 19 F.3d 1306 (9th Cir. 1994) .......................................................4, 5, 16

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
 109 F.3d 602 (9th Cir. 1997) ...............................................................15

*Destefano v. Zynga*,
 No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016 ) ...................7, 10, 12, 13

*Dubeau v. Sterling Sav. Bank*,
 No. 12-CV-01602-CL, 2013 WL 4591034 (D. Or. Aug. 28, 2013) ........................5

*Eddings v. Health Net, Inc.*,
 No. CV 10-1744-JST (RZX), 2013 WL 3013867 (C.D. Cal. June 13, 2013) ........................5

*Evans v. Linden Research, Inc.*,
 No. C-11-01078 (DMR), 2014 WL 1724891 (N.D. Cal. Apr. 29, 2014) ..............................5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 No. 02-CV-3400 (CM), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................16

*Franco v. Ruiz Food Prods., Inc.*,
 No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ............................18

*Glickenhaus & Co., et al. v. Household Int'l, Inc., et al.*,
 787 F.3d 408 (7th Cir. 2015) ................................................................13

*Gottlieb v. Wiles*,
 150 F.R.D. 174 (D. Colo. 1993), *rev'd and remanded on other grounds sub
  nom, Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ............................................18

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

ii

*Gottlieb v. Barry*,
 43 F.3d 474 (10th Cir. 1994) ...................................................................................18

*Harris v. Marhoefer*,
 24 F.3d 16 (9th Cir. 1994) .......................................................................................17

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983)...................................................................................................6

*In re Heritage Bond Litig.*,
 No. 02-ML-1475 DT (RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ...........10, 14

*Hicks v. Stanley*,
 No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...................20

*In re Ikon Office Sols., Inc. Sec. Litig.*,
 194 F.R.D. 166 (E.D. Pa. 2000).................................................................................10

*In re Immune Response Sec. Litig.*,
 497 F. Supp. 2d 1166 (S.D. Cal. 2007)................................................................17, 18

*In re Infospace, Inc.*,
 330 F. Supp. 2d 1203 (W.D. Wash. 2004)..................................................................19

*In re Initial Pub. Offering Sec. Litig.*,
 No. 21 MC 92(SAS), 2011 WL 2732563 (S.D.N.Y. July 8, 2011)...........................16

*Janus Capital Grp., Inc. v. First Derivative Traders*,
 131 S.Ct. 2296 (2011) ...............................................................................................13

*McPhail v. First Command Fin. Planning, Inc.*,
 No. 05cv179-IEG- JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) .................7, 19

*In re Merrill Lynch & Co., Research Reports Sec. Litig.*,
 No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)........................7

*Missouri v. Jenkins*,
 491 U.S. 274 (1989)...................................................................................................16

*In re Netflix Privacy Litig.*,
 No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)..................5

*Nguyen v. Radient Pharms. Corp.*,
 No. 00-406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ......................................9, 19

*In re Nuvelo, Inc. Sec. Litig.*,
 No. C07-0405 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011)............................14

*In re Omnivision Techs., Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................7, 9, 11, 12

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

iii

1

*In re Oracle Corp. Sec. Litig.*,
    No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627
    F.3d 376 (9th Cir. 2010) ..........................................................................................12

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...............................................................................2, 5, 7

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ................................................................................5, 13

*Redwen v. Sino Clean Energy, Inc.*,
    No. CV 11-3936 PA, 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013) ....................10

*Rieckborn v. Velti PLC*,
    No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ..............................3, 14

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ...........................................................................12, 13

*Rutti v. Lojack Corp. Inc.*,
    No. SACV 06-350 DOC JCX, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ......................16

*Steiner v. Am. Broad. Co.*,
    248 F. App'x. 780 (9th Cir. 2007) .............................................................................15

*Stuart v. RadioShack Corp.*,
    No. 07-4499, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) ...............................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).................................................................................................12

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) ...................................................................................3, 4

*Vincent v. Reser*,
    No. C-11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ...............................3, 17

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ......................................................................... *passim*

*Ward v. Succession of Freeman*,
    854 F.2d 780 (5th Cir. 1998) ..................................................................................12

*In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*,
    19 F.3d 1291 (9th Cir. 1994), *aff'd in part, Class Plaintiffs v. Jaffe*
    *Schlesinger P.A.* 19 F.3d 1306 (9th Cir. 1994)............................................................4, 5, 16

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

iv

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ..................................................................13

**Statutes**

15 U.S.C. § 78u-4(a)(6) ............................................................................................5

15 U.S.C. § 78u-4(a)(4) ......................................................................................1, 19

**Other Authorities**

Charles Silver, Class Actions In The Gulf South Symposium, *Due Process and
    the Lodestar Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809,
    1819-20 (2000) ....................................................................................................5

Richard Posner, *Economic Analysis of Law* § 21.9 (3d ed. 1986) ..............................15

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

v

1

## NOTICE OF MOTION

2  TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3       PLEASE TAKE NOTICE that on June 23, 2016 at 1:30 p.m., Lead Counsel, Labaton

4  Sucharow LLP, on behalf of Plaintiffs' Counsel, will move this Court for an Order:

5  (1) approving Lead Counsel's application for an award of attorneys' fees and payment of

6  litigation expenses, and (2) approving Lead Plaintiffs' request for payment of their reasonable

7  costs and expenses related to their representation of the Settlement Class, pursuant to the Private

8  Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

9       This motion is supported by the following memorandum of points and authorities and the

10  accompanying Declaration of Jonathan Gardner and the exhibits attached thereto.

11       Pursuant to local rule, a proposed order is being submitted herewith, however an updated

12  proposed order may be submitted with Lead Counsel's reply submission on or before June 9,

13  2016, after the deadline for objecting has passed.

14

## STATEMENT OF ISSUES TO BE DECIDED

15       (1) Whether the Court should approve Lead Counsel's application for an award of

16  attorneys' fees and payment of expenses; and

17       (2) Whether the Court should approve Lead Plaintiffs' requests for payment of their

18  reasonable costs and expenses related to their representation of the Settlement Class, pursuant to

19  the PSLRA, 15 U.S.C. § 78u-4(a)(4).

20

21

22

23

24

25

26

27

28

Master File No. 3:13-cv-03567 EMC
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Lead Counsel Labaton Sucharow LLP ("Labaton Sucharow" or "Lead Counsel"), on behalf of itself and Robbins Geller Rudman & Dowd LLP ("Robbins Geller" and collectively with Lead Counsel, "Plaintiffs' Counsel") respectfully submits this memorandum of points and authorities in support of its application for an award of attorneys' fees and payment of litigation expenses.[1]

As detailed in the Stipulation, Vocera Communications, Inc. ("Vocera" or the "Company"), Robert J. Zollars, Brent D. Lang, and William R. Zerella (collectively, the "Individual Defendants" and, with Vocera, the "Defendants") have agreed to pay or caused to be paid $9 million to secure a settlement of the claims in this proposed class action settlement (the "Settlement"). This recovery is a favorable result for the Settlement Class when evaluated in light of all the relevant circumstances – most notably the complicated nature of the claims and the risks of pursuing the Action through summary judgment and trial. The Settlement was achieved following vigorous investigative efforts and motion practice that allowed certain of Lead Plaintiffs' claims to survive a motion to dismiss and the development of Lead Plaintiffs' claims to a point where the parties could engage in meaningful settlement negotiations.

Plaintiffs' Counsel have not received any compensation for their successful prosecution of this case, which required over 9,695 hours of billable time. Lead Counsel respectfully requests that Plaintiffs' Counsel be awarded an attorneys' fee of 25% of the Settlement Fund, which will include any accrued interest, and that they be paid out of the Settlement Fund for litigation expenses in the amount of $382,010.86, plus any accrued interest. This 25% fee request is the Ninth Circuit's "benchmark" for contingent fees and, as discussed below, would provide no multiplier of Plaintiffs' Counsel's lodestar. *See, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five percent is the 'benchmark' that district courts

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as those set forth in the Stipulation and Agreement of Settlement, dated as of January 14, 2016 (the "Stipulation, ECF No. 186-1").

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

2

1    should award in common fund cases."); *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015

2    WL 468329, at *21-22 (N.D. Cal. Feb. 3, 2015) ("In common fund cases such as this one, the

3    benchmark fee award is 25 percent of the settlement fund.").  The requested fee amount has been

4    approved by Lead Plaintiffs, Arkansas Teacher Retirement System ("ATRS") and Baltimore

5    County Employees Retirement System ("BCERS").  *See* Ex. 1 ¶6 and Ex. 2 ¶6 .[2]  In addition, the

6    expenses incurred by Lead Plaintiffs in connection with the prosecution of the Action were both

7    reasonable and necessary.  As such, the requested fees and expenses should be awarded in full.

8                                               **ARGUMENT**

9    **I.      LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF THE**
          **COMMON FUND SHOULD BE APPROVED**
10
             **A.      Counsel Are Entitled to an Award of Attorneys' Fees from the Common**
11                   **Fund**

12           It is well settled that attorneys who represent a class and achieve a benefit for class

13   members are entitled to a reasonable fee as compensation for their services.  The Supreme Court

14   has recognized that "a lawyer who recovers a common fund for the benefit of persons other than

15   himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing*

16   *Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Vincent v. Reser*, No. C-11-03572 CRB,

17   2013 WL 621865, at *4 (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*, 444 U.S. at 478).  Indeed,

18   the Ninth Circuit has expressly reasoned that "a private plaintiff, or his attorney, whose efforts

19   create, discover, increase or preserve a fund to which others also have a claim is entitled to

20   recover from the fund the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes*

21

22   [2]      All exhibits referenced herein are annexed to the Declaration of Jonathan Gardner in
     Support of Lead Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and
23   Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of
     Litigation Expenses ("Gardner Declaration" or "Gardner Decl.").  For clarity, citations to
24   exhibits that themselves have attached exhibits, will be referenced herein as "Ex.__-__."  The
     first numerical reference refers to the designation of the entire exhibit attached to the Gardner
25   Declaration and the second numerical reference refers to the exhibit designation within the
     exhibit itself.
26           The Gardner Declaration is an integral part of this motion and is incorporated herein by
     reference.  For the sake of brevity, the Court is respectfully referred to the Gardner Declaration
27   for, *inter alia*, a detailed description of the allegations and claims, the procedural history of the
     Action, the risks faced by the Settlement Class in pursuing litigation, the negotiations that led to
28   a settlement, and a description of the services provided by Lead Counsel.

*Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The purpose of this rule, known as the "common fund doctrine," is to prevent unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS*), 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe Schlesinger P.A.* 19 F.3d 1306 (9th Cir. 1994).

> **B.     A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases**

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that under the common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on the class. . . ."  *Id.* at 900 n.16.  In this Circuit, a district court has discretion to award fees in common fund cases based on either the so-called lodestar/multiplier method or the percentage-of-the-fund method.  *WPPSS*, 19 F.3d at 1296.  However, the percentage-of-recovery method has become the prevailing method in the Ninth Circuit.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).  Other circuits have similarly endorsed the percentage-of-recovery method.

The rationale for compensating counsel in common fund cases on a percentage basis is sound.  Principally, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.  Indeed, one of the nation's leading scholars in the field of class actions and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has concluded that the percentage method of awarding fees is the only method of fee awards that is consistent with class members' due process rights.  Professor Silver notes:

> ***The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad.***  It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges, including those who contributed to the Manual for Complex Litigation, the Report of the Federal Courts Study Committee, and the report of the Third Circuit Task Force.  Indeed, it is difficult to find anyone who contends otherwise.  No one writing in the field today is defending the lodestar on the ground that it minimizes conflicts between class counsel and absent claimants.  ***In view of this, it is as clear as it possibly can be that judges should not apply the lodestar method in common fund class actions.***  The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives.  The contingent percentage approach accomplishes this.

Charles Silver, Class Actions In The Gulf South Symposium, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809, 1819-20 (2000) (emphasis added and footnotes omitted).  This is particularly appropriate in cases under the PSLRA where Congress recognized the propriety of the percentage method of fee awards.  *See* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class".).

### C.      A Fee of 25% of the Settlement Fund Is Reasonable

Recognizing the utility of the percentage-of-recovery method, the Ninth Circuit has stated that ***"[t]wenty-five percent is the 'benchmark' that district courts should award in common fund cases."***  *Pac. Enters*., 47 F.3d at 379 (emphasis added); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (reaffirming 25% benchmark); *see also Evans v. Linden Research, Inc*., No. C-11-01078 (DMR), 2014 WL 1724891, at *6 (N.D. Cal. Apr. 29, 2014) ("25% of the recovery obtained is the benchmark in the Ninth Circuit.") (citing *Vizcaino*, 290 F.3d at 1047); *Dubeau v. Sterling Sav. Bank*, No. 12-CV-01602-CL, 2013 WL 4591034, at *3 (D. Or. Aug. 28, 2013) (same); *Eddings v. Health Net, Inc*., No. CV 10-1744-JST (RZX), 2013 WL 3013867, at *5 (C.D. Cal. June 13, 2013) (same); *In re Netflix Privacy Litig*., No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *9 (N.D. Cal. Mar. 18, 2013) (same).

The guiding principle in this Circuit is that a fee award be "reasonable under the circumstances."  *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted).  In employing the percentage method, courts may perform a lodestar cross-check to confirm the reasonableness of the requested fee.  *Vizcaino*, 290 F.3d at 1047 (affirming use of percentage method and applying the lodestar method as a cross-check).  Here, in view of the result obtained, the contingent fee risk, the lodestar cross-check, and other relevant factors, an award of 25% of the recovery obtained for the Settlement Class is appropriate under either analysis.

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### D. Analysis Under the Percentage Method and the *Vizcaino* Factors Justifies a Fee Award of 25% in this Case

Lead Counsel's request for a fee award of 25% of the Settlement Fund is eminently reasonable.  The fee request readily satisfies the five factors that are often used by courts in the Ninth Circuit to evaluate the reasonableness of a requested fee:  (1) result achieved; (2) risk of litigation; (3) skill required and quality of the work; (4) awards made in similar cases; and (5) contingent nature of the fee and financial burden carried by counsel.  *Vizcaino*, 290 F.3d at 1048-50.  The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Id.*  As set forth below, all of the *Vizcaino* factors militate in favor of approving the requested fee.

### 1. The Result Achieved

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting the "most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048 n.7 (noting "[e]xceptional results are a relevant circumstance" in awarding attorneys' fees).  Lead Counsel submits that the $9 million proposed Settlement is a favorable result for the Settlement Class, both quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded through dispositive motions, class certification, and trial.

As an initial matter, the $9 million Settlement is higher than other securities fraud settlements.  As recently reported by Cornerstone, the median settlement amount in securities fraud cases in 2015 was $6.1 million.  *See* Gardner Decl. ¶7 (citing Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons, *Securities Class Action Settlements- 2015 Review and Analysis* (Cornerstone Research 2016) (Ex. 3) at 6.  Moreover, the Settlement represents a gross recovery of between 4% and 9% of Lead Plaintiffs' consulting damages expert's best case estimates of recoverable damages, assuming that 100% of the two alleged stock drops were proven to be attributable to the alleged fraud.  *See* Gardner Decl. ¶¶8-9, 102; Approval Brief §I.B.4.  This percentage of recovery compares well to recoveries in other securities class actions within the

1   Ninth Circuit.  *See, e.g., McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-

2   JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement

3   recovering 7% of estimated damages was fair and adequate); *In re Omnivision Techs., Inc.*, 559

4   F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (noting $13.75 million settlement yielding 6% of

5   potential damages after deducting fees and costs was "higher than the median percentage of

6   investor losses recovered in recent shareholder class action settlements") (citation omitted).  The

7   recovery also compares favorably to recoveries achieved in cases in other Circuits.  *See, e.g., In*

8   *re Merrill Lynch & Co., Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL

9   313474, at *10 (S.D.N.Y. Feb. 1, 2007) ("The Settlement Fund is approximately $40.3 million.

10  The settlement thus represents a recovery of approximately 6.25% of estimated damages.  This is

11  "at the higher end of the range of reasonableness of recovery in class actions securities

12  litigations.").  The Settlement Amount thus provides a favorable percentage of recovery for the

13  Settlement Class.

14              **2.        The Risks of Litigation**

15          The risk of further litigation is also an important factor in determining a fair fee award.

16  *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys'

17  fees); *Pac. Enters.*, 47 F.3d at 379 (finding that attorneys' fees were justified "because of the

18  complexity of the issues and the risks"); *see also Destefano v. Zynga*, No. 12-cv-04007-JSC,

19  2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016 ) (approving requested fee and noting that "as

20  to the second factor . . . the risks associated with the case were substantial given the challenges

21  of obtaining class certification and establishing the falsity of the misrepresentations and loss

22  causation").  As set forth in detail in Section IX. of the Gardner Declaration, there were

23  substantial challenges and uncertainties in the Action that required the skill and focus of Lead

24  Counsel to bring this matter to a favorable resolution.

25          Lead Plaintiffs faced substantial risks in ultimately proving that Defendants' statements

26  and omissions were false and misleading at the time that they were made.  Gardner Decl. ¶¶72-

27  76.  For example, Defendants would likely argue that the statements contained in Vocera's

28  earnings calls, releases, offering materials, and 10-K, including Vocera's forecasts and guidance,

1   and the statements underlying those forecasts, such as predictions of growth and performance

2   and the anticipated effects of the ACA, are protected from liability by the PSLRA "safe harbor."

3   *Id.* ¶73.  To overcome this protection, assuming it applied, Lead Plaintiffs would have to

4   establish actual knowledge at the time of the misstatements.  Defendants would also argue that

5   this is not a restatement case and at no time did Lead Plaintiffs allege that Vocera adjusted its

6   financial results or backtracked on its historical accounts.  Accordingly, Lead Plaintiffs would

7   face a challenge in rebutting Defendants' argument that the misstatements could not have been

8   false or misleading when made.  *Id.* ¶74.  Defendants would also likely argue that Lead

9   Plaintiffs' claim that Defendants misled the market by improperly accelerating backlog to meet

10  public guidance in order to maintain the appearance of a healthy company is unsupported by any

11  evidence, and, in any event, accelerating the Company's backlog is valid and consistent with

12  normal industry practice.  *Id.* ¶¶75-76.

13          Lead Plaintiffs also faced challenges in proving that Defendants' alleged misstatements

14  were made with scienter, as required by the federal securities laws.  *Id.* ¶¶77-80.  Defendants

15  would have denied that Lead Plaintiffs could prove that there was an intentional or severely

16  reckless violation of the Exchange Act.  In particular, Defendants would have argued that the

17  testimony of Lead Plaintiffs' witnesses could not prove a single specific fact suggesting

18  Defendants' knowledge of or participation in any sort of fraudulent activity.  *Id.* ¶78.

19  Additionally, Defendants would argue that Lead Plaintiffs cannot rely on the stock sales of

20  Zollars and Lang during the Class Period, to further prove scienter, given that although Zollars

21  and Lang sold shares during the Class Period, these sales only represented 23% and 46% of their

22  respective holdings, and that such amounts are not indicative of scienter, especially because Lead

23  Plaintiffs do not have pre-Class Period (control period) sales to compare with these sales.

24  Defendants would also argue that the sales by Zollars and Lang occurred in connection with the

25  SPO and partial release of the lock-up in late 2012 and are therefore not suspicious in timing – it

26  is only natural they would want to sell some shares and diversify once the lock-up expired.  *Id.*

27  ¶80.

28

1    In addition, the Parties have asserted significantly different positions regarding loss

2    causation and damages. *Id.* ¶¶81-88.  Principally, Defendants would likely have asserted that,

3    any potential investment losses suffered by Lead Plaintiffs and the Settlement Class were not

4    caused by the disclosure of any alleged fraud.  In that regard, Defendants were expected to argue

5    that nothing in the alleged disclosures of February 27, 2013 or May 2, 2013 tied the Company's

6    disappointing results to any sort of improprieties concerning Vocera's backlog practices or the

7    impact of the ACA and the BCA reforms. *Id.* ¶¶82-84.  If this position prevailed, the class

8    claims would have been dismissed entirely. *Omnivision*, 559 F. Supp. 2d at 1047 (noting that the

9    risks of litigation, including the ability to prove loss causation and the risk that Defendants

10   prevail on damages, support the requested fee).

11   Whether Lead Plaintiffs could sufficiently disaggregate damages was also unsettled and

12   would continue to require a significant effort on the part of Lead Counsel.  Gardner Decl. ¶¶85-

13   88.  Here, Lead Plaintiffs' consulting damages expert estimated that the Settlement Class

14   sustained maximum aggregate damages in the range of approximately $100 million to $225

15   million, assuming that 100% of the two alleged stock drops were related to revelations of the

16   alleged fraud.[3] *Id.* ¶¶8, 87.  Defendants believe that damages are substantially smaller than Lead

17   Plaintiffs' estimate due to Defendants' belief that only a small fraction, if any, of the stock price

18   declines on February 28 and May 3, 2013 can be attributed to corrective information. *Id.* ¶¶85-

19   86.

20   Accordingly, Lead Plaintiffs faced the significant possibility that the Court or a jury

21   would agree with Defendants' experts and, regardless of who would ultimately be successful at

22   trial, there is no doubt that both sides would have had to present complex and nuanced

23   information to a jury with no certainty as to the outcome. *See Nguyen v. Radient Pharms. Corp.*,

24   No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014)

25

26

---

27   [3]    If only the May 2, 2013 disclosure were established at trial, Lead Plaintiffs' expert estimated maximum aggregate damages in the range of approximately $80 million to $170 million, in which case the Settlement Amount represents 5% to 11% of estimated damages.

28   Gardner Decl. ¶87.

1   (approving requested attorneys' fee and noting the particular challenges of calculating

2   damages).[4]

3        If not settled, the Settlement Class in this case faced the considerable risk of years of

4   litigation with no guarantee of a greater recovery.  Lead Counsel achieved a significant result for

5   the Settlement Class in the face of very real risks.  Under these circumstances, the requested fee

6   is fully appropriate.

7        **3.    The Skill Required and the Quality of Work**

8        Courts have recognized that the "prosecution and management of a complex national

9   class action requires unique legal skills and abilities."  *In re Heritage Bond Litig.*, No. 02-ML-

10  1475 DT (RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) (citation omitted); *see*

11  *also Vizcaino,* 290 F.3d at 1048.  "'This is particularly true in securities cases because the Private

12  Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past

13  a motion to dismiss.'"  *Zynga*, 2016 WL 537946, at *17 (quoting *Omnivision*, 559 F. Supp. 2d at

14  1047).

15       Here, Lead Counsel conducted its own initial investigation without the benefit of any

16  government investigation or admission to formulate its theory of the case and develop sufficient

17  detail to ultimately defeat Defendants' motion to dismiss the Exchange Act claims.  As set forth

18  in the Gardner Declaration, the investigation included, *inter alia*, reviewing and analyzing an

19  extensive amount of publicly available information and data concerning Vocera; reviewing and

20  analyzing industry specific legislation, including the ACA and BCA; locating and contacting

21  dozens of former Vocera employees and other witnesses with relevant knowledge; and reviewing

22  and analyzing internal Vocera documents provided by former Vocera employees.  Gardner Decl.

23

---

24     [4]    While courts have always recognized that securities class actions carry significant risks,

25  post-PSLRA rulings make it clear that the risk of no recovery (and hence no fee) has increased
    exponentially.  *See Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 U.S.

26  Dist. LEXIS 100275, at *19-20 (C.D. Cal. July 9, 2013) ("Courts experienced with securities
    fraud litigation, 'routinely recognize that securities class actions present hurdles to proving

27  liability that are difficult for plaintiffs to clear.'" (quoting *In re Flag Telecom Holdings*, No. 02-
    CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *48 (S.D.N.Y. Nov. 8, 2010))); *In re*

28  *Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (noting that "securities
    actions have become more difficult from a plaintiffs perspective in the wake of the PSLRA").

¶¶6, 23.  Additionally, Lead Counsel reviewed approximately 771,000 pages of core documents produced by Defendants and non-parties in connection with formal discovery and worked extensively with Lead Plaintiffs' loss causation and damages expert in order to analyze the strengths and weaknesses of the claims asserted in the Action.  *Id.* ¶¶6, 41-50, 55, 61, 114.

Much of the information analyzed and the facts underlying the claims were grounded on complex financial, regulatory, and industry information.  Lead Counsel was required to develop not just expertise about Vocera's financial prospects but expertise in the area of mobile communications and healthcare reform and budget sequestration.  *Id.* ¶122.

Lead Counsel has extensive and significant experience in the highly specialized field of securities class action litigation and is a known leader in the field.  *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-8141 (S.D.N.Y.) (representing the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Ohio Police & Fire Pension Fund and reaching settlements of $1 billion); *In re HealthSouth Corp. Sec. Litig.*, No. 03-1501 (N.D. Ala.) (representing the State of Michigan Retirement System, New Mexico State Investment Council, and the New Mexico Educational Retirement Board and securing settlements of more than $600 million); *In re Countrywide Sec. Litig.*, No. 07-5295 (C.D. Cal.) (representing the New York State and New York City Pension Funds and reaching settlements of more than $600 million); *In re Schering-Plough Corp. / ENHANCE Securities Litigation*, Civil Action No. 08-397 (DMC) (JAD) (D.N.J.) (representing Massachusetts Pension Reserves Investment Management Board and reaching a settlement of $473 million); Gardner Decl. ¶121; Ex. 5-H.  Lead Counsel has not only used its knowledge and skill from prior cases but also developed specific expertise in the issues presented here to overcome the obstacles presented by Defendants.  The favorable Settlement is attributable in substantial part to the diligence, determination, hard work, and skill of Lead Counsel, who developed, litigated, and successfully negotiated the Settlement.

        **4.**      **The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel**

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature.  *See Vizcaino*, 290 F.3d at 1048-50; *Omnivision*, 559 F.

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

11

1   Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could

2   not otherwise afford competent attorneys justifies providing those attorneys who do accept

3   matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat

4   fee."); *see also Zynga*, 2016 WL 537946, at *18 (noting that "when counsel takes on a

5   contingency fee case and the litigation is protracted, the risk of non-payment after years of

6   litigation justifies a significant fee award").  The Supreme Court has emphasized that private

7   securities actions such as this provide "'a most effective weapon in the enforcement' of the

8   securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill*

9   *Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted); *Tellabs, Inc. v. Makor*

10  *Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (noting that the court has long recognized that

11  meritorious private actions to enforce federal antifraud securities laws are an essential

12  supplement to criminal prosecutions and civil enforcement actions).[5]

13          Indeed, there have been many class actions in which plaintiffs' counsel took on the risk

14  of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received

15  no remuneration whatsoever despite their diligence and expertise.  *See, e.g.*, *In re Oracle Corp.*

16  *Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376

17  (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation, and

18  after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours,

19  representing a lodestar of approximately $48 million).  Lead Counsel is aware of many other

20  hard-fought lawsuits where, because of the discovery of facts unknown when the case was

21  commenced, changes in the law during the pendency of the case, or a decision of a judge or jury

22  following a trial on the merits, excellent professional efforts by members of the plaintiff's bar

23  produced no fee for counsel.  *See, e.g*, *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir.

24  1998) (reversing plaintiffs' jury verdict for securities fraud); *Robbins v. Koger Props., Inc.*, 116

25  _____

26  [5]     Additionally, vigorous private enforcement of the federal securities laws and state
    corporation laws can only occur if private plaintiffs can obtain some semblance of parity in
27  representation with that available to large corporate defendants.  If this important public policy is
    to be carried out, courts should award fees that will adequately compensate private plaintiffs'
28  counsel, taking into account the enormous risks undertaken with a clear view of the economics of
    a securities class action.

1    F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with

2    prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning

3    plaintiffs' verdict obtained after two decades of litigation); Gardner Decl. ¶¶107-10.  As the

4    court in *In re Xcel Energy, Inc. Securities, Derivative & ERISA Litigation,* 364 F. Supp. 2d 980

5    (D. Minn. 2005) recognized, "[p]recedent is replete with situations in which attorneys

6    representing a class have devoted substantial resources in terms of time and advanced costs yet

7    have lost the case despite their advocacy."  *Id.* at 994 (citation omitted).  Even plaintiffs who get

8    past summary judgment and succeed at trial may find a judgment in their favor overturned on

9    appeal or on a post-trial motion.  *See, e.g., Glickenhaus & Co., et al. v. Household Int'l, Inc., et

10   al.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13

11   years of litigation on loss causation grounds and error in jury instruction under *Janus Capital

12   Grp., Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011)).

13            Here, because Plaintiffs' Counsel's fee was entirely contingent, the only certainty was

14   that there would be no fee without a successful result and that such result would only be realized

15   after significant amounts of time, effort, and expense had been expended.  Unlike counsel for the

16   Defendants, who were paid substantial hourly rates and reimbursed for their out-of-pocket

17   expenses on a current basis, Plaintiffs' Counsel have received no compensation for their efforts

18   during the course of the Action.  Indeed, absent this Settlement, there was a sizeable risk that, at

19   the end of the day, Settlement Class Members, as well as their counsel, would obtain no

20   recovery.  Plaintiffs' Counsel have risked non-payment of $382,010.86 in expenses and

21   $5,145,192.25 in time worked on this matter, knowing that if its efforts were not successful, no

22   fee would be paid.

23            **5.       A 25% Fee Award is the Ninth Circuit's Benchmark and Is
                          Comparable to Attorneys' Fees Awarded in Similar Cases**

24

25            In requesting a 25% fee, Lead Counsel seek the benchmark that has been established by

     the Ninth Circuit.  *Eichen,* 229 F.3d at 1256 ("We have also established twenty-five percent of
26
     the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery
27
     approach."); *Zynga,* 2016 WL 537946, at *18 ("As to the fifth factor and awards in similar cases,
28

1   several other courts—including courts in this District—have concluded that a 25 percent award

2   was appropriate in complex securities class actions.") (citation omitted).

3        The requested fee is also reasonable when compared to fee awards in similarly-sized

4   securities class action settlements from district courts within the Ninth Circuit.  *See, e.g.*, *Velti*

5   *PLC*, 2015 WL 468329, at *21-22 (awarding fees of 25% of $9.5 partial million settlement);

6   *Mulligan v. Impax Labs, Inc*., Case No. 13-cv-01037-EMC, slip op. at 7 (N.D. Cal. July 23,

7   2015) (J. Chen) (awarding 29% of $8 million settlement) (submitted herewith as part of

8   compendium of unpublished opinions, Ex. 9); *In re Beckman Coulter, Inc. Sec. Litig*., No. 8:10-

9   cv-1327-JST (RNBx), slip op. at 3 (C.D. Cal. Mar. 1, 2012) (awarding fees of 25% of $5.5

10  million settlement) (Ex. 9); *In re Nuvelo, Inc. Sec. Litig*., No. C07-0405 CRB, 2011 WL

11  2650592, at *3 (N.D. Cal. July 6, 2011) (awarding fees of 30% of $8.9 million settlement); *In re*

12  *Infineon Techs. AG Sec. Litig.*, No. C-04-4156-JW, slip op. at 1 (N.D. Cal. Nov. 2, 2011)

13  (awarding fees of 27% of $6.2 million settlement) (Ex. 9); *City of Westland Police and Fire Ret.*

14  *Sys. v. Sonic Sols.*, No. C 07-05111-CW, slip op. at 1 (N.D. Cal. Apr. 8, 2010) (awarding fees of

15  25% of $5 million settlement) (Ex. 9); *In re Gilead Scis. Sec. Litig.*, No. C-03-4999-SI, slip op.

16  at 1 (N.D. Cal. Nov. 5, 2010) (awarding fees of 30% of $8.25 million settlement) (Ex. 9); *Curtis*

17  *and Charlotte Westley v. Oclaro, Inc*., 11-CV-02448, slip op. at 1 (N.D. Cal. Aug. 13, 2014)

18  (awarding fees of 25% of $3.7 million settlement) (J. Chen) (Ex. 9); *In re Sunterra Corp. Sec.*

19  *Litig.*, No. 2:06-cv-00844-BES-RJJ, slip op. at 1 (D. Nev. Feb. 10, 2009) (awarding fees of 25%

20  of $8 million settlement) (Ex. 9).

21       Accordingly, it is respectfully submitted that the attorneys' fee requested here is well

22  within the range of fees awarded by district courts within the Ninth Circuit in comparable

23  securities settlements.

24            **6.      Reaction of the Settlement Class**

25       Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also

26  consider the reaction of the class when deciding whether to award the requested fee.  *See In re*

27  *Heritage Bond Litig.*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is

28  also a factor in determining the proper fee award.").  A total of 19,847 copies of the Notice and

1   Claim Form have been sent to potential Settlement Class Members and the Court-approved

2   Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire*.

3   *See* Gardner Decl. ¶¶65-68; Ex. 4 ¶¶3-8.  Although the objection deadline will not run until June

4   2, 2016, to date no objections to the requested amount of attorneys' fees and expenses have been

5   received.[6]

6                       **7.    Lodestar Cross-Check**

7                       Although an analysis of the lodestar is not required for an award of attorneys' fees in the

8   Ninth Circuit, a cross-check of the fee request with Plaintiffs' Counsel's lodestar demonstrates

9   its reasonableness.  *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Coordinated Pretrial*

10  *Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (comparing

11  the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's

12  reasonableness).

13                      Plaintiffs' Counsel's combined "lodestar" is $5,145,192.25 through April 30, 2016,

14  meaning that the requested fee represents a negative multiplier of .44, or 44% of legal fees.  *See*

15  Exs. 5-A, 6-A, and 8.[7]  The Ninth Circuit has recognized that attorneys in common fund cases

16  are frequently awarded a multiple of their lodestar, rewarding them "for taking the risk of

17  nonpayment by paying them a premium over their normal hourly rates for winning contingency

18  cases." *Vizcaino,* 290 F.3d at 1051 (citation omitted).  For example, the district court in *Vizcaino*

19  approved a fee that reflected a multiple of 3.65 times counsel's lodestar.  *Id.*  The Ninth Circuit

20  affirmed, holding that the district court correctly considered the range of multiples applied in

21  common fund cases, and noting that a range of lodestar multiples from 1.0 to 4.0 are frequently

22  awarded.  *Id.*;[8] *see also Steiner v. Am. Broad. Co.,* 248 F. App'x. 780, 783 (9th Cir. 2007) ("this

23  multiplier [of 6.85] falls well within the range of multipliers that courts have allowed").

24  _____

25  [6]      Lead Counsel will address any objections to the request for attorneys' fees and expenses, if any, in their reply papers, which will be filed with the Court by June 9, 2016.

26  [7]      Plaintiffs' Counsel's lodestar is also reported according to the category of work conducted.  *See* Exs. 5-B and 6-B.

27  [8]      Furthermore, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly

28  rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if

*(continued)*

1   Courts have noted that a percentage fee that falls below counsel's lodestar supports the

2   reasonableness of the award.  *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-

3   CV-3400 (CM), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request

4   for a percentage fee representing a significant discount from their lodestar provides additional

5   support for the reasonableness of the fee request.").  Moreover, a negative multiplier, like the

6   negative multiplier here, means that Plaintiffs' Counsel are seeking to be paid for only a portion

7   of the hours expended on the Action.  *See In re Initial Pub. Offering Sec. Litig.*, No. 21 MC

8   92(SAS), 2011 WL 2732563, at *9 (S.D.N.Y. July 8, 2011) (noting that, with a negative

9   multiplier, "every firm was awarded a fraction of its requested fees and was thus compensated

10  for a small fraction of the time spent on the case", citing 671 F. Supp. 2d 467, 515-16 (S.D.N.Y.

11  2009)).

12  Plaintiffs' Counsel's "lodestar" represents 9,695.05 hours of work at current billing

13  rates.[9]  With respect to billing rates, Lead Counsel submit that the rates billed, ranging from $635

14  to $985 per hour for partners, $490 to $710 per hour for "of counsels," and $350 to $725 per

15  hour for other attorneys, are comparable or less than peer defense-side law firms litigating

16  matters of similar magnitude.  Sample defense firm billing rates, gathered by Labaton Sucharow

17  from bankruptcy court filings nationwide, often exceed these rates.  *See* Gardner Decl. ¶118; Ex.

18  7.  Here, the average hourly rate for attorneys is approximately $565 per hour and the average

19  hourly rate for non-attorney professionals is approximately $370 per hour.

20  Additional work will also be required of Lead Counsel on an ongoing basis, including:

21  preparation for, and participation in, the final approval hearing; responding to any objections;

22  supervising the claims administration process being conducted by the Claims Administrator;

23

24  *(continued)*

25  rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of
    assuring competent representation for plaintiffs who could not afford to pay on an hourly basis
    regardless whether they win or lose."  *WPPSS*, 19 F.3d at 1299.

26  [9]      The Supreme Court and other courts have held that the use of current rates is proper since
    such rates compensate for inflation and the loss of use of funds.  *See Missouri v. Jenkins*, 491

27  U.S. 274, 283-84 (1989); *Rutti v. Lojack Corp. Inc.*., No. SACV 06-350 DOC JCX, 2012 WL
    3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to

28  current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

moving for leave of the Court to distribute the Net Settlement Fund in accordance with the recommendation of the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class Members who have submitted valid proofs of claim. However, Lead Counsel will not seek payment for this work.

## II.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Plaintiffs' Counsel have incurred expenses in an aggregate amount of $382,010.86 in prosecuting the Action.  Ex. 8.  These expenses are outlined in counsel's declarations submitted to the Court concurrently herewith.  Ex. 5-C through G and Ex. 6-C through D.

As the *Vincent* court noted, "[a]ttorneys who created a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class."  *Vincent v. Reser*, No. 11-03572 (CRB), 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013) (citation omitted).  In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted).

Here, the expenses sought by Plaintiffs' Counsel are of the type that are charged to hourly paying clients and, therefore, should be paid out of the common fund.  The main expense here relates to work performed by Lead Plaintiffs' experts ($140,082.00 or approximately 37% of total expenses).  With respect to expert expenses, some courts consider whether the expert's work was "'crucial or indispensable' to the litigation at hand."'  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1178 (S.D. Cal. 2007) (citation omitted).  As discussed in the Gardner Declaration, the facts and complexity of this case required Lead Plaintiffs to utilize experts in the fields of market efficiency, loss causation, insider trading, and damages.  Gardner Decl. ¶¶8, 24, 57, 61-62, 87, 92-93, 126.  For instance, the consulting expert retained on the issues of damages and loss causation performed extensive analyses in connection with the mediation and the Plan of Allocation.  *Id.* ¶¶8, 61-62, 87, 92-93.

MASTER FILE NO. 3:13-CV-03567 EMC
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

17

1       Courts also routinely approve expenses associated with mediation.  *See, e.g.*, *Franco v.*

2   *Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *22 (E.D. Cal. Nov. 27,

3   2012) (noting that mediation fees are among the "types of fees" that are "routinely reimbursed");

4   *Immune Response*, 497 F. Supp. 2d at 1178 (approving mediation costs because they were

5   "reasonable and necessary" and the "case involved protracted litigation, which would not have

6   come to an end prior to trial without the assistance of a mediator").  The work done by Judge

7   Phillips, which totaled $17,250.00, was crucial to the resolution of the Action.  *See* Gardner

8   Decl. ¶¶5, 62-63.

9       The expenses here also include the costs of factual and legal research ($18,659.69).

10  These are the charges for primarily computerized factual and legal research services such as

11  LEXIS/Nexis and Westlaw.  It is standard practice for attorneys to use LEXIS/Nexis and

12  Westlaw to assist them in researching legal and factual issues and reimbursement is proper.  *See*

13  *Immune Response*, 497 F. Supp. 2d at 1178.  In approving expenses for computerized research,

14  the court in *Gottlieb v. Wiles*, 150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd and remanded on other*

15  *grounds sub nom, Gottlieb v. Barry*, 43 F.3d 474, 484 (10th Cir. 1994), underscored the time-

16  saving attributes of computerized research as a reason reimbursement should be encouraged.

17  The court also noted that fee-paying clients reimburse counsel for computerized legal and factual

18  research.  *Id.*

19      Lead Counsel was also required to travel in connection with court appearances, document

20  productions, depositions, the mediation, and settlement-related hearings.  Such expenses are

21  reimbursable.  *See In re Immune Response*, 497 F. Supp. at 1177 (reimbursement for travel

22  expenses . . . is within the broad discretion of the Court).

23      Plaintiffs' Counsel also seek $95,490.95 (25% of total expenses) relating to litigation

24  support expenses, such as: the costs associated with electronic discovery; deposition transcripts;

25  material produced by confidential witness; and the representation of confidential witnesses by

26  independent counsel.

27      In sum, Plaintiffs' Counsel's expenses, in an aggregate amount of $382,010.86, were

28  reasonable and necessary to the prosecution of the Action and should be approved.

1

## III.    LEAD PLAINTIFFS ARE ENTITLED TO PAYMENT OF REASONABLE EXPENSES

2

3          The PSLRA, 15 U.S.C. § 78u-4(a)(4), limits a class representative's recovery to an

4   amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to

5   all other members of the class," but also provides that "[n]othing in this paragraph shall be

6   construed to limit the award of reasonable costs and expenses (including lost wages) directly

7   relating to the representation of the class to any representative party serving on behalf of a class."

8   Here, as detailed in their respective declarations, attached as Exhibits 1 and 2 to the Gardner

9   Declaration, Lead Plaintiffs are seeking the collective amount of approximately $15,658 in

10  expenses related to their active participation in the Action.[10]

11         Many cases have approved reasonable payments to compensate class representatives for

12  the time, effort, and expenses devoted by them on behalf of a class.  *See, e.g.*, *In re Hewlett-*

13  *Packard Co. Sec. Litig.*, Case No. SACV 11-1404-AG (RNBx), slip op. at 2-3 (C.D. Cal. Sept.

14  15, 2014) (awarding costs and expenses to four class representatives in the amount of $5,654.61,

15  $2,922.24; $4,970.00; $6,570.00, respectively) (Ex. 9); *Nguyen v. Radient Pharms Corp.*, No.

16  00-406, 2014 WL 1802293, at *11-12 (C.D. Cal. May 6, 2014) (awarding $2,000 each to three

17  lead plaintiffs and finding that such an award "properly reflects the benefits that the class

18  representatives achieved for the class and the representatives' personal sacrifices"); *In re*

19  *Broadcom Corp. Class Action Litig.*, No. CV-06-5036-R (CWx) (C.D. Cal. Dec. 4, 2012), slip

20  op. at 2 (awarding costs and expenses to class representative in the amount of $21,087 (Ex. 9);

21  *McPhail,* 2009 WL 839841, at *8 (approving awards to six class representatives ranging from

22  $923.20 to $10,422.30 and noting that "the requested reimbursement is consistent with payments

23  in similar securities cases"); *In re Infospace, Inc.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash.

24  2004) (awarding $5,000 to one lead plaintiff and $6,600 to another lead plaintiff); *cf.*, *Stuart v.*

25  *RadioShack Corp.*, No. 07-4499, 2010 WL 3155645, at *7 (N.D. Cal. Aug. 9, 2010) (J. Chen)

26

---

27  [10]    This total is broken down as follows: (i) ATRS - $3,747.15, based on 67 dedicated hours at rates ranging from $33.29 per hour to $104.13 per hour; and (ii) BCERS - $11,911.05, based

28  on 87.75 dedicated hours at rates ranging from $30.42 per hour to $72.94 per hour, as well as deposition-related travel expenses.

Master File No. 3:13-CV-03567 EMC                                                    19
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof

1  (approving $5,000 incentive award in labor code class action).  As explained in one decision,

2  courts "award such costs and expenses to both reimburse named plaintiffs for expenses incurred

3  through their involvement with the action and lost wages, as well as provide an incentive for

4  such plaintiffs to remain involved in the litigation and incur such expenses in the first place."

5  *Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).

6        Lead Counsel and Lead Plaintiffs respectfully submit that the amounts sought here are

7  eminently reasonable based on the requesting parties' active involvement in the Action from

8  inception to settlement.  *See* Exs. 1 and 2.  As such, these requests should be granted in their

9  entireties.

10  **CONCLUSION**

11        For the foregoing reasons, Lead Counsel respectfully requests the Court award attorneys'

12  fees of 25% of the Settlement Fund and payment of litigation expenses in the amount of

13  $382,010.86, plus accrued interest at the same rate as is earned by the Settlement Fund.  Lead

14  Counsel also request payment, on behalf of Lead Plaintiffs, for their reasonable lost wages under

15  the PSLRA.

16

17  Dated: May 19, 2016                   Respectfully submitted,

                                            LABATON SUCHAROW LLP

18

                                            /s/ Jonathan Gardner

19                                              JONATHAN GARDNER *(pro hac vice)*

20                                              CAROL C. VILLEGAS *(pro hac vice)*

                                            140 Broadway

21                                              New York, NY 10005

                                            Telephone: 212/907-0700

22                                              212/818-0477 (fax)

23                                              *Counsel for Lead Plaintiffs and the Proposed Settlement Class*

24                                              ROBBINS GELLER RUDMAN

25                                                  & DOWD LLP

                                            DANIELLE S. MYERS

26                                              655 West Broadway, Suite 1900

                                            San Diego, CA 92101

27                                              Telephone: 619/231-1058

                                            619/231-7423 (fax)

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

*Liaison Counsel for Lead Plaintiffs and the
Proposed Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Service List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 19, 2016

/s/ Jonathan Gardner
JONATHAN GARDNER

**Mailing Information for a Case 3:13-cv-03567-EMC**

*Brado v. Vocera Communications Inc et al*

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Marie Caroline Bafus**
  mbafus@fenwick.com,vsheehan@fenwick.com,pnichols@fenwick.com,
  dsheppard@fenwick.com
- **Joel H. Bernstein**
  jbernstein@labaton.com,lmehringer@labaton.com,dgoldsmith@labaton.com,
  sauer@labaton.com,electroniccasefiling@labaton.com
- **Norman J. Blears**
  nblears@sidley.com,kmay@sidley.com,epickens@sidley.com
- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,vsheehan@fenwick.com,mbafus@fenwick.com,
  kayoung@fenwick.com,pnichols@fenwick.com,ckevane@fenwick.com
- **Joseph Daniel Cohen**
  jcohen@scott-scott.com
- **Hal Davis Cunningham**
  hcunningham@scott-scott.com,efile@scott-scott.com
- Yah E. Demann
  ydemann@labaton.com
- **Matthew James Dolan**
  mdolan@sidley.com,adeparedes@sidley.com
- **Catherine Duden Kevane**
  ckevane@fenwick.com,pnichols@fenwick.com
- **Amber L. Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,RobynS@zhlaw.com
- **Joseph A. Fonti**
  jfonti@bftalaw.com
- **Jonathan Gardner**
  jgardner@labaton.com,cvillegas@labaton.com,lmehringer@labaton.com,
  acoquin@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,
  agreenbaum@labaton.com
- **Mark S. Goldman**
  goldman@lawgsp.com
- **Joseph P. Guglielmo**
  jguglielmo@scott-scott.com,edewan@scott-scott.com,tcrockett@scott-
  scott.com,efile@scott-scott.com
- **Susan Samuels Muck**
  smuck@fenwick.com,vsheehan@fenwick.com,rchang@fenwick.com,
  kayoung@fenwick.com,pnichols@fenwick.com,jbretan@fenwick.com,
  acaloza@fenwick.com
- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com
- **David R. Scott**
  drscott@scott-scott.com
- **Ronnie Solomon**
  rsolomon@fenwick.com,mguidoux@fenwick.com
- **Michael Walter Stocker**
  mstocker@labaton.com,drogers@labaton.com,lmehringer@labaton.com

- **Simona Gurevich Strauss**
  sstrauss@stblaw.com,niels.melius@stblaw.com,janie.franklin@stblaw.com,
  sblake@stblaw.com
- **Stephen J. Teti**
  steti@scott-scott.com
- **Carol C. Villegas**
  cvillegas@labaton.com,mpenrhyn@labaton.com,lmehringer@labaton.com,
  acoquin@labaton.com,thoffman@labaton.com,fmalonzo@labaton.com,
  acarpio@labaton.com
- **Shawn A. Williams**
  shawnw@rgrdlaw.com,erinj@rgrdlaw.com,katerinap@rgrdlaw.com,
  e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Michael John von Loewenfeldt**
  mvl@kerrwagstaffe.com,phan@kerrwagstaffe.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

  (No manual recipients)